1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[ Exhibit A ]

STATE OF CALIFORNIA—DEPARTMENT OF CORRECTIONS AND REHABILITATION                    ARNOLD SCHWARZENEGGER, *GOVERNOR*

## BOARD OF PAROLE HEARINGS
P. O. Box 4036
Sacramento, CA 95812-4036

December 21, 2007

Oba Frelimo  J-25506
California State Prison - Corcoran
4001 King Avenue
Corcoran, CA  93212-8309

Dear Mr. Frelimo:

This responds to your CDC 602 appeal received at the Board of Parole Hearings (Board) December 10, 2007, requesting a release date.

The Board of Parole Hearings' (Board) records reflect your parole consideration hearing was conducted on October 12, 2005, and you were denied for five years.

The Board is not aware of the law that stipulates inmate's sentenced to prison when juveniles and tried as adults, must go to the Board yearly for parole consideration.

Effective May 1, 2004, the Board of Prison Terms Appeals section (15 CCR § 2050-2056) was repealed by Administrative Directive No. 04/01. The Board of Prison Terms (now the Board of Parole Hearings) no longer has an Appeals Unit; therefore, the decisions or actions regarding the issues listed below **cannot be appealed** and will no longer be addressed by the Board, regardless of whether the issues are written on a BPT 1040, a CDC 602, or in letter format:

- Due process (including hearing scheduling/postponements)
- Hearing panel issues
- Mitigating factors of parole suitability
- CDCR clerical errors regarding date/time/credit calculations
- CDCR staff related issues (prison transfers, programming)
- Parole consideration (grant/denial of parole)
- Court issues (recall of sentence)
- Attorney representation

You may go directly to the courts per California Department of Corrections, 15 CCR § 3160, Inmate Access to the Courts.  Forms are available at the institution's law library.

Issues concerning clerical errors on the BPT 1001 Life Prisoner Decision Face Sheet form related to Board decisions, and other rules of law, can be reviewed by the Board.  You can submit these concerns via correspondence to the Board of Parole Hearings, P.O. Box 4036, Sacramento, California, 95812-4036.

Sincerely,

S. LABARE
Staff Services Manager I

ch

Board of Parole Hearings;    12-4-07

TO WHOM This MAY CONCERN;

    Hello, MY NAME is OBA L. FRELIMO
CDC# J-25506; AND I've been int
-ORMED and instructed, That the
action I'm seeKing is under your
Jurisdiction. Thus forth, I'm sending
My issue to you for response, and
to grant My request iN Which is
Needed, to ensure that My rights are
No longer violated or ignored or den
-ied!

    Thank you for your time and
patience; And I look forward to
your timely response!

RECEIVED

DEC 1 0 2007

BOARD OF PAROLE HEARINGS
QUALITY CONTROL UNIT

RECEIVED

DEC 1 0 2007

    RespectFully Submitted;
    Mr.

P.S. AlSO, I WAS INFORMED THAT A LAW
RECENTLY WAS PASSED, THAT STIPULATES
INMATE's sentenced TD PRISON, When Juven
-le's, tried As Adults, MUST GO TO The
BOARD yearly, For PAROLE consideration
BEING SUCH, MY 5 year denial MUST be

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                    ARNOLD SCHWARZENEGGER, GOVERNOR

### *INMATE APPEALS BRANCH*

1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001



November 27, 2007

FRELIMO, OBA, J25506
California State Prison, Corcoran
P.O. Box 8800
Corcoran, CA    93212-8800

RE: IAB# 0711566      · OTHER

Mr. FRELIMO:

The Inmate Appeals Branch, California Department of Corrections and Rehabilitation (CDCR) acts for the Director, Division of Adult Institutions, at the third level of appeal. The Branch examines and responds to inmate and parolee appeals that are submitted on a CDC Form 602, Inmate/Parolee Appeal Form, after the institution or parole region has responded at the Second Level of Appeal.

Institution and parole staff are available to assist you in obtaining additional copies of forms and documents required to submit an appeal. The inmate library offers resources and assistance to obtain general information regarding regulations, procedures, policies, and government agency addresses. Additionally, your assigned Counselor or Parole Agent, or the Appeals Coordinator can answer any questions you may have regarding the appeals process. The Inmate Appeals Branch appreciates your responsible use of the appeal system to address your grievance.

The Inmate Appeals Branch has received an appeal from you and has determined that it does not comply with the appeal procedures established in California Code of Regulations (CCR) Title 15, Article 8, and is being screened-out and returned to you pursuant to CCR 3084.3 for the following reason(s):

The action you are seeking is under the jurisdiction of the Board of Parole Hearings. You can submit these concerns via correspondence to the Board of Parole Hearings, Quality Control Unit, P.O. Box 4036, Sacramento, California, 95812-4036.

N. GRANNIS, Chief
Inmate Appeals Branch

"EMERGENCY" "602" Appeal": TO: DIRECTOR" C.D.C.R.

## INMATE/PAROLEE
## APPEAL FORM
CDC 602 (12/87)

| | Location: | Institution/Parole Region | Log No. | | Category |
|---|---|---|---|---|---|
| | 1. | | 1. | | |
| | 2. | | 2. | | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| OBA FRELIMO | J-25506 | ASU 1 | C-135 |

**A. Describe Problem:** I'M filing this 602 in direct Appeal on the B.P.T. denial of my "Due process" rights. Denying to parole me after 12 months of parole revocation, as in accordance with the Plea A-greement deal I agreed to in court. [see exhibit "A" Trans-cripts attached.] The B.P.T. denial to calculate a term and set a release date, illegally giving me a LWOP, when IN fact I was sentenced to an indeterminate sentence of "15 to Life" "with" the possibility of parole. [SEE ...

If you need more space, attach one additional sheet.        [see attached page: ] ⟹

**B. Action Requested:** 1) REQUEST THAT B.P.T. DECISION BE FIXED/REVERSED AND MY "immediate release" being I have served the whole total state prison term 15 years. and have 734 days credit for time served as was the sentence & time given to me in my plea deal. SEE⟹ ATTACHED

Inmate/Parolee Signature: _Oba Frelimo_                    Date Submitted: 10-8-07

**C. INFORMAL LEVEL** (Date Received: _____ )

Staff Response: _____

_____

_____

_____

INMATE APPEALS BRANCH    OCT 12 2007    RECEIVED

Staff Signature: _____ Date Returned to Inmate: _____

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____               Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim                    CDC Appeal Number: _____

. DESCRIBE PROBLEM: (CONTINUED)..... EXHIBIT "B" ABSTRACT OF Judgement ATTA
HED] As well as setting a release date based on my felony
Plea Minutes report, clearly stating that I was "sentence
to state Prisons for a Period of 15 years, upper term, Total
state Prisons Term 15 years. [see attached Exhibit "C". MINU
ES. report] The B.P.T. DENIED MY "DUE PROCESS" rights by Denin
my Parole, in which my sentence deal was to be carried ou
at a Boot Camp, in which I was denied enterance. by A fal
y Label of Commitment offense, 1ST DEGREE MURDER. [see Exhi
"D". Boot Camp worksheet attached.] In which had I been Plac
in Boot Camp my Time served MIN. was 7 years without disciplinary
infractions, & 15 Years max Total, if disciplinary infractions we
lauant which would Max my Date of Parole, & I'd be released
after serving the total 15 years on Lifetime Parole as stipula
in my court Transcripts. [see Exhibit "A"] The B.P.T. finding
insuitable for Parole & Denying me 5 years was a violation o
my DUE PROCESS rights & Plea Agreement. The unsuitability facto
do not support denial of Parole & the BOARDS Reliance on The
Circumstances of The Commitment offense violated my DUE Proc
ss rights, as well the B.P.T. Decision was arbitrary & therefore
did Not comport with The some evidence standard. [see case
Superintendent v. Hill 472, U.S. 454-55, 457, and GuidePosts for A
ling The Some Evidence Standard; Bibbs v. Terhune, 334 f.3d 910 (
· Cir. 2003), SASS, 461 f.3d 1123, IRONS v. Carey f.3d 658 (9th Cir. 2007)
Based on The Above & other Listed case's cited, I am "entitled"
to Parole & A Date for Parole, and relief under The standard
of 28. U.S.C.§ 2254(d). Yet, I wasn't found suitable for Parole.
The B.P.T. Never Moved Past The suitability-finding function in
C.A. Penal Code § 3041(b) to calculate a Term and set a release
date as required by § 3041(a). I was instead assigned a "1 wor

Exhibit "A" · Transcripts

1        IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2        IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

3            BEFORE HONORABLE ALFRED CHIANTELLI, JUDGE

4                         DEPARTMENT 22

5                         ---oOo---

6   PEOPLE OF THE STATE OF CALIFORNIA, )
                                       )
7                          PLAINTIFF,  )
    VS.                                )   CASE NO. 151728
8                                      )   CHANGE OF PLEA
    OBA LEE FRELIMO,                   )
9                                      )
                           DEFENDANT.  )
10  _____)

11                         ---oOo---
                    REPORTER'S TRANSCRIPT
12                   DECEMBER 13, 1993
                         ---oOo---
13

14  A P P E A R A N C E S:
    FOR THE PEOPLE:                  HON. ARLO SMITH,
15                                   DISTRICT ATTORNEY
                                     BY:  WILLIAM FAZIO,
16                                   ASST. DISTRICT ATTORNEY

17  FOR THE DEFENDANT:              BARRY MELTON,
                                     ATTORNEY AT LAW
18
    OFFICIAL COURT REPORTER:        NOREEN T. IKEUYE, C.S.R.
19                                   CERTIFICATE NO. 3538

20

21                         ---oOo---

22

23

24

25

26

ENDORSED
F I L E D
San Francisco County Superior Court

JAN 14 1994

ALAN CARLSON, Clerk
CAROLYN D. MACABEO
BY: _____
Deputy Clerk

2

1    DECEMBER 13, 1993                    9:00 AM

2                   P-R-O-C-E-E-D-I-N-G-S

3                        ---oOo---

4              THE COURT:  LINE 18, OBA LEE FRELIMO.

5              MR. FAZIO:  YOUR HONOR, BILL FAZIO FOR THE

6    PEOPLE IN THIS MATTER.

7              MR. MELTON:  BARRY MELTON FOR MR. FRELIMO.

8              THE COURT:  EVERYONE STATED THEIR APPEARANCES.

9    THIS MATTER IS SET FOR TRIAL.  MR. OBA LEE FRELIMO IS

10   PRESENT.

11         YES.  ARE THERE NEGOTIATIONS HERE?

12             MR. FAZIO:  YES, THERE IS.

13             MR. MELTON:  YES.

14             THE COURT:  WHO WISHES TO STATE THE

15   NEGOTIATIONS?

16             MR. FAZIO:  I THINK MR. MELTON WILL STATE THAT

17   HIS CLIENT IS GOING TO PLEAD TO COUNT 3, THE --

18             MR. MELTON:  YES.

19             MR. FAZIO:  -- CHARGE OF MURDER.  WE WILL

20   STIPULATE IT'S IN THE SECOND DEGREE.

21             MR. MELTON:  THAT'S CORRECT.

22             THE COURT:  IS THAT CORRECT?

23             MR. MELTON:  YES.

24             THE COURT:  ALL RIGHT.  AND HAVE YOU INFORMED

25   YOUR CLIENT OF THAT, THIS IS AN INDETERMINATE SENTENCE.

26             MR. MELTON:  YES.

27             THE COURT:  EVERYONE UNDERSTANDS THAT AT THE

28   TIME OF THIS ALLEGED CRIME, THE DEFENDANT WAS UNDER THE

3

1    AGE OF 17.  IF IN FACT HE PLEADS GUILTY TO THIS, BY LAW

2    UNDER 707.2 OF THE WELFARE & INSTITUTIONS CODE, I WILL

3    REFER THIS TO THE CALIFORNIA YOUTH AUTHORITY, FOR THEM

4    TO DO AN IN-DEPTH STUDY FOR THEIR RECOMMENDATION ON

5    THIS.  AND FURTHERMORE, WHEN I DO THAT, I WILL NOT GET A

6    PRE-SENTENCE REPORT.

7            MR. MELTON:  YES, IT'S UNDERSTOOD.

8        MR. FAZIO AND I AGREED IN CHAMBERS THAT THE

9    FOLLOWING DOCUMENTS COULD ACCOMPANY MR. FRELIMO TO THE

10   YOUTH AUTHORITY -- ONE BEING THE PRELIMINARY HEARING

11   TRANSCRIPT, INCLUDING -- IT'S AN ATTACHMENT IN THIS

12   CASE.  TWO WOULD BE THE 707 PROBATION OFFICER'S REPORT.

13       AND IF THE COURT DOESN'T HAVE A COPY OF, I'D BE

14   HAPPY TO SUPPLY THE COURT WITH MINE.

15           MR. FAZIO:  DID YOU WANT A TRANSCRIPT OF THE

16   707 PROCEEDINGS?

17           MR. MELTON:  I HAVE ONE WITH ME.

18           MR. FAZIO:  YES.

19           MR. MELTON:  AND --

20           MR. FAZIO:  AND A COPY OF THE INFORMATION.

21           MR. MELTON:  I HAVE A COPY OF THE INFORMATION.

22           THE COURT:  ALL RIGHT.  PROVIDE THAT PACKAGE

23   FOR MY CLERK.

24           MR. MELTON:  MR. FRELIMO, I AM GOING TO MAKE A

25   STATEMENT TO THE COURT ABOUT YOUR CASE.  IT IS VERY

26   IMPORTANT THAT YOU LISTEN TO IT CAREFULLY.

27           YOUR HONOR, MR. AZCANIO WANTS TO ENTER A PLEA OF

28   GUILTY TO THE CHARGE OF MURDER IN THE SECOND DEGREE, A

4

1    VIOLATION OF SECTION 187 OF THE CALIFORNIA PENAL CODE, A

2    FELONY.  I HAVE TOLD HIM THAT SEVERAL CONSTITUTIONAL

3    RIGHTS WILL BE GIVEN UP IF THE COURT ACCEPTS THIS PLEA,

4    INCLUDING:

5

6        FIRST:  HIS PRIVILEGE AGAINST SELF-INCRIMINATION;

7    THAT IS, HE IS UNDER NO OBLIGATION TO SAY ANYTHING THAT

8    MAY TEND TO INCRIMINATE HIM.  AND I HAVE TOLD HIM THAT

9    BY PLEADING GUILTY HE IS, IN FACT, INCRIMINATING

10   HIMSELF.

11       SECOND:  HIS RIGHT TO BE TRIED BY A JURY; IN THIS

12   REGARD, I HAVE ADVISED HIM THAT HE CANNOT BE CONVICTED

13   UNLESS ALL TWELVE JURORS AGREE THAT THE PROSECUTION HAS

14   PROVED HIS GUILT BEYOND A REASONABLE DOUBT.

15       THIRD:  HIS RIGHT TO SEE AND HEAR HIS ACCUSERS

16   TESTIFY IN OPEN COURT, IN HIS PRESENCE, AND TO HAVE HIS

17   ATTORNEY CROSS EXAMINE THEM.

18       WE HAVE DISCUSSED THE ELEMENTS OF THE CHARGE

19   AGAINST HIM AND THE POSSIBLE DEFENSES TO THE CHARGE, AND

20   I HAVE ADVISED HIM OF THE LAW AS IT RELATES TO THE FACTS

21   OF HIS CASE.  I HAVE ADVISED HIM OF THE LEGAL

22   CONSEQUENCES OF A GUILTY PLEA TO THE CHARGE AND THAT THE

23   PUNISHMENT FOR THE OFFENSE IS 15 YEARS TO LIFE IN STATE

24   PRISON.

25       UPON HIS RELEASE FROM PRISON CUSTODY HE MAY BE

26   PLACED ON PAROLE -- I BELIEVE IT'S FOR LIFE, YOUR HONOR.

27   I COULD BE WRONG  RATHER THAN

28            THE COURT:  ON MURDER.

5

1    MR. MELTON:  YES.  WHAT IS CONTAINED IN THE --

2    IT'S A LIFETIME PAROLE PERIOD FROM THE DATE OF HIS

3    INITIAL PAROLE.  HOWEVER, IF PAROLE IS REVOKED,

4    CONFINEMENT PURSUANT TO A REVOCATION OF PAROLE IN THE

5    ABSENCE OF A NEW CONVICTION AND COMMITMENT TO PRISON

6    UNDER OTHER PROVISIONS OF LAW SHALL NOT EXCEED 12

7    MONTHS, EXCEPT AS PROVIDED BY PENAL CODE SECTION

8    3057(C), SUBSEQUENT ACTS OF MISCONDUCT COMMITTED BY

9    PAROLEE WHILE CONFINED PURSUANT TO THAT PAROLE

10   REVOCATION.

11       THIS PLEA IS OFFERED AS A RESULT OF DISCUSSIONS

12   WITH ASSISTANT DISTRICT ATTORNEY WILLIAM FAZIO, THIS

13   COURT, AND MYSELF.  AND I HAVE INFORMED MR. FRELIMO THAT

14   MR. FAZIO WILL RECOMMEND, AND THE COURT HAS INDICATED,

15   THAT MR. FRELIMO WILL RECEIVE THE 15 YEARS TO LIFE

16   SENTENCE.

17       FURTHER, IT'S A FEATURE OF MY AGREEMENT WITH MR.

18   FAZO THAT THE REMAINING CHARGES IN THE INFORMATION WILL

19   BE DISMISSED.  AND FURTHER, THAT THE DISTRICT ATTORNEY'S

20   OFFICE DOES NOT INTEND TO FILE ANY NEW CHARGES BASED ON

21   PRESENTLY KNOWN CONDUCT THAT IS ALLEGED TO HAVE OCCURRED

22   IN JUVENILE HALL DURING THE PERIOD OF MR. FRELIMO'S

23   INCARCERATION THERE SINCE DECEMBER 30TH, 1992.

24       AND FINALLY, THERE IS A MISDEMEANOR CASE NOW

25   PENDING IN DEPARTMENT 14 OF THE MUNICIPAL COURT

26   REGARDING AN ALLEGATION OF ESCAPE FROM CUSTODY.  AND

27   THAT CASE WILL BE DISMISSED.

28       MR. FAZIO:  THAT'S CORRECT, YOUR HONOR.

6

1    THE COURT:  ALL RIGHT.  YOU HAVE HEARD ALL OF

2    THE STATEMENTS MADE TO THE COURT BY YOUR ATTORNEY, THE

3    STATEMENTS MADE BY THE DISTRICT ATTORNEY.

4    ARE THEY TRUE IN ALL RESPECTS AS FAR AS THE

5    CONSEQUENCES OF WHAT YOU EXPECT TO RECEIVE IN EXCHANGE

6    FOR YOUR GUILTY PLEA?

7    THE DEFENDANT:  YES.

8    THE COURT:  DO YOU PERSONALLY GIVE UP YOUR

9    RIGHT AGAINST SELF INCRIMINATION ON THE CHARGE OF

10   MURDER, COUNT 3?

11   AND SO THAT THE RECORD IS CLEAR, COUNSEL, IS IT

12   STIPULATED THAT IT'S MURDER IN THE SECOND DEGREE?

13   MR. FAZIO:  IT IS SO STIPULATED.

14   MR. MELTON:  YES.

15   THE COURT:  ALL RIGHT.

16   THE DEFENDANT:  YEAH.

17   THE COURT:  DO YOU PERSONALLY GIVE UP YOUR

18   RIGHT TO TRIED BY A JURY TO THE CHARGE OF MURDER IN THE

19   SECOND DEGREE?

20   THE DEFENDANT:  YES.

21   THE COURT:  DO YOU PERSONALLY GIVE UP YOUR

22   RIGHT TO SEE, HEAR, AND QUESTION WITNESSES AGAINST YOU

23   TO THE CHARGE OF MURDER IN THE SECOND DEGREE?

24   THE DEFENDANT:  YES.

25   THE COURT:  IF YOU ARE NOT A CITIZEN, YOU ARE

26   HEREBY ADVISED THAT CONVICTION OF THIS OFFENSE WHICH YOU

27   HAVE BEEN CHARGED MAY HAVE THE CONSEQUENCES OF

28   DEPORTATION, EXCLUSION FROM ADMISSION TO THE UNITED

7

1   STATES, OR DENIAL OF NATURALIZATION PURSUANT TO THE LAWS

2   OF THE UNITED STATES.

3       DO YOU UNDERSTAND THAT?

4           THE DEFENDANT:  YES.

5           THE COURT:  WHAT IS YOUR PLEA TO VIOLATING

6   SECTION 187 CALIFORNIA PENAL CODE, MURDER IN THE SECOND

7   DEGREE?

8           THE DEFENDANT:  GUILTY.

9           THE COURT:  COUNSEL, DO YOU STIPULATE THAT

10  THERE IS A FACTUAL BASIS FOR THIS COURT TO ACCEPT THIS?

11          MR. MELTON:  BASED ON DISCOVERY PROVIDED AND

12  THE EVIDENCE ADDUCED AT THE PREVIOUS HEARINGS IN THIS

13  MATTER.

14          THE COURT:  AND MR. FAZIO, DO YOU HAVE A GOOD

15  FAITH CASE?

16          MR. FAZIO:  YES, YOUR HONOR.

17      AND MAY I JUST POINT OUT ALSO THAT PRIOR TO

18  ENTERING IN TO THIS DISPOSITION WITH MR. MELTON, I

19  DISCUSSED IT WITH LINDA KLEE OF OUR OFFICE.  AND MORE

20  IMPORTANTLY, I HAVE DISCUSSED IT WITH THE SURVIVING

21  VICTIMS OF MISS GIN (PHONETIC), WHO IS THE INDIVIDUAL

22  WHO DIED AS A RESULT OF MR. FRELIMO'S ACTIONS.  AND THEY

23  UNDERSTAND AND ACCEPT THE PROPOSED DISPOSITION IN THIS

24  CASE.

25          THE COURT:  ALL RIGHT.  THE COURT ALSO FINDS

26  THAT DEFENDANT HAS BEEN INFORMED OF HIS RIGHTS, AND THAT

27  HE HAS FREELY AND VOLUNTARILY KNOWINGLY AND

28  INTELLIGENTLY GIVEN UP HIS RIGHTS.  AND THAT HE HAS

8

1    ENTERED HIS PLEA OF GUILTY WELL KNOWING THE CONSEQUENCES

2    OF THAT PLEA.   THEREFORE, THE PLEA WILL BE ACCEPTED.

3         THE DISTRICT ATTORNEY'S MOTION TO DISMISS COUNTS 1

4    AND 2?

5              MR. FAZIO:   YES, PURSUANT --

6              THE COURT:   IS GRANTED.

7              MR. FAZIO:   -- TO SECTION 1385.

8              THE COURT:   ALL RIGHT.   DISMISSED, 1385,

9    INTERESTS OF JUSTICE.

10             MR. FAZIO:   COULD WE HAVE A RETURN DATE OR DO

11   THEY ADVISE THE COURT WHEN THEY ARE FINISHED?

12             THE CLERK:   MARCH 14TH.

13             THE COURT:   MARCH 14TH, MONDAY.

14                       ---000---

15

16

17

18

19

20

21

22

23

24

25

26

27

[Exhibit "B". Abstract of JudgEMENT]

INDETERMINATE SENTENCE

FORM CR 292

| ☒ SUPERIOR ☐ MUNICIPAL ☐ JUSTICE | COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO |
|---|---|

COURT (I.D.)    BRANCH OR JUDICIAL DISTRICT: _____

**F I L E D**

San Francisco County Superior Court

MAY 12 1994

ALAN CARLSON, Clerk

BY: _____ Deputy Clerk

| PLE OF THE STATE OF CALIFORNIA versus | ☒ PRESENT | 151728 | - A |
|---|---|---|---|
| ENDANT: OBA LEE FRELIMO | | | - B |
| AKA: | ☐ NOT PRESENT | | - C |
| IMITMENT TO STATE PRISON | AMENDED | | - D |
| TRACT OF JUDGMENT | ABSTRACT ☐ | | - E |

| OF HEARING (MO) (DAY) (YR) | DEPT. NO. | JUDGE | CLERK |
|---|---|---|---|
| /05/94 | SC22 | ALFRED CHIANTELLI | JACQUES KHOROZIAN |

| AREA CHARD CORVILLE | COUNSEL FOR PEOPLE WILLIAM FAZIO | COUNSEL FOR DEFENDANT BARRY MELTON | PROBATION NO. OR PROBATION OFFICER 339140 |
|---|---|---|---|

DEFENDANT WAS CONVICTED OF THE COMMISSION OF THE FOLLOWING FELONIES:

☐ ADDITIONAL COUNTS ARE LISTED ON ATTACHMENT _____ (NUMBER OF PAGES)

| COUNT | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION MO | DAY | YEAR | JURY TRIAL | COURT TRIAL | PLEA | CONCURRENT | CONSECUTIVE | 654 STAY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 | PC | 187 | MURDER, 2ND | 92 | 12 | 14 | 93 | | | X | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

ENHANCEMENTS charged and found true TIED TO SPECIFIC COUNTS (mainly in the § 12022-series) including WEAPONS, INJURY, LARGE AMOUNTS OF CONTROLLED SUBSTANCES, BAIL STATUS, ETC.: For each count list enhancements horizontally. Enter time imposed for each or "S" for stayed or stricken. DO NOT LIST enhancements charged but not found true or stricken under § 1385. Add up time for enhancements on each line and enter line total in right-hand column.

| Count | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

ENHANCEMENTS charged and found true FOR PRIOR CONVICTIONS OR PRIOR PRISON TERMS (mainly § 667-series) and OTHER:

List all enhancements based on prior convictions or prior prison terms charged and found true. If 2 or more under the same section, repeat it for each enhancement (e.g., if 2 non-violent prior prison terms under § 667.5(b), list § 667.5(b) 2 times). Enter time imposed for each or "S" for stayed or stricken. DO NOT LIST enhancements charged but not found true or stricken under § 1385. Add time for these enhancements and enter total in right-hand column. Also enter here any other enhancement not provided for in space 2.

| Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Total |
| | | | | | | | | | | |

Defendant was sentenced to State Prison for an indeterminate term:

A. ☐ For LIFE WITHOUT THE POSSIBLITY OF PAROLE on counts _____ .

B. ☐ For LIFE WITH POSSIBILITY OF PAROLE on counts _____ .

☐ _____ on counts. _____

C. ☒ For 15 years to life, WITH POSSIBILITY OF PAROLE on counts 3 _____ .

D. ☐ For 25 years to life, WITH POSSIBILITY OF PAROLE on counts _____ .

. (Specify term on separate sheet if necessary.)

# INDETERMINATE SENTENCE

FORM CR 29

☒ SUPERIOR
☐ MUNICIPAL
☐ JUSTICE

COURT OF CALIFORNIA, COUNTY OF __SAN FRANCISCO__

COURT (I.D.): S38

BRANCH OR JUDICIAL DISTRICT: _____

**F I L E D**

San Francisco County Superior Court

**JUN 2 9 1994**

ALAN CARLSON, Clerk

BY: _____ Deputy Clerk

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA versus | ☒ PRESENT | 151728 – A |
| DEFENDANT: OBA LEE FRELIMO | | – B |
| AKA: | ☐ NOT PRESENT | – C |
| COMMITMENT TO STATE PRISON — AMENDED | | – D |
| ABSTRACT OF JUDGMENT | ABSTRACT ☒ 1ST | – E |

| DATE OF HEARING (MO) (DAY) (YR) 05/05/94 | DEPT. NO. SC22 | JUDGE ALFRED CHIANTELLI | CLERK JACQUES KHOROZIAN |
|---|---|---|---|
| REPORTER RICHARD CORVILLE | COUNSEL FOR PEOPLE WILLIAM FAZIO | COUNSEL FOR DEFENDANT BARRY MELTON | PROBATION NO. OR PROBATION OFFICER 339140 |

1. DEFENDANT WAS CONVICTED OF THE COMMISSION OF THE FOLLOWING FELONIES:

☐ ADDITIONAL COUNTS ARE LISTED ON ATTACHMENT _____ (NUMBER OF PAGES)

| COUNT | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION MO | DAY | YEAR | JURY TRIAL | COURT TRIAL | PLEA | CONCURRENT | CONSECUTIVE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 | PC | 187 | MURDER, 2ND | 92 | 12 | 14 | 93 | | | X | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

2. ENHANCEMENTS charged and found true TIED TO SPECIFIC COUNTS (mainly in the § 12022-series) including WEAPONS, INJURY, LARGE AMOUNTS OF CONTROLLED SUBSTANCES, BAIL STATUS. ET For each count list enhancements horizontally. Enter time imposed for each or "S" for stayed or stricken. DO NOT LIST enhancements charged but not found true or stricken under § 1385. Add up time for enhancements on each line and enter time total in right-hand column.

| Count | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | |
| | | | | | | | | | | | |

3. ENHANCEMENTS charged and found true FOR PRIOR CONVICTIONS OR PRIOR PRISON TERMS (mainly § 667-series) and OTHER: List all enhancements based on prior convictions or prior prison terms charged and found true. If 2 or more under the same section, repeat it for each enhancement (e.g., if 2 non-violent prior pris terms under § 667.5(b), list § 667.5(b) 2 times). Enter time imposed for each or "S" for stayed or stricken. DO NOT LIST enhancements charged but not found true or stricken under § 1385. Add ti for these enhancements and enter total in right-hand column. Also enter here any other enhancement not provided for in space 2.

| Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Enhancement | Yrs. or "S" | Total |

4. Defendant was sentenced to State Prison for an Indeterminate term:

   A. ☐ For LIFE WITHOUT THE POSSIBILITY OF PAROLE on counts _____

   B. ☐ For LIFE WITH POSSIBILITY OF PAROLE on counts _____

   C. ☒ For 15 years to life, WITH POSSIBILITY OF PAROLE on counts ____3____

   D. ☐ For 25 years to life, WITH POSSIBILITY OF PAROLE on counts _____

   E. ☐ For other term prescribed by law on counts _____. (Specify term on separate sheet if necessa

   PLUS enhancement time shown above.

5. ☐ Indeterminate sentence shown on this abstract to be served ☐ consecutive to ☐ concurrent with any prior incompleted sentence(s).

[Exhibit "C": Minutes Report]

SUPERIOR  JRT IN THE CITY AND COUNTY OF SAI  ANCISCO - MINUTES

People of the State of California vs.    OBA  LEE  FRELIMO                    [X] Present

| SC # | Assistant DA of Record | | Attorney of Record | |
|---|---|---|---|---|
| 151728 | B. FAZIO | [X] Present | BARRY  MELTON | [X] Present |
| | Clerk | | Judge | |
| | LOTUS JEW | | ALFRED G. CHIANTELLI | |

Reporter

RICHARD CORVILLE #2675, 850 BRYANT STREET, ROOM 306 - SAN FRANCISCO, CA 94103

Cause on Calendar for Sentence.

Court has appointed MELTON/BARRY, conflict counsel.

Defendant waives formal arraignment for judgment, has been convicted of the crime(s) of felony by plea on : /  /93

| Count | Code | Section | Degree | MC # | Plea |
|---|---|---|---|---|---|
| 3 | PC | 187/F | 2 | 01446771 | G |

The Court has read and considered the pre-sentence report.

The Court orders defendant committed to state prison as follows:

Defendant is sentenced to State Prison for a period of 15 year(s), Upper Term. Total State Prison Term:  15 year(s).

Defendant to receive credit for time served 490 day(s) County Jail 244 day(s) SAGE for a total of 734 day(s).

The Court orders defendant committed to State Prison for 15 years to Life:Upper Term.

The Court states reason for sentence choice.

Defendant shall pay a restitution fine in the amount of $200 pursuant to GC 13967.

Defendant is advised of parole rights.

The defendant is remanded to the California Department of Corrections.

* Housed at CYA until 18th  birthday pursuant to WIC 1731.5(C).

Exhibit "D". Boot Camp Worksheet.

B O O T   C A M P   W O R K S H E E T

IDENTIFYING INFORMATION:

NAME: *FRELIMO*          CDC# *J-25506*      RACE: *B*/*18*
ARRIVAL DATE:    *7-1-94*        COUNTY OF COMMITMENT: *SanFrancisco*

COMMITMENT OFFENSE *Murder  1st*     LENGTH OF SENTENCE *15 - Life*
CONTROLLING: _____
NON-CONTROLLING: _____
                                MIN D.S.L.: _____

T O   B E   C O M P L E T E D   B Y   B O O T   C A M P   C C I

BOOT CAMP ELIGIBILITY:

ELIGIBLE: _____
INELIGIBLE DUE TO: _____
_____

DATE INTERVIEWED: _____  DATE CONTACT SIGNED _____

    BOOT CAMP CCI SIGNATURE _____
    DATE OF ENDORSEMENT: (BY C & PR) _____

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[ EXHibiT B. ]

MC-275

Name Oba Frelimo

Address K.V.S.P. D-7-223

P.O. BOX 5104

Delano, Ca, 93216

CDC or ID Number J-25506

SUPREME COURT
FILED

APR 0 6 2007

Frederick K. Ohlrich Clerk

_____
Deputy

Supreme Court of
California
(Court)

Oba lee Frelimo
Petitioner

vs.

WARDEN, Hedgepeth
Respondent

PETITION FOR WRIT OF HABEAS CORPUS

**S151585**

No. _____
*(To be supplied by the Clerk of the Court)*

**RECEIVED**

APR 6 - 2007

CLERK SUPREME COU

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 60(e)

**This petition concerns:**

- [ ] A conviction
- [×] Parole
- [×] A sentence
- [ ] Credits
- [ ] Jail or prison conditions
- [ ] Prison discipline
- [ ] Other *(specify):* _____

1. Your name: Oba Lee Trelimo

2. Where are you incarcerated? Kern Valley State Prison.

3. Why are you in custody?  [×] Criminal Conviction  [ ] Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

2ND Degree Murder

b. Penal or other code sections: 187

c. Name and location of sentencing or committing court: Superior Court of California, County of San Francisco

d. Case number: 151728

e. Date convicted or committed: 12-14-93

f. Date sentenced: 5-5-94

g. Length of sentence: 15 to Life

h. When do you expect to be released? As Soon As This writ is granted.

i. Were you represented by counsel in the trial court? [×] Yes. [ ] No. If yes, state the attorney's name and address:

Me. Barry Melton, Off. of Public Defender, 814 North st, Woodland, Ca, 95695

4. What was the LAST plea you entered? *(check one)*

- [ ] Not guilty  [×] Guilty  [ ] Nolo Contendere  [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

- [ ] Jury  [ ] Judge without a jury  [ ] Submitted on transcript  [ ] Awaiting trial

6. GROUNDS FOR RELIEF

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(if you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

State Courts Violated My Due Process rights under
The U.S. Constitution 14th Amendment, by Denying my
Writ, without research.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did *exactly what* to violate your rights at what *time (when)* or place *(where). (If available, attach declarations, relevant records, transcripts,* or *other documents supporting your claim.)*

( See Attached Writ Ground #1 and all
Supporting documents)

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

(N/A)

7. Ground 2 or Ground————(if applicable):————

14th Amendment U.S. Consitution Violation of My Due Process rights, B.P.T., NOT following My Plea Agreement.

a. Supporting facts:

{ See Attached writ Ground 2 and all Supporting Documents )

b. Supporting cases, rules, or other authority:

N/A

8. Did you appeal from the conviction, sentence, or commitment? ☐ Yes. ☒ No. If yes, give the following information:

a.  Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"): _____

_____

b.  Result _____  c.  Date of decision: _____

d.  Case number or citation of opinion, if known: _____

e.  Issues raised: (1) _____

(2) _____

(3) _____

f.  Were you represented by counsel on appeal? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

_____

9. Did you seek review in the California Supreme Court? ☐ Yes ☒ No. If yes, give the following information:

a.  Result _____  b.  Date of decision: _____

c.  Case number or citation of opinion, if known: _____

d.  Issues raised: (1) _____

(2) _____

(3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

I was Never assigned appeal counsel, Though I was Told I was! No Appeal was ever filed, to My Knowledge

11. Administrative Review:

a.  If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See In re Muszalski (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

Such Review, Concerning B.P.T.'s decisions does not exist in CDCR., anymore!

b.  Did you seek the highest level of administrative review available? ☐ Yes. ☒ No.
Attach documents that show you have exhausted your administrative remedies.

MC-275 (Rev. July 1, 2005)     **PETITION FOR WRIT OF HABEAS CORPUS**     Page five of six

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court? ☑ Yes. If yes, continue with number 13. ☐ No. If no, skip to number 15.

13. a. (1) Name of court: Superior Court of California

    (2) Nature of proceeding (for example, "habeas corpus petition"): Habeas Corpus Petition

    (3) Issues raised: (a) The B.P.T. failed to Grant Parole & Parole Date.

    (b) _____

    (4) Result (Attach order or explain why unavailable): Denied

    (5) Date of decision: 1-8-07

  b. (1) Name of court: _____

    (2) Nature of proceeding: _____

    (3) Issues raised: (a) _____

    (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

    N/A

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

    There is no Delay.

16. Are you presently represented by counsel? ☐ Yes. ☑ No. If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court? ☑ Yes. ☐ No. If no, explain: A Motion To get my Sentence reduced or suspended, Under P.C. Section 170.195

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court: The lower Court's Denied my petition.

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 4-1-07

▶ _____
(SIGNATURE OF PETITIONER)

Page 2

PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District NortherN | |
|---|---|---|
| Name (under which you were convicted): Oba L. Frelimo | Docket or Case No.: 5460 (151728) 3151585 | |
| Place of Confinement: KerN Valley STATE PrisoN | Prisoner No.: J-25506 | |

Petitioner (include the name under which you were convicted)          Respondent (authorized person having custody of petitioner)

Oba L. FreliMO          v.          WardeN Hedgepeth

The Attorney General of the State of CaliforNia

PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging: _____
   SaN FraNcisco CouNTY SuPerior CourT, 400
   McAllister ST, S.F. C.A. 94102
   (b) Criminal docket or case number (if you know): (151728) - (5460)

2. (a) Date of the judgment of conviction (if you know): 12 - 14 - 93
   (b) Date of sentencing: 5 - 5 - 94

3. Length of sentence: 15 To Life

4. In this case, were you convicted on more than one count or of more than one crime? Yes ☐  No ☑

5. Identify all crimes of which you were convicted and sentenced in this case: 2 Nd
   Degree Murder _____

6. (a) What was your plea? (Check one)
   (1)    Not guilty ☐          (3)    Nolo contendere (no contest) ☐
   (2)    Guilty ☑             (4)    Insanity plea ☐

   (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or
   charge, what did you plead guilty to and what did you plead not guilty to?_____ _____

RECEIVED

MAR 2 9 2007

CLERK SUPREME COURT

_____

(c) If you went to trial, what kind of trial did you have? (Check one)

Jury ☐        Judge only ☐

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?

Yes ☐   No ☑

8. Did you appeal from the judgment of conviction?

Yes ☐   No ☑

9. If you did appeal, answer the following:

(a) Name of court: _____

(b) Docket or case number (if you know): _____

(c) Result: _____

(d) Date of result (if you know): _____

(e) Citation to the case (if you know): _____

(f) Grounds raised: _____

_____

_____

_____

_____

(g) Did you seek further review by a higher state court?   Yes ☐   No ☑

If yes, answer the following:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Result: _____

(4) Date of result (if you know): _____

(5) Citation to the case (if you know): _____

(6) Grounds raised: _____

_____

_____

(h) Did you file a petition for certiorari in the United States Supreme Court?   Yes ☐   No ☑

If yes, answer the following:

(2) Result: _____

_____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?

Yes ☑ No ☐

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: S.F. County Superior Court

(2) Docket or case number (if you know): N/A

(3) Date of filing (if you know): N/A

(4) Nature of the proceeding: State Writ of Habeas Corpis

(5) Grounds raised: Ineffective Assistance of Cansel.

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?    Yes ☐  No ☑

(7) Result: _____

(8) Date of result (if you know): _____

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?      Yes ☐   No ☒

(7) Result: _____

(8) Date of result (if you know): _____

(c) If you filed any third petition, application, or motion, give the same information:

    (1) Name of court: _____

    (2) Docket or case number (if you know): _____

    (3) Date of filing (if you know): _____

    (4) Nature of the proceeding: _____

    (5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?      Yes ☐  No ☒

(7) Result: _____

(8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

    (1)  First petition:      Yes ☐    No ☐

    (2)  Second petition:   Yes ☐    No ☐

    (3)  Third petition:     Yes ☐    No ☐

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_____

_____

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

GROUND ONE: State Courts Violated My Due Process rights Under The U.S. Constitution 14th Amendment, by Denying nati without research.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

State Courts decision was based on the information which the Board of Prison Terms based Their decision on, yet they failed to assess My entire situation, based on my entire Caseload, as opposed To The Partial information Issed! Which was a Violation of my Due Process rights Under The 14th Amendment of The U.S. Constitution. (SEE Attach PAGES.

(b) If you did not exhaust your state remedies on Ground One, explain why: _____

_____

_____

_____

(c) Direct Appeal of Ground One:

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐ No ☒

(2) If you did not raise this issue in your direct appeal, explain why: I WAS Never given AN court appointed Attorney To file an Appeal, Though I was told one was assigned to My case.

(d) Post-Conviction Proceedings:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?    Yes ☐ No ☒

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

1)

(Ground ONE: CON.)    (1)

1  The denial of My Parole, is NOT Just UNJust, it
2  is unethical in reasons and theory, and cruel and
3  unusual punishment, a violation of My 8th Amendment
4  U.S. Constitutional rights. State Court's stated The
5  denial was as a result due to information pre-
6  -sented by The Board of Prison Terms. That My
7  Past Juvenile and Prison record was of a Violent
8  Nature, Making Me unfit to be released into
9  society because I posed a threat. As well, that
10  I lack the skills, Trades school completions, etc
11  , to Meet parole requirements! However The B.P.T.
12  failed to explain in full why that is so, in
13  Which I cant be held fully accountable for due
14  To Various legitimate reasons, As follows! In
15  regards To The denial of My Parole based on
16  Past Misconduct and violations of the law, it has
17  been Noted and documented, that as a child
18  I was a Troubled Kid who was early diagno-
19  -sed with suffering from a Mental Disorder,
20  Anti-Social personality disorder. It was deter-
21  -ined that due to that disorder, Many of My
22  Juvenile offense's were Triggered from That. In
23  Which it was Never Treated, Though My Cond-
24  -ition was Known. Instead I was held acc-
25  -ountable for My action's, as it was stated
26  I understood My actions and could've controlle
27  -d My behavior. Which was the basis for
28  Courts To Try Me as an adult at....

2)

(Ground ONE: Con.)    (2)

1  ... 16 years of age, which is when I caught
2  the Offense I am now locked-up for! How-
3  -ever year's later, after NUMEROUS prison Viol-
4  -ations of Violence. and State psychologist
5  observance, it was determined that I did
6  suffer a greater Mental health problem that was
7  the reason behind my violent behaviors, and that
8  I was unable to understand, recognize, or control
9  These impulse's, which Doctor's were granted
10  an order from the courts, too force Medica-
11  -te. me if I didn't want to take the Medica-
12  -tion They perscribed To balance the chemi-
13  -cal imbalance in my brain which caused
14  these impulses! (SEE attached Exhibit "B".)
15  I was diagnosed To have" Chronic paranoid
16  schizophrenai". This finding shows that over
17  The year's I've been suffering mentally and
18  physically, because as a Juvenile The ball
19  was dropped and my Mental health needs
20  weren't addressed even though it was Known
21  that I had a Mental disorder. I've been forc-
22  -ed furtherly to be punished for Crimes Comm-
23  -itted due to my Mental Disorders, as if they
24  hold NO Merit or effect, as to my actions. When
25  in fact they do and psychologist have said so, and
26  proven such to courts. The B.P.T. and state
27  courts failed to assess that information in
28  their decision to deny my parole! further...

3)

Third and One: con:)                    (3)

1  ... binding and finding me guilty for something I
2  had no control over. Which is cruel and unusual
3  punishment and a violation of my due proce-
4  -ss rights, protected by The 14th Amendment
5  of The U.S. Constitution. I'm being kept in
6  Prison, after serving 15 year's, because of a
7  Mental disorder that deemed me incapable
8  of Controling or detecting violent impulses,
9  which wasen't addressed or found out,
10 until later on in my incarceration, after
11 Numerous violent R.V.R's, were established! Which
12 is clearly a violation of my 14th Amendment
13 U.S. Constitutional rights and 8th Amendment
14 U.S. Constitutional rights and I seek relief
15 from federal courts To reverse state court-
16 -'s denial, and grant me a parole date,
17 and immediate release from The Depart-
18 -ment of Correction's K.V.S.P, in which
19 now I've been transported To CSP.Corcora.
20 .N State Prison.
21
22
23
24
25
27
28

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?

Yes ☐  No ☑

(4) Did you appeal from the denial of your motion or petition?

Yes ☐  No ☑

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐  No ☐  N/A

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____ N/A _____

_____

Docket or case number (if you know): _____ N/A _____

Date of the court's decision: _____ N/A _____

Result (attach a copy of the court's opinion or order, if available): _____ N/A _____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____ N/A _____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: I filed A State Habeas Corpus, which is attached, & They Denied My Writ. { See Exhibit "A" }

GROUND TWO: 14th Amendment U.S. Constitution Violations of My Due Process, B.P.T. Not following My Plea· Agreement.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): { see Exhibit "A" State Writ "} I clearly showed without a doubt that The B.P.T. denying My Parole was an error and Violation of My Plea-agreement, I took a deal in court

for the 15 to life sentence, in which it was
stipulated and agreed upon that I would serve
7 years at a Prison Bootcamp and be.{ see ATTACHED PAGE

(b) If you did not exhaust your state remedies on Ground Two, explain why: _____

_____

_____

(c)  Direct Appeal of Ground Two:

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐   No ☐   N/A

    (2) If you did not raise this issue in your direct appeal, explain why: _____ N/A

_____

_____

(d)  Post-Conviction Proceedings:

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a

    state trial court?

        Yes ☒   No ☐

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: ▓▓▓▓▓▓▓▓▓▓   N/A

    Name and location of the court where the motion or petition was filed: _____

_____

    Docket or case number (if you know): _____ N/A _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

    (3) Did you receive a hearing on your motion or petition?

        Yes ☐   No ☒

    (4) Did you appeal from the denial of your motion or petition?

        Yes ☒   No ☒   ▓▓▓▓▓▓▓▓▓▓   N/A

    (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

        Yes ☒   No ☐

    (6) If your answer to Question (d)(4) is "Yes," state:

    Name and location of the court where the appeal was filed: _____ N/A _____

Ground Two: CON                    (1)

1)

1 .... released on life-time parole. If I committed
2 any violations, I could be held longer, only up until
3 15 years which would max out my time. And That
4 be "released" on parole for life! If and when
5 on parole, I violated, then I could be held
6 for "life", or released whenever The B.P.T.
7 determined I was fit! Those were the terms
8 on which my deal and sentence was agreed
9 upon, based on the fact I was a minor when
10 the offense occurred and it was stipulated
11 I had no intent to kill anyone, the death
12 was caused in a Tragic automobile accide-
13 -nt! However once received from C.Y.A. on
14 my 18th Birthday, To State Prison San Quin
15 -Ton, The Boot camp denied my entrance
16 into Their program and I ended up railroad
17 -ed into The Adult prison system! {see Exh-
18 -ibit "C" Boot camp worksheet) C.D.C. did wh-
19 -at they wanted To do with my case, They
20 disregarded my Plea-agreement and deal I
21 took in court, Thus violating my 14th Amend-
22 -ment U.S. Constitutional Due Process rights.
23 This Violation was intentionally done, because as
24 The worksheet it stated I had 1st degree
25 Murder and that's not true, which resulted
26 in their denial, Thus forth, I was left
27 Under the belief state Prison would carry
28 out my plea-agreement and release me ....con...

(Ground Two: CON)    (2)

2.)

1  .... after 7 year's on my M.E.P.D., which didn't
2  happen. The B.P.T. denial of my Parole based
3  on my violations in prison is Tripple jeapordy
4  and cruel and unusual punishment a violation
5  of my 8Th Amendment U.S. Constitutional rights,
6  and 14Th Amendment U.S. Constitutional rights
7  of Due Process. I'm being punished in 3-
8  different ways for violations committed as a
9  result of my Mental health Conditions. On all
10 Violent Prison violations I was placed in the
11 Administrative Segregation unit or S.H.U. having
12 for a period of Months or Year's based on
13 That violation. Once the 115 R.V.R. determined
14 I was guilty, I was given higher points
15 in my custody level and My M.E.P.D. was
16 moved further up, days, months, years, in
17 accordance to the established time period
18 of each violation. My M.E.P.D. went from
19 2001 to 2006, which was the Max-date.
20 What other purpose is there to take time
21 away from my M.E.P.D., other than to prol-
22 -ong my incarceration Till the date comes
23 To parole Me. The Courts failed to ev-
24 -en examine and address this issue
25 as applied to the Laws in which I was
26 sentenced under, for the time. I'm supp-
27 -osed to do. They failed to address that
28 by the Sentencing Judge granting Me (CON)

(3)

3)

(Ground Two: CON)

1   ... 734 days credit for "Time Served," in order
2   for that time to actually account for any-
3   thing and be given to me, I must be rel-
4   -eased on the Date that I can be pa-
5   -roled! I could've been paroled (4·12·06)
6   on my M.E.P.D., yet the B.P.T., failed to
7   released me and properly assess My
8   Case factors and plea-agreement. My Case
9   in itself is far different from the Average
10  inmate, because I was a Minor at the
11  time of my offense, so the laws' and penal-
12  -ties and nature of my case was solely
13  Juvenile. I have no adult criminal history
14  record. I've been incarcerated since 16 years
15  -s of age. I am a product of The System
16  that raised me, from 8th, Y.G.C., C.Y.A., to
17  prison. I need relief from prison to
18  be allowed the ability and opportunity to
19  live my life as an adult. and move on
20  with my life. Denying my Parole and holding
21  me in prison furtherly, when I've served 15
22  years' of my Sentence Term is A violation
23  of my Due process rights, protected by the
24  14th Amendment of the U.S. Constitution,
25  and 8th Amendment U.S. Constitution. I seek
26  federal relief, reversal of State Courts Denial
27  and B.P.T., and To be released from prison
28  immediately, and given a parole Date.

Page 9

Docket or case number (if you know): _____ N/A _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____ N/A _____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this

issue: _____

_____ N/A _____

_____

(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative

remedies, etc.) that you have used to exhaust your state remedies on Ground Two: __State

Habeas Corpus, Challenging B.P.T. Denial

of Parole.

GROUND THREE: 8th Amendment U.S. Constitutional rights

Violated, Courts denial is Cruel and Unusual punishment.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The State Courts Denial of my Habeas Corpus

and for granting That I be given a parole

date and paroled, based on the B.P.T.

information of My lack of skills, Trades,

and education, is Cruel and Unusual Punishment.

The State Courts failed To Assess My case load. (SEE ATTO

PAGE.

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

_____

_____

(c) Direct Appeal of Ground Three:

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐ No ☐    N/A

(2) If you did not raise this issue in your direct appeal, explain why: I was Indig-

-ent and court failed To give Me an

Appeal attorney.

(Ground Three: CON)    (1)

1  ... B.P.T. provided information, which courts
2  failed to investigate the reasons as to why
3  that is so, and I've done 15 years in pri-
4  -son. If in fact I was to blame and be
5  held accountable. The fact remains, I've no
6  control over the situation. Prison's are and
7  have been overly overcrowded in California.
8  Due to an inmate's custody level, that deter-
9  -mines what an inmate has access too, w-
10  -hat Trades, jobs, etc! There's waiting lists,
11  all new arrivals go on, "Lifer's" go on the bott-
12  -om of the list. Those with Parole dates,
13  short-time who get day for day, or of a
14  lower custody level, get 1st priority &
15  assignment. So in mostly all Lifer' cases
16  it takes years before a lifer even gets
17  Assigned a position. With The overcrowd-
18  -ing of inmates Additionally due to cramp-
19  -ed conditions violence occur's which stops
20  all programs. Depending on the level of V-
21  -iolence it can be lock-downs for Months
22  or years. Which for level IV prisons it's
23  Mostly impossible for inmate's to program,
24  it's so crowded violence always erupts.
25  That is the culture of prison, period, for if
26  it wasn't guards wouldn't need guns and
27  gun towers To control it. So by far am
28  I even in an environment that's ... con

(Ground Three: CON:)    (2)

1 ... Conducive to my betterment as a citizen
2 and human being in this country for "reha-
3 -bilitation." Along with my diagnosed Mental
4 disability, prison life contributes to violence,
5 and condemns me for it as guilty. I've
6 just been assigned a job, after 14 years in
7 This system, it's my 1st job. Yet I need
8 school and Trade's and this system is
9 Not designed to allow me to participate in
10 school, work, and Trade at once, yet it
11 Could and would have to, if federal Courts
12 would grant me relief in such, to Aid
13 in my incentive and want for rehabilita-
14 tion! Which I request such, as well to
15 dismiss courts denial and reverse it,
16 granting my parole & parole date, based
17 on my not being in Control of this system.
18 I can't just place myself in school, Job, or
19 Trade, as people in society can do. The
20 STATE Prison officials decide what I can
21 do, when I can do it, and for how long.
22 So I can't be wrongly accused of failure
23 To Comply with Parole requirements, when
24 I have no control of Assignment, to do
25 what I need to do. I'm limited in that
26 department and based on the B.P.T. Kno-
27 -wing that, they should've paroled me
28 and recommended a Temporary .... (con)

(Ground Three: CON)    (3)

1 ... residence, at a state halfway house of
2 some sort, so that I could obtain the
3 education, Trades and job training that
4 prison can't afford to provide me and
5 prepare me to live as a contributer to
6 society, and law abiding citizen, due
7 to overcrowding. In which once I co-
8 -mpleted my education, Trades, and Train-
9 -ing, I could be released on my own,
10 and deal with my parole Agency! Yet,
11 That was not done or considered in
12 light of my being incarcerated since a
13 minor 16 years of age and having ser-
14 -ved 15 years! I'm now being told, I'll
15 never be paroled and given a 2ND
16 chance at life, based on factor's of
17 the past and circumstance's, That I had
18 No control over. I seek federal court's
19 to grant me relief for my immediate
20 release & parole date, reversal of
21 state Court's Denial, and any other
22 form of relief, I'm entitled To.
23 Thank yas.
24
25
26
27
28

(d) Post-Conviction Proceedings:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a
state trial court?          Yes ☐  No ☑

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____ N/A

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?

Yes ☐  No ☐          N/A

(4) Did you appeal from the denial of your motion or petition?

Yes ☐  No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐  No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____ N/A _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this
issue: _____

_____ N/A _____

_____

_____

(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative
remedies, etc.) that you have used to exhaust your state remedies on Ground Three: State
Habeas Corps.

GROUND FOUR: _____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

_____

(c) Direct Appeal of Ground Four:

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑   No ❑

    (2) If you did not raise this issue in your direct appeal, explain why: _____

_____

(d) Post-Conviction Proceedings:

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a

    state trial court?      Yes ❑ No ❑

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: _____

    Name and location of the court where the motion or petition was filed: _____

_____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available): _____

_____

    (3) Did you receive a hearing on your motion or petition?

        Yes ❑   No ❑

    (4) Did you appeal from the denial of your motion or petition?

        Yes ❑   No ❑

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

　　Yes ☐ No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this
issue: _____

_____

_____

_____

(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative
remedies, etc.) that you have used to exhaust your state remedies on Ground Four: _____

_____

_____

_____

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest
state court having jurisdiction?　　　Yes ☒ No ☐

If your answer is "No," state which grounds have not been so presented and give your
reason(s) for not presenting them: _____

_____

_____

_____

(b) Is there any ground in this petition that has not been presented in some state or federal
court? If so, which ground or grounds have not been presented, and state your reasons for
not presenting them: _____ N/A _____

_____

14. Have you previously filed any type of petition, application, or motion in a federal court regarding
the conviction that you challenge in this petition?　　　Yes ☐ No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy of any court opinion or order, if available. _____

_____

_____

_____

_____

_____

15. Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?    Yes ☐    No ☒
If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. _____ _____

_____

_____

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:                    N/A

(a) At preliminary hearing: _____

_____

(b) At arraignment and plea: _____

_____

(c) At trial: _____

_____

(d) At sentencing: _____

_____

(e) On appeal: _____

_____

(f) In any post-conviction proceeding: _____

_____

(g) On appeal from any ruling against you in a post-conviction proceeding: _____

_____

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    Yes ☐    No ☒

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: _____ _____     .       .        N/A _____

(b) Give the date the other sentence was imposed: _____ _____ ____ _____

(c) Give the length of the other sentence: _____ _____ .

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?    Yes ☐  No ☐

18. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.* _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(d)(1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —

(continued...)

Page 15

Therefore, petitioner asks that the Court grant the following relief: _Reversal of courts_
_Denial! Granting my immediate release, and_
_giving me a parole date._

or any other relief to which petitioner may be entitled.

Pro Per.

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct
and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on
_____ ___ (month, date, year).

Executed (signed) on* _____ ___ (date).

Signature of Petitioner

*(...continued)
(A) the date on which the judgment became final by the conclusion of direct review or the
.expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in
violation of the Constitution or laws of the United States is removed, if the applicant was
prevented from filing by such state action;
(C) the date on which the constitutional right asserted was initially recognized by the
Supreme Court, if the right has been newly recognized by the Supreme Court and made
retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been
discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral
review with respect to the pertinent judgment or claim is pending shall not be counted toward
any period of limitation under this subsection.

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition. _____

_____

_____

### IN FORMA PAUPERIS DECLARATION

[Insert appropriate court]

* * * * *

( Exhibit "A" )

STATE Writ of HABEAS CorPus

Denial of State Writ

1        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

2           **FOR THE CITY AND COUNTY OF SAN FRANCISCO**

3

4           Department No. 22     *Endorsed*

                              **F I L E D**

5                        *San Francisco County Superior Court*

                              JAN 1 6 2007

6 IN THE MATTER OF THE APPLICATION  )   WRIT NO. 5**GORDON PARK-LI, Clerk**

                 OF  )   BY: _____

7                       )                 **Deputy Clerk**

        **OBA LEE FRELIMO**      )

8                       )

9           Petitioner,    )   **ORDER**

                      )

10   FOR WRIT OF HABEAS CORPUS    )

                      )

11

12

13     This court has received a petition for writ of habeas

14 corpus.

15     Oba Lee Frelimo petitions this court to review the Board of

16 Parole Hearings' ("the Board") decision finding him unsuitable

17 for parole.

18     Petitioner is currently incarcerated in Kern Valley State

19 Prison, California. He is serving a term of 15 years to life for

20 one count of second degree murder (Pen. Code § 187).

21     Petitioner's first parole hearing was held on October 12,

22 2005. The Board concluded that Petitioner was unsuitable for

23 parole because he would pose an unreasonable risk of danger to

24 society or a threat to public safety if released from prison. (RT

    88:14-20)

25

                                               1

1  |  Petitioner contends that the Board erred in not granting

2  | him a parole date.

3  |  <center>Commitment Offense</center>

4  |  At the hearing, the presiding commissioner read from the

5  | description of the commitment offense from a March 2005 Life

6  | Prisoner Evaluation Report "2005 Report." That description is

7  | summarized as follows:

8  |  On December 20, 1992, Jeanette Rude was getting our of her

9  | vehicle when Petitioner approached her from behind, displayed a

10 | gun and demanded her car keys. Sometime later, the Police

11 | spotted the car and pursued the defendant but backed off when

12 | the defendant reached speeds of over 70 miles per hour on city

13 | streets. The defendant drove west on Waller Street and collieded

14 | with the left side of a vehicle driven by Alio Ginn. Ms. Ginn

15 | died from injuries she received in the impact. Ms. Ginn's six-

16 | year-old grandson was a passenger in the car. He suffered

17 | numerous cuts, scrapes and bruises and a nosebleed. Three other

18 | people were also injured. The defendant and his companion ran

19 | from the car and tried to hide.  Witnesses directed the police

20 | to the defendant and his companion. Both were arrested and

21 | admitted to what they had done. The Petitioner claims that the

22 | car went out of control and views the case as vehicular

23 | manslaughter. (Reporter's Transcript of Parole Hearing "RT"

   | 15:23-17:19.)

24 |  <center>The "Some Evidence" Standard</center>

25 |  process of law. California Penal Code section 3041 "creates in

<center>2</center>

1  every inmate a cognizable liberty interest in parole which is

2  protected by the procedural safeguards of the Due Process

3  Clause." (Biggs v. Terhune (9th Cir. 2003) 334 f.3D 910, 914-

4  915.)  State courts have concluded the same thing. "[W]e

5  conclude that the judicial branch is authorized to review the

6  factual basis of a decision of the Board denying parole in order

7  to ensure that the decision comports with the requirements of

8  the due process of law...." (In re Rosenkrantz (2002) 29 Cal.4[th]

9  616,658; In re Smith (2003) 114 Cal.App.4[th] 343, 361.)

10  Due process requires that the Board have some evidence on

11  which to base a decision to deny parole. "[P]arole applicants in

12  [California] have an expectation that they will be granted

13  parole unless the Board finds, in the exercise of its

14  discretion, that they are unsuitable for parole in light of the

15  circumstances specified by statute and by regulation."

16  (Rosenkrantz, supra, 29 Cal.4[th] at 654.)

17  The Board of Prison Terms has broad discretion in parole

18  matters. (In re Powell (1988) 45 Cal.3d 894, 901.) In reviewing

19  a Board decision, due process only requires that there be some

20  evidence to support the Board's evidentiary findings (Id. at

21  904; In re Ramirez (2001) 94 Cal.App.4[th] 549,562-564.)  Its

22  decision will not be disturbed unless it has acted arbitrarily

23  or capriciously. (Ramirez supra, 94 Cal.App.4[th] at 564.)

24  The court's review is limited to an inquiry whether there

25  is some evidence in the record before the Board, which supports

29 cal.4[th] at 658.) The "some evidence" test, as applied in

3

1  Rosenkrantz is understood to mean that the Board's suitability
2  determinations "must have some rational basis in fact." (<u>In re</u>
3  <u>Scott</u> (2005) 133 Cal.App.4th 573, 590 n. 6.)

4

5               Factors Determining Suitability for Parole

6       The factors showing parole unsuitability are that the
7  inmate: 1) committed the offense in an especially heinous,
8  atrocious, or cruel manner,[1] 2) possesses a previous record of
9  violence, 3) has an unstable social history, 4) previously has
10 sexually assaulted another individual in a sadistic manner, 5)
11 has a lengthy history of severe mental problems related to the
12 offense, and 6) has engaged in serious misconduct while in
   prison.  (§ 2402(c).)

13      The factors showing parole suitability are that the inmate:
14 1) does not possess a record of violent crime, 2) has a stable
15 social history, 3) has shown signs of remorse, 4) committed the
16 crime as the result of significant stress in his life, 5) lacks
17 any significant history of violent crime, 6) is of an age that
18 reduces the probability of recidivism, 7) has made realistic
19 plans for release or has developed marketable skills that can be
20 put to use upon release, and 8) has engaged in institutional

21

22

23 [1] This might include circumstances where: A) multiple victims
   were attacked in the same or separate incidents, B) the offense
24 was carried out in a dispassionate and calculated manner (i.e.
25 mutilated; D) the inmate demonstrated an exceptionally callous
   disregard for human suffering; and E) the motive is inexplicable
   or very trivial in relation to the offense.  (§ 2402(c)(1).)

4

1  activities that indicate an enhanced ability to function within

2  the law upon release.  (§ 2402(d).)

3

4  <div align="center">The Board's Decision</div>

5    The Board found that the following unsuitability factors

6  were present:

7

8    1)    The commitment offense was especially heinous in that

9        multiple victims were attacked (§2402 (c)(1)(A));

10    2)    The offense demonstrated an exceptionally callous

11        disregard for human suffering, in that all of the

12        victims were completely vulnerable (§ 2402(c)(1)(D));

13    3)    The motive for the crime –carjacking—was trivial (§

14        2402(c)(1)(E));

15

16    4)    Petitioner has a previous record of violence and failed

17        from society's preious attempts to correct his

18        criminality (§ 2402(c)(2));

19    5)    The defendant had an unstable social history as a

20        juvenile (§ 2402(c)(3)); and

21    6)    The defendant has engaged in serious misconduct while

22        in prison (§ 2402(c)(6)).

23

24    The Board also found that Petitioner lacked the following

25  suitability factors:

1)    Petitioner has not demonstrated remorse (§2402(d)(3));

2)    Petitioner has failed to develop marketable skills that
      can be put to use upon release (§ 2402(d)(7)); and

3)    Petitioner had not engaged in institutional activities
      that indicate an enhanced ability to function within
      the law upon release. (§ 2402(d)(8)).

## Review of the Board's Decision

Some evidence supports the Board's finding defendant
possesses a record of violence (§ 2402(c)(2)). According to the
2005 Report Petitioner had an extensive juvenile record before
he committed the life-crime at the age of 16.  Between December
1990 and July 1992 juvenile petitions were sustained as to the
following charges: petty theft, theft, second degree robbery,
fighting in a public place, theft, vandalism, possession of
burglary tools, driving without lawful license, auto theft and
strong-armed robbery.  Petitioner's juvenile record is "some
evidence" supporting the Board's finding that defendant
possesses a record of violence (§ 2402(c)(2))

Some evidence supports the Board's finding that defendant
has engaged in serious misconduct while in prison (§2402(c)(6)).
The defendant has received 41 serious 115's and 36 negative
chronos (RT 49:8-16.), which is some evidence in support of the
board's finding on this unsuitability factor.

1      The Board's findings that Petitioner has a previous record

2  of violence (§2402(c)(2)) and has engaged in serious misconduct

3  while in prison (§2402(c)(6)) have a rational basis in fact.

4  Because the Board's finding of these two factors is supported by

5  the evidence in the record, it is unnecessary to review the

6  Board's findings on other factors.

7      The Board's decision is supported by "some evidence."

8  Accordingly, the Petition is denied.

9

10

11

12  _____    _____

13  Date                       Judge of the Superior Court

14                             JAMES J. McBRIDE



15

16

17

18

19

20

21

22

23

24

25

**This petition concerns:**

- [ ] A conviction
- [✗] A sentence
- [ ] Jail or prison conditions
- [ ] Other *(specify):*
- [ ] Parole
- [ ] Credits
- [ ] Prison discipline

1. Your name: OBA LEE FRELIMO

2. Where are you incarcerated? KERN VALLEY STATE PRISON

3. Why are you in custody?  [✗] Criminal Conviction  [ ] Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

      2ND DEGREE MURDER

   b. Penal or other code sections: P.C. SECTION 187

   c. Name and location of sentencing or committing court: SAN FRANCISCO COUNTY SUPERIOR CT
      (CRIM) 850 BRYANT STREET, SAN FRANCISCO, CA. 94103

   d. Case number: 151728

   e. Date convicted or committed: 12/31/93

   f. Date sentenced: 5/5/94

   g. Length of sentence: 15 YEARS TO LIFE

   h. When do you expect to be released? 10/2008

   i. Were you represented by counsel in the trial court?  [✗] Yes.  [ ] No. If yes, state the attorney's name and address:

      MR. BARRY MELTON, OFF. OF PUBLIC DEFENDER, 814 NORTH ST., WOODLAND, CA. 95695-3538

4. What was the LAST plea you entered? *(check one)*

   [ ] Not guilty  [✗] Guilty  [ ] Nolo Contendere  [ ] Other:

5. If you pleaded not guilty, what kind of trial did you have?

   [ ] Jury  [ ] Judge without a jury  [ ] Submitted on transcript  [ ] Awaiting trial

BOARD OF PRISON TERMS                                  STATE OF CALIFORNIA
APPEAL

| | |
|---|---|
| Name: Oba FReLimo | **CDC Staff Only** |
| CDC#: J-25506 | Date Received:———————Log #:——— |
| Prison: TEhAchApi  CCI | Date Life Inmate Received Copy of Transcript: |
| Date Sent: 9-17.06 | Did Staff Provide Assistance in Preparing this Appeal? |
| | Yes [ ]      No [ ] |
| | What Type of Staff Assistance Was Provided: |

**DECISION APPEALED**

[✓] Parole Revocation
[ ] Revocation Extension
[ ] Retain on Parole
[ ] Screening Offer Decision
[✓] Life Prisoner
[ ] MDO Hearing
[ ] Other:_____

Date  of  hearing  or  decision  you  are  appealing
10/12/05    5 yEars  Parole DeNieD.

**REASONS**

[ ] Wrong / Not enough information
[✓] The decision was not fair in view of the facts
[✓] The decision is illegal
[ ] * The decision is against BPT rules
[ ] My rights under ADA were violated

Did you ask for help writing this appeal?           Yes [ ]     No [✓]
Did anyone help you write this appeal?              Yes [ ]     No [✓]

What would you like the Board to do? I'M requesting Reconsideration of the
B.P.T.'s decision denying my Parole AND 2) To Be provided
with a Parole date.

Tell why you want to appeal. Use simple words. Give each reason a number. Use more paper if you need to.
Don't leave anything out. You can not add reasons later. Sign at the bottom.

(1) ON 5/5/94 I was sentenced to A 15 to life sentence.
By the Order of the sentencing court and in accord-
ance to the terms of my plea bargaining...(SEE Attach)

(2) I Just received the final Denial Copy in the maile
dated 10/12/05 and it is 9/15/06. I believe this was
done intentionally, to stop me from appealing the Denial. (SEE
Attach)

(3) IN my court Transcripts it state's clearly, that IN my
plea bargin, that from the date of my initial Parole, I am
to be placed on a life-time Parole Period.' (SEE attach)

(4) The minutes made _____ _____ _____ clearly
that I was sentenced to State Prison for a Period of
15 Years upper Term Total state Prison Term 15 Years (SEE
Attach)

Continued ) (1).... agreement, it WAS stipulated
that I would become eligible for parole
within 7 years and once paroled - My parole
period would be for Life, and OR indeterminate
Wherefore, the Bpt has erred in denying my
parole and not giving Me a parole date!

2)..Thus forth I ask for my Appeal to be processed
for response! Due to me just receiving documents
inableing me to file an Appeal.

3) That stipulation clearly intails that I am
supposed to have an initial parole date which I
have been wrongfully Denied. Also further stipulation
details that it However PAROLE is Revoked, continem-
-ent pursuant to A revocation of Parole in the
Absence of A New conviction and commitment to Prison,
under provisions of Law shall not exceed 12 Months!
THUS forth My Denial of parole for 5 year's, is A
grave miscarriage of the law, and violates My pleA
BARGAiN! (SEE)(EXHiBiT A) ATTACHED) PAGE "5" First
paragraph!

) With A Total state Prison Term of 15 years, I
was supposed to be given A Date, within the 7
year Time frame, is you carries, and also
given/receive credit for time served, 734 days!

84-2074  F Liliumo

INMATE COPY

OARD OF PRISON TERMS                                                                    STATE OF CALIFORNIA

LIFE PRISONER: PAROLE CONSIDERATION
PROPOSED DECISION (BPT §2041)

I. [X] PAROLE DENIED  3 years  new psych report

   If this proposed decision denying parole is approved, the Board will send you a copy of the approved
   decision, including the reasons for denial of parole, within 30 days of the hearing.

II. [ ] PAROLE GRANTED

   A. Base Period of Confinement ........................................................ _____ Months

   _____
   Case No.          Count No.          Offense

   B. Firearm Enhancement................................................+ _____ Months

   C. Other Crimes Total ....................................................+ _____ Months

   _____ _____ mos.
   Case No.          Count No.          Offense

   _____ _____ mos.
   Case No.          Count No.          Offense

   _____ _____ mos.
   Case No.          Count No.          Offense

   D. Total Term ..............................................................= _____ Months

   E. Postconviction Credit From _____ To _____ — _____ Months
                                    (Date)                (Date)

   F. Total Period of Confinement...................................... = _____ Months

The period of confinement indicated is a tentative decision proposed by this panel. The decision will be reviewed
pursuant to BPT §2041, and, if approved, a copy of the approved decision will be sent to you within 30 days.
At that time appropriate pre-prison credits will be applied and a parole release date computed.

You will not engage in any conduct specified in BPT §2451. Such conduct may result in rescission or post-
ponement of your parole date.

If the proposed decision denying or granting parole is disapproved, you will receive a copy of the proposed
decision and the reasons for disapproval. You will then receive a copy of the modified decision or will be
scheduled for a new hearing, as appropriate.

PANEL HEARING CASE

Date 10/12/05

Date 10/12/05

BOARD OF PRISON TERMS
CALIFORNIA

STATE OF

NOTICE OF DATE, TIME AND PLACE OF HEARING



Your _____ LIFE PRISONER INITIAL PAROLE CONSIDERATION _____ hearing is scheduled for

_____ 2:15 P.M. _____ on _____ October 12, 2005 _____.
(Time)                              (Date)

at _____ CCI IV-A BOARD ROOM _____

## CERTIFICATE OF SERVICE

On

I ☒ gave        [ ] mailed this notice to the prisoner / parolee.

| Signature of State Agent | Date |
|---|---|
| C Torres        CC-I | 8-3-05 |

Receipt Acknowledged  (For Institutional Use Only)

| Signature | CDC Number | Date |
|---|---|---|
| | J25506 | 8-3-05 |

INMATE NAME FRELIMO, OBA    CDC NUMBER J-5506    8H207   CDC 128B

In preparation for the Scheduled Board of Prison Terms Life Prisoner Hearing: INMATE COPY

- ☐ No accommodation is required per the Armstrong II Remedial Plan.
- ☐ Accommodation to effectively communicate is required per Armstrong II Remedial plan and was accomplished by _____

- ☒ I received a copy of the Life Prisoner Hearing Board Report. (ADDENDUM)
- ☒ I received a copy of the Life Prisoner Hearing Board & Psychiatric Reports.
- ☐ I received a copy of the Life Prisoner Hearing Psychiatric Report. (Clinician Only)

7-24-05

_____          _____
Inmates Signature / CDC #                    Staff Signature / Title
Date:                    CCI IV-B                    GENERAL CHRONO

8A2074

STATE OF CALIFORNIA                    DEPARTMENT OF CORRECTIONS

## NOTICE OF CLASSIFICATION HEARING

CDC 128 – B1  (Rev 2/95)

| INMATE NAME | CDC NUMBER | TODAY'S DATE |
|---|---|---|
| FRELIMO | J25506 | 12/15/05 |

YOU WILL APPEAR BEFORE A CLASSIFICATION COMMITTEE ON  12/21/05    FOR CONSIDERATION OF A MAJOR PROGRAM CHANGE AS FOLLOWS:

☐ TRANSFER    ☐ INCREASE IN CUSTODY    ☐ ASSIGNMENT TO SECURITY HOUSING

☐ REMOVAL FROM PROGRAM    ☒ OTHER  POST BOARD REVIEW

REASON
POST BOARD REVIEW

| STAFF: NAME | TITLE | |
|---|---|---|
| C. TORRES | CC-I | 12/15/05 |

ROUTING INSTRUCTIONS:  ORIGINAL – CLASSIFICATION COMMITTEE    COPY – INMATE

BOARD OF PRISON TERMS
APPEAL

STATE OF CALIFORN

## HOW TO FILL OUT THIS FORM

Give the reasons for your appeal. Write on the lines. Be sure to give each reason a number. Use simple words to explain e reason. Use more paper if you need it. Don't leave anything out. You cannot add reasons later. Sign the form at the bottc

## SENDING THE APPEAL

You must send this form to the Board or have someone do it for you. If you are in prison, give the form to *C&PR* staff. If are not in prison, give it to a Parole Appeals Coordinator. You have 90 days after you get your hearing decision to send in form. Your lawyer can send it for you if you sign that you approve.

## FASTER APPEALS

If you have a new court case, you may need a faster answer to your appeal. To get a faster answer, write "EXPEDIT CONSIDERATION" on the form. You must have a good reason why this is needed. You must send court or other papers tell why a fast answer is needed.

Terms:   *C&PR* - the Classification and Parole Representative in prison
         *Parole Appeals Coordinator* - Appeals Coordinator in your Parole Region

You can read the laws about your appeal. You can find the laws at California Code of Regulations, Title 15, sections 205(
2057.

### *CDC Staff Only*

## DOCUMENTS THAT MUST ACCOMPANY THE APPEAL

An appeal cannot be accepted by the Board unless there is enough information to decide the issues. Until the necess information is supplied, the appeal will not be processed. The following documents are required for each type of appeal. Ple submit these documents with the appeal within 90 days of the Board's decision.

## PAROLE REVOCATION HEARING APPEALS

☐ Legal Status Summary Sheet (prior commitment and parole violation)

☐ Notice of Right to Revocation Hearing Acknowledgment [BPT Form 1100(a)]

☐ Request for Witnesses [BPT Form 1100(b)].

☐ Summary of Revocation Hearing and Decision (BPT Form 1103)

☐ *Pertaining to Extradition*

☐ Inmate/Parolee Disability Verification (CDC

☐ Charge Sheet (CDC Form 1521, *Including CDC Form 1244*)

☐ Police Report(s)

☐ Attorney Determination

☐ (BPT Form 1083, if applicable)

☐ Chronological History (CDC 112, *all pages*)

☐ Reasonable Accommodation Notice and Request (BPT Form 1073)

☐ Mental Health Screening Chronos

BOARD OF PRISON TERMS                                          STATE OF CALIFORNIA
APPEAL

## APPEALS OF SCREENING OFFERS

☐ Legal Status Summary Sheet

☐ Notice of Right to Revocation Hearing
Acknowledgment [BPT Form 1100(a)]

☐ Waiver of Revocation Hearing
(BPT Form 1101)

☐ Charge Sheet (CDC Form 1521, *including CDC Form 1244)*

☐ Inmate/Parolee disability Verification (CDC
Form 1845)

☐ Extradition from Other State: *All Documents Pertaining to Extradition*

☐ Police Report(s)

☐ Summary of Revocation Hearing and Decision
(Hearing Waived) (BPT Form 1104)

☐ Chronological History (CDC 112, *all pages*)

☐ Reasonable Accommodation Notice and
Request (BPT Form 1073)

☐ Mental Health Screening Chronos
(CDC Form 128C, 128C-1)

## APPEALS FROM REVOCATION EXTENSION HEARINGS

☐ Legal Status Summary Sheet

☐ Notice of Right to Revocation Hearing
Acknowledgment [BPT Form 1100(a)]

☐ Request for Witnesses [BPT Form 1100(b)]

☐ Summary of Revocation Hearing and Decision
(BPT Form 1103)

☐ Inmate/Parolee Disability Verification (CDC
Form 1845)

☐ Rules Violation Report (CDC Form 115)

☐ Attorney Determination (BPT Form 1083, if
applicable)

☐ Chronological History (CDC 112, *all pages*)

☐ Reasonable Accommodation Notice and
Request (BPT Form 1073)

☐ Mental Health Screening Chronos
(CDC Form 128C, 128C-1

## APPEALS FROM RETAIN ON PAROLE

☐ Legal Status Summary Sheet

☐ Parole Agent's Report (CDC Form 1502)

☐ Central Office Calendar Discharge Review
(BPT Form 1130)

☐ Chronological History (CDC 112, *all pages*)

## LIFE HEARING DECISIONS

☐ Copy of Decision

☐ Chronological History (CDC 112, *all pages*)

☐ Post Board Chrono, Date Received Transcript

( EXHiBiT     A  )

1        IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2        IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

3            BEFORE HONORABLE ALFRED CHIANTELLI, JUDGE

                                            ENDORSED
                                            F I L E D
                                      San Francisco County Superior Court

4                    DEPARTMENT 22           JAN 11 1994

5                      ---oOo---
                                      ALAN CARLSON, Clerk
                                      BY: CAROLYN D. MACABEO
6    PEOPLE OF THE STATE OF CALIFORNIA, )        Deputy Clerk
                                        )
7                      PLAINTIFF,       )
     VS.                                )  CASE NO. 151728
8                                       )  CHANGE OF PLEA
     OBA LEE FRELIMO,                   )
9                                       )
                       DEFENDANT.       )
10   _____)

11                     ---oOo---
                 REPORTER'S TRANSCRIPT
12                 DECEMBER 13, 1993
                       ---oOo---
13

14   A P P E A R A N C E S:
     FOR THE PEOPLE:               HON. ARLO SMITH,
15                                 DISTRICT ATTORNEY
                                   BY:  WILLIAM FAZIO,
16                                 ASST. DISTRICT ATTORNEY

17   FOR THE DEFENDANT:            BARRY MELTON,
                                   ATTORNEY AT LAW
18
     OFFICIAL COURT REPORTER:      NOREEN T. IKEUYE, C.S.R.
19                                 CERTIFICATE NO. 3538

20

21                     ---oOo---

22

23

24

25

26

27

2

1    DECEMBER 13, 1993                          9:00 AM

2                    P-R-O-C-E-E-D-I-N-G-S

3    ---OOO---

4            THE COURT:  LINE 18, OBA LEE FRELIMO.

5            MR. FAZIO:  YOUR HONOR, BILL FAZIO FOR THE

6    PEOPLE IN THIS MATTER.

7            MR. MELTON:  BARRY MELTON FOR MR. FRELIMO.

8            THE COURT:  EVERYONE STATED THEIR APPEARANCES.

9    THIS MATTER IS SET FOR TRIAL.  MR. OBA LEE FRELIMO IS

10   PRESENT.

11        YES.  ARE THERE NEGOTIATIONS HERE?

12            MR. FAZIO:  YES, THERE IS.

13            MR. MELTON:  YES.

14            THE COURT:  WHO WISHES TO STATE THE

15   NEGOTIATIONS?

16            MR. FAZIO:  I THINK MR. MELTON WILL STATE THAT

17   HIS CLIENT IS GOING TO PLEAD TO COUNT 3, THE --

18            MR. MELTON:  YES.

19            MR. FAZIO:  -- CHARGE OF MURDER.  WE WILL

20   STIPULATE IT'S IN THE SECOND DEGREE.

21            MR. MELTON:  THAT'S CORRECT.

22            THE COURT:  IS THAT CORRECT?

23            MR. MELTON:  YES.

24            THE COURT:  ALL RIGHT.  AND HAVE YOU INFORMED

25   YOUR CLIENT OF THAT, THIS IS AN INDETERMINATE SENTENCE.

26            MR. MELTON:  YES.

27            THE COURT:  EVERYONE UNDERSTANDS THAT AT THE

28   TIME OF THIS ALLEGED CRIME, THE DEFENDANT WAS UNDER THE

3

1   AGE OF 17.  IF IN FACT HE PLEADS GUILTY TO THIS, BY LAW

2   UNDER 707.2 OF THE WELFARE & INSTITUTIONS CODE, I WILL

3   REFER THIS TO THE CALIFORNIA YOUTH AUTHORITY, FOR THEM

4   TO DO AN IN-DEPTH STUDY FOR THEIR RECOMMENDATION ON

5   THIS.  AND FURTHERMORE, WHEN I DO THAT, I WILL NOT GET A

6   PRE-SENTENCE REPORT.

7          MR. MELTON:  YES, IT'S UNDERSTOOD.

8       MR. FAZIO AND I AGREED IN CHAMBERS THAT THE

9   FOLLOWING DOCUMENTS COULD ACCOMPANY MR. FRELIMO TO THE

10  YOUTH AUTHORITY -- ONE BEING THE PRELIMINARY HEARING

11  TRANSCRIPT, INCLUDING -- IT'S AN ATTACHMENT IN THIS

12  CASE.  TWO WOULD BE THE 707 PROBATION OFFICER'S REPORT.

13         AND IF THE COURT DOESN'T HAVE A COPY OF, I'D BE

14  HAPPY TO SUPPLY THE COURT WITH MINE.

15         MR. FAZIO:  DID YOU WANT A TRANSCRIPT OF THE

16  707 PROCEEDINGS?

17         MR. MELTON:  I HAVE ONE WITH ME.

18         MR. FAZIO:  YES.

19         MR. MELTON:  AND --

20         MR. FAZIO:  AND A COPY OF THE INFORMATION.

21         MR. MELTON:  I HAVE A COPY OF THE INFORMATION.

22         THE COURT:  ALL RIGHT.  PROVIDE THAT PACKAGE

23  FOR MY CLERK.

24         MR. MELTON:  MR. FRELIMO, I AM GOING TO MAKE A

25  STATEMENT TO THE COURT ABOUT YOUR CASE.  IT IS VERY

26  IMPORTANT THAT YOU LISTEN TO IT CAREFULLY.

27         YOUR HONOR, MR. AZCANIO WANTS TO ENTER A PLEA OF

28  GUILTY TO THE CHARGE OF MURDER IN THE SECOND DEGREE, A

5

1        MR. MELTON: YES. WHAT IS CONTAINED IN THE --

2    IT'S A LIFETIME PAROLE PERIOD FROM THE DATE OF HIS

3    INITIAL PAROLE. HOWEVER, IF PAROLE IS REVOKED,

4    CONFINEMENT PURSUANT TO A REVOCATION OF PAROLE IN THE

5    ABSENCE OF A NEW CONVICTION AND COMMITMENT TO PRISON

6    UNDER OTHER PROVISIONS OF LAW SHALL NOT EXCEED 12

7    MONTHS, EXCEPT AS PROVIDED BY PENAL CODE SECTION

8    3057(C), SUBSEQUENT ACTS OF MISCONDUCT COMMITTED BY

9    PAROLEE WHILE CONFINED PURSUANT TO THAT PAROLE

10    REVOCATION. ★

11        THIS PLEA IS OFFERED AS A RESULT OF DISCUSSIONS

12    WITH ASSISTANT DISTRICT ATTORNEY WILLIAM FAZIO, THIS

13    COURT, AND MYSELF. AND I HAVE INFORMED MR. FRELIMO THAT

14    MR. FAZIO WILL RECOMMEND, AND THE COURT HAS INDICATED,

15    THAT MR. FRELIMO WILL RECEIVE THE 15 YEARS TO LIFE

16    SENTENCE.

17        FURTHER, IT'S A FEATURE OF MY AGREEMENT WITH MR.

18    FAZO THAT THE REMAINING CHARGES IN THE INFORMATION WILL

19    BE DISMISSED. AND FURTHER, THAT THE DISTRICT ATTORNEY'S

20    OFFICE DOES NOT INTEND TO FILE ANY NEW CHARGES BASED ON

21    PRESENTLY KNOWN CONDUCT THAT IS ALLEGED TO HAVE OCCURRED

22    IN JUVENILE HALL DURING THE PERIOD OF MR. FRELIMO'S

23    INCARCERATION THERE SINCE DECEMBER 30TH, 1992.

24        AND FINALLY, THERE IS A MISDEMEANOR CASE NOW

25    PENDING IN DEPARTMENT 14 OF THE MUNICIPAL COURT

26    REGARDING AN ALLEGATION OF ESCAPE FROM CUSTODY. AND

27    WILL BE DISMISSED.

28        MR. FAZIO: THAT'S CORRECT, YOUR HONOR.

6

1     THE COURT:  ALL RIGHT.  YOU HAVE HEARD ALL OF

2     THE STATEMENTS MADE TO THE COURT BY YOUR ATTORNEY, THE

3     STATEMENTS MADE BY THE DISTRICT ATTORNEY.

4     ARE THEY TRUE IN ALL RESPECTS AS FAR AS THE

5     CONSEQUENCES OF WHAT YOU EXPECT TO RECEIVE IN EXCHANGE

6     FOR YOUR GUILTY PLEA?

7     THE DEFENDANT:  YES.

8     THE COURT:  DO YOU PERSONALLY GIVE UP YOUR

9     RIGHT AGAINST SELF INCRIMINATION ON THE CHARGE OF

10    MURDER, COUNT 3?

11    AND SO THAT THE RECORD IS CLEAR, COUNSEL, IS IT

12    STIPULATED THAT IT'S MURDER IN THE SECOND DEGREE?

13    MR. FAZIO:  IT IS SO STIPULATED.

14    MR. MELTON:  YES.

15    THE COURT:  ALL RIGHT.

16    THE DEFENDANT:  YEAH.

17    THE COURT:  DO YOU PERSONALLY GIVE UP YOUR

18    RIGHT TO TRIED BY A JURY TO THE CHARGE OF MURDER IN THE

19    SECOND DEGREE?

20    THE DEFENDANT:  YES.

21    THE COURT:  DO YOU PERSONALLY GIVE UP YOUR

22    RIGHT TO SEE, HEAR, AND QUESTION WITNESSES AGAINST YOU

23    TO THE CHARGE OF MURDER IN THE SECOND DEGREE?

24    THE DEFENDANT:  YES.

25    THE COURT:  IF YOU ARE NOT A CITIZEN, YOU ARE

26    HEREBY ADVISED THAT CONVICTION OF THIS OFFENSE WHICH YOU

27    HAVE BEEN CHARGED MAY HAVE THE CONSEQUENCES OF

28    DEPORTATION, EXCLUSION FROM ADMISSION TO THE UNITED

7

1    STATES, OR DENIAL OF NATURALIZATION PURSUANT TO THE LAWS

2    OF THE UNITED STATES.

3         DO YOU UNDERSTAND THAT?

4              THE DEFENDANT:  YES.

5              THE COURT:  WHAT IS YOUR PLEA TO VIOLATING

6    SECTION 187 CALIFORNIA PENAL CODE, MURDER IN THE SECOND

7    DEGREE?

8              THE DEFENDANT:  GUILTY.

9              THE COURT:  COUNSEL, DO YOU STIPULATE THAT

10   THERE IS A FACTUAL BASIS FOR THIS COURT TO ACCEPT THIS?

11             MR. MELTON:  BASED ON DISCOVERY PROVIDED AND

12   THE EVIDENCE ADDUCED AT THE PREVIOUS HEARINGS IN THIS

13   MATTER.

14             THE COURT:  AND MR. FAZIO, DO YOU HAVE A GOOD

15   FAITH CASE?

16             MR. FAZIO:  YES, YOUR HONOR.

17         AND MAY I JUST POINT OUT ALSO THAT PRIOR TO

18   ENTERING IN TO THIS DISPOSITION WITH MR. MELTON, I

19   DISCUSSED IT WITH LINDA KLEE OF OUR OFFICE.  AND MORE

20   IMPORTANTLY, I HAVE DISCUSSED IT WITH THE SURVIVING

21   VICTIMS OF MISS GIN (PHONETIC), WHO IS THE INDIVIDUAL

22   WHO DIED AS A RESULT OF MR. FRELIMO'S ACTIONS.  AND THEY

23   UNDERSTAND AND ACCEPT THE PROPOSED DISPOSITION IN THIS

24   CASE.

25             THE COURT:  ALL RIGHT.  THE COURT ALSO FINDS

26   THAT DEFENDANT HAS BEEN INFORMED OF HIS RIGHTS, AND THAT

27   HE HAS FREELY AND VOLUNTARILY                    AND

28   INTELLIGENTLY GIVEN UP HIS RIGHTS.  AND THAT HE HAS

8

1    ENTERED HIS PLEA OF GUILTY WELL KNOWING THE CONSEQUENCES

2    OF THAT PLEA.   THEREFORE, THE PLEA WILL BE ACCEPTED.

3         THE DISTRICT ATTORNEY'S MOTION TO DISMISS COUNTS 1

4    AND 2?

5              MR. FAZIO:  YES, PURSUANT --

6              THE COURT:  IS GRANTED.

7              MR. FAZIO:  -- TO SECTION 1385.

8              THE COURT:  ALL RIGHT.  DISMISSED, 1385,

9    INTERESTS OF JUSTICE.

10             MR. FAZIO:  COULD WE HAVE A RETURN DATE OR DO

11   THEY ADVISE THE COURT WHEN THEY ARE FINISHED?

12             THE CLERK:  MARCH 14TH.

13             THE COURT:  MARCH 14TH, MONDAY.

14                      ---0O0---

15

16

17

18

19

20

21

22

23

24

25

26

27

( EXHIBIT    B )

SUPERIOR ... JRT IN THE CITY AND COUNTY OF SAI ... ANCISCO - MINUTES

| People of the State of California vs. | OBA LEE FRELIMO | | | ☒ Present |
| SC # | Assistant DA of Record | | Attorney of Record | |
| 151728 | B. FAZIO | ☒ Present | BARRY MELTON | ☒ Present |
| | Clerk | | Judge | |
| | LOTUS JEW | | ALFRED G. CHIANTELLI | |

Reporter

RICHARD CORVILLE #2675, 850 BRYANT STREET, ROOM 306 - SAN FRANCISCO, CA 94103

Cause on Calendar for Sentence.

Court has appointed MELTON/BARRY, conflict counsel.

Defendant waives formal arraignment for judgment, has been convicted of the crime(s) of felony by plea on : /  /93

| Count | Code | Section | Degree | MC # | Plea |
| 3 | PC | 187/F | 2 | 01446771 | G |

The Court has read and considered the pre-sentence report.

The Court orders defendant committed to state prison as follows:

Defendant is sentenced to State Prison for a period of 15 year(s), Upper Term. Total State Prison Term: 15 year(s).

Defendant to receive credit for time served 490 day(s) County Jail 244 day(s) SAGE for a total of 734 day(s).

The Court orders defendant committed to State Prison for 15 years to Life:Upper Term.

The Court states reason for sentence choice.

Defendant shall pay a restitution fine in the amount of $200 pursuant to GC 13967.

Defendant is advised of parole rights.

The defendant is remanded to the California Department of Corrections.

* Housed at CYA until 18th birthday pursuant to WIC 1731.5(C).

INMATE COPY

LIFE PRISONER EVALUATION REPORT
INITIAL HEARING
MARCH 2005 CALENDAR

FRELIMO, OBA          J25506                                    PAGE 1

## I.    COMMITMENT FACTORS:

### A.  LIFE CRIME:

The Defendant plead guilty on May 5, 1994, San Francisco
County Superior Court to Violation of PC187, Murder 2nd
Degree in that he committed an armed Car Jacking and drove a
stolen vehicle while fleeing from the police; case #151728
Sentenced to 15 years to life, no enhancements applied.
Minimum Eligible Parole Date (MEPD) April 11, 2006.
Victim, 61 year old woman, Alio Ginn. Defendant was 16
years old at the time of the Life Crime. Inmate Frelimo's
California Department of Corrections (CDC) term started on
July 1, 1994.

1.  Summary of Crime:

On December 30, 1992 at approximately 1127 hours, the
defendant struck a car in an intersection, causing death to Alio
Ginn and injury to four other people. Information indicates
that a Jeanette Rude was getting out of her vehicle on
December 30, 1992 when the defendant approached her from
the rear and displayed a gun, demanding her car keys and
purse. The victim was afraid and complied. Police later saw
the car and a police chase pursued. Police backed off when the
defendant's speed reached 70 miler per hour on a city street.
The defendant drove West on Waller Street and collided with
the left side of a vehicle driven by Alio Ginn. The woman's
six-year-old grandson was a passenger in the car. The force of
the impact caused the woman's car to collide with another
occupied vehicle and a parked vehicle. The woman died from
multi traumatic injuries received in the collision. Her grandson
suffered numerous cuts and scrapes, bruises on the back and
sides of the body and a nosebleed. The defendant and his
companion ran from the accident and tried to hide. Witnesses
directed police to the defendant and his companion, both were
captured. The defendant and his companion both admitted to
police what they had done, both were then arrested.

2. Prisoner's Version;
During the pre-sentence report interview, the defendant said that the case involved an accident where the car he was driving ran out of control.    He viewed the case as Vehicular Manslaughter. Upon interview on " 4-15-2005 " the prisoner version remained the same.

3. Aggravating/Mitigating Circumstances:

a. Aggravating Factors:
1. The crime involved the threat of violence and a want on · Disregard for the public safety. 2. The defendant reportedly used a firearm to commit an Auto Theft. 3. The victims in this case had no way of protecting themselves against the defendant's reckless conduct.    They also had no way of getting away or summoning help.    The myriad of circumstances surrounding this case makes all the victims particularly vulnerable as a result of the defendant's actions. 4. This crime involved sophistication and planning.    The defendant has a significant criminal history, which includes theft and auto theft.    5. The defendant has engaged in conduct indicating that he is a danger to society.

a. Mitigating Factors
Legal records did not indicate any factors of mitigation.

B. MULTIPLE CRIME(S):
None noted.

## II. PRECONVICTION FACTORS:

A. JUVENILE RECORD:
1. Computerized records from the San Francisco Juvenile Court note that a petition as to a charge of theft and petty theft was sustained on December 21, 1990. ·Wardship was declared and the defendant ordered to live in his mother's home while on probation.
2. A petition as to a charge of second degree robbery was sustained on May 23, 1991. Wardship was re-declared and the defendant again placed on home probation.    A commitment to the juvenile hall was stayed. A fine and restitution were ordered.
3. A petition as to a charge of fighting in a public place was sustained on August 7, 1991 and combined with the below disposition.

4. A petition as to charges of theft, vandalism, possession of burglary tools and driving without lawful license was sustained on August 21, 1991. Wardship was re-declared and the defendant returned to his mother's home on probation. A six year, five month commitment to the Log Cabin Ranch School was stayed. 120 hours of community service was ordered along with a fine and restitution.

5. A petition as to a charge of auto theft was sustained on March 13, 1992. Wardship was re-declared and the defendant committed for out-of-home placement. A fine and restitution were ordered.

6. A petition as to charges of strong-armed robbery and assault was sustained on July 1, 1992. Wardship was re-declared and the defendant committed to the Log Cabin Ranch School for a term of eight years, nine months. A fine and restitution were ordered.

7. The San Francisco Juvenile Court terminated its jurisdiction on May 18, 1993.

B. ADULT CONVICTIONS AND ARRESTS:
December 30, 1992 Instant offense PC187 Murder 2nd Degree.

C. PERSONAL FACTORS:
Oba Lee Frelimo at the time of the life crime was at the age of 16 years. Frelimo is the only child born to his mother Barbara Brown and his father Roscoe Farmer. Inmate Frelimo was predominantly raised by his mother until he was approximately 16 years of age when he was taken to juvenile hall for the instant offense. Frelimo's father works in the San Francisco area and Frelimo keeps in contact with both parents. Frelimo reports good early and present family relationships. Frelimo reports he has 4 children, all with different mothers. Frelimo hasn't seen his kids for twelve years. The children are supported by their mothers.

III.    POSTCONVICTION FACTORS:

A. SPECIAL PROGRAMMING/ACCOMMODATIONS:
In preparation for the scheduled Board of Prison Terms (BPT) life prisoner hearing, no accommodation is required per the American with Disabilities (ADA) II Remedial Plan. See CDC 128B dated January 28, 2005 Frelimo has a reported grade level of 11th grade which was completed in Juvenile Hall. He has not received Vocation Training or his GED

B. <u>CUSTODY HISTORY:</u>
Documented chronologically on the Post Conviction Progress Report.

C. <u>THERAPY AND SELF-HELP ACTIVITIES:</u>
None.

D. <u>DISCIPLINARY HISTORY:</u>
Inmate Frelimo has received 10 CDC RVR's and 22 CDC 128A's. These RVR's occurred between August 11, 2003 and April 22, 2004.

E. <u>OTHER:</u>
Prior recommendations from the BPT Documentation Hearing notes that Frelimo would benefit from Vocational training, attainment of GED, NA, AA and to become disciplinary free.

## IV. <u>FUTURE PLANS:</u>

A. <u>RESIDENCE:</u>
Frelimo plans to live with his Fiancée in Riverbank, CA., which is located in Stanislaus County. She has one son, age 15 who resides with her. Frelimo's last County of legal residence was San Francisco County.
Residence address:  Kimberly Minor (fiancée)
2657 Donner Trail
Riverbank, CA 95367  95367

B. <u>EMPLOYMENT:</u>
Frelimo plans to work at: Larimogo Co. (Clothing Sales)
1020 Piece Street Apt., B
San Francisco, CA

C. <u>ASSESSMENT:</u>
Frelimo is non-gang affiliated. He appears to have behavior control issues based upon the extensive In-custody disciplinaries. Prior to release, Frelimo could benefit from:
1. Becoming disciplinary free.
2. Reduce placement and custody to a General Population.
3. Complete Vocational trades that would provide him with the life skills suitable to finding employment.

## VI. SUMMARY:

A.    Frelimo was afforded an opportunity to be interviewed and review and examine his Central File on 4-15-2005, however, Frelimo declined to review his C-file. Please refer to general chrono (CDC 128B) Olsen Review form dated 4-15-2005.

B.    This report contains six hours of review of the Central file along with the Inmate being interviewed.


Prepared by:                              Reviewed by:

_C Torres_                                _____

CC-I                                      CC-II

BOARD OF PRISON TERMS **INMATE COPY** STATE OF CALIFORNIA
LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

☐ DOCUMENTATION HEARING

☒ PAROLE CONSIDERATION HEARING - Initial

☐ PROGRESS HEARING

COPY TO INMATE
VIA CC-1 *Torres* 4/28/05

**INSTRUCTIONS**

TO CDC STAFF: DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT.
TO BPT STAFF: FOR EACH 12-MONTH INCREMENT, APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
ESTABLISHED, i.e., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290-2292, 2410, AND 2439.

| POSTCONVICTION CREDIT | | | |
|---|---|---|---|
| YEAR | BPT | PBR | REASONS |
| 06-25-2003<br>to<br>06-30-2003 | | | **PLACEMENT:** Remained at Pelican Bay State Prison Security Housing Unit (PBSP-SHU) Indeterminate Status. |
| | | | **CUSTODY:** Maximum S (MAXS) custody. |
| | | | **VOCATIONAL TRAINING:** None. |
| | | | **ACADEMICS:** None. |
| | | | **WORK RECORD:** Work Group/Privilege Group (WG/PG) D2-D effective July 11, 2002 through October 12, 2003. |
| | | | **GROUP ACTIVITIES:** None. |
| | | | **PSYCHIATRIC TREATMENT:** None. |
| | | | **PRISON BEHAVIOR:** None. |
| | | | **OTHER:** No disciplinaries or Laudatory chronos in this timeframe. |
| 07-01-2003<br>to<br>06-30-2004 | | | **PLACEMENT:** Remained at PBSP-SHU Indeterminate Status. |
| | | | **CUSTODY:** Indeterminate MAXS custody. |
| | | | **VOCATIONAL TRAINING:** None. |
| | | | **ACADEMICS:** None. |
| | | | **WORK RECORD:** WG/PG D2-D effective July 11, 2002 through to October 12, 2003. |
| | | | **GROUP ACTIVITIES:** None. |
| | | | **PSYCHIATRIC TREATMENT:** On March 24, 2004 at Initial Psychiatric Services Unit (PSU) review based on Enhanced Outpatient Program (EOP) Level of Care (LOC) Frelimo was detained in PBSP PSU pending MAX Minimum Eligible Release Dated (MERD) of November 11, 2004. |
| | | | **PRISON BEHAVIOR:** Received Rules Violation Report (RVR) dated August 11, 2003 for specific act of Delaying a Peace Officer. Reduced to a lesser-included offense Division F, Disruptive Housing violations and 30-day Forfeiture of Credit (FOC). Received RVR dated August 22, 2003 for the specific act of Possession of a Deadly Weapon and assessed 360 FOC and a 10-month consecutive SHU term with a MERD |

CORRECTIONAL COUNSELOR SIGNATURES
C. TORRES, CC-I    J. RAMOS, CC-II    GAR    4-19-05

NAME                        CDC NUMBER        INSTITUTION            CALENDAR            HEARING DATE

BOARD OF PRISON TERMS
CONTINUATION SHEET: LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

STATE OF CALIFORN

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| | | | of August 26, 2004. WG/PG D2-D through MERD per 2933.6 effective August 22, 2003. Received RVR dated October 28, 2003 for the specific act of Delaying a Peace Officer, received 90 day FOC. Received RVR dated December 1, 2003 and 30 day FOC for Refusal to Obey Orders. Received RVR dated December 2, 2003 for Delaying a Peace Officer and 61 days Loss of Credit (LOC). On December 14, 2003 received CDC 128B authored by W. Haynie, Correctional Sergeant regarding Frelimo's delusional behavior. Received administrative RVR on December 21, 2003 Destruction of State Property less than $50.00. Received RVR dated March 29, 2004 for Refusal to Obey Orders and FOC of 30 days. Received RVR dated April 9, 2004 for Destruction of State Property over $50.00 and 60 days FOC.<br>On April 12, 2004 received RVR for Possession of a Deadly Weapon and 360 days FOC.<br>On June 9, 2004 Institution Classification Committee (ICC) PBSP PSU assessed and Imposed a 15 month aggravated consecutive SHU term with a controlling MERD of October 19, 2005. Received RVR April 22, 2004 for Battery on a Peace Officer, 0 FOC taken due to time constraint violations.<br><br>OTHER: None. |
| 07-01-2004<br>to<br>02-23-2005<br>Present | | | PLACEMENT: On July 1, 2004 PBSP-PSU endorsed to completed a determinate SHU with a MERD of October 19, 2004. Classification Services Representative (CSR) notes a pending SHUable RVR dated April 22, 2004 for Battery on a Peace Officer MAX S custody. Received CDC 128B dated October 29, 2004 authored by N. Leary Correctional Sergeant regarding Inappropriate Behavior. On September 1, 2004 PBSP-SHU Assessed and Imposed a 12-month SHU term resulting in a MERD of October 19, 2005. Request Transfer to Corcoran (COR) SHU at California Correctiona Institution (CCI) SHU based on Correctional Clinical Case Management Systems (CCCMS) Level of Care (LOC). On September 22, 2004 endorsed to CCI SHU to complete determinate SHU. Transferred to CCI IV-A SHU on December 23, 2004. On December 30, 2004 ICC elected to retain in SHU pending MERD of October 19, 2005 place on walk-alone yard received Olson Review on 4-15-2005 see CDC 128-B chrono located in Central file.<br><br>CUSTODY: On December 23-2004 CCI ICC established MAX custody. Remained at MAX custody through this period. |

ORDER:

☐ BPT date advanced by _____ months.      ☐ BPT date affirmed without change.

☐ PBR date advanced by _____ months.      ☐ PBR date affirmed without change.

SPECIAL CONDITIONS OF PAROLE:

☐ Previously imposed conditions affirmed.

☐ Add or modify _____

Schedule of Progress Hearing on appropriate institutional calendar.

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| FRELIMO, OBA | J-25506 | CCI IV-A | 03/2005 | |

BOARD OF PRISON TERMS                                                                    STATE OF CALIFORN

CONTINUATION SHEET: LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| | | | **VOCATIONAL TRAINING:** None. |
| | | | **ACADEMICS:** None. |
| | | | **WORK RECORD:** WG/PG D2-D through MERD per PC 2933.6. |
| | | | **GROUP ACTIVITIES:** None. |
| | | | **PSYCHIATRIC TREATMENT:** None. |
| | | | **PRISON BEHAVIOR:** |
| | | | **OTHER:** None. |

**ORDER:**

☐  BPT date advanced by _____ months.        ☐  BPT date affirmed without change.

☐  PBR date advanced by _____ months.        ☐  PBR date affirmed without change.

**SPECIAL CONDITIONS OF PAROLE:**

☐  Previously imposed conditions affirmed.

☐  Add or modify _____

Schedule of Progress Hearing on appropriate institutional calendar.

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| FRELIMO, OBA | J-25506 | CCI-IV-A | 03/2005 | |

INMATE COPY

INMATE MENTAL HEALTH EVALUATION
THE BOARD OF PRISON TERMS
CALIFORNIA CORRECTIONAL INSTITUTION

NAME: Oba Frelimo
CDC #: J-25506
DOB:    May 26, 1976
DATE OF EVALUATION: January 12 - 13, 2005

## PROCEDURE UTILIZED:

The inmate was clinically interviewed by the undersigned clinician for approximately 2 1/2 hours. The Medical and Central Files were reviewed for background data. The inmate was aware that the purpose of the evaluation was to submit the results to the Board of Prison Terms, and as such was not a confidential exchange. Having been informed, the inmate agreed to the interview process on this basis.

## PSYCHOLOGICAL ASSESSMENT

### I.    IDENTIFYING INFORMATION:

This is Inmate Frelimo's initial board report. He is serving a life term which started July 1, 1994, for Murder 2nd Degree, and, is serving 15 years to life.

Inmate Frelimo was born on June 26, 1976, and is presently 28 years of age. He is a single African American male with no particular religious preference. He has numerous tattoo's on his body including tattoos on his right shoulder, "SFC", standing for San Francisco City on his left arm, a design of no significance on his right arm, and, on his left hand, the initials "KO" which stands for "Knock Out" which represents significance from his boxing years when he was 18, 19, and 20 years of age.

### II.    DEVELOPMENTAL HISTORY:

There are no prenatal, perinatal, or birth defects noted. Nor are there any abnormalities of developmental milestones, in speech, language, or motor development. Peer interactions and social interactions were normal considering his environment, and he denies having any serious habits. He is presently double-celled at CCI after arriving recently, and he denies having any present difficulties living with his cellie. He has no history of cruelty to animals, history of enuresis, or arson. Later in his adolescence he was diagnosed with having Wolff-Parkinson-White Syndrome and he received laser heart surgery at age of approximately 22 or 23 to correct his irregular heart beat. He claims that this medical problem no longer exists. Also related to his developmental history was the lack of physical or sexual abuse as either the perpetrator, or the victim

of 13 and 14 on a weekly basis for 3 – 4 months when referred by the Juvenile
Court System. This was when "I was getting into a lot of trouble."

## III.    EDUCATION:

Reported by the inmate and the C-file is a grade level of the 11th grade, which was
completed in Juvenile Hall. The inmate states that he wants to finish his GED
while at CCI. At the time of this interview, however, he has not submitted a
request to the education department. He claims he has previously taken his GED
and passed everything except for the math section, which he claims use to be his
best academic subject. He claims he was a good student when he attended school
with no special education needs. He claims that he received A's and B's as a
student. He admits to having truancy behavior problems. He started to work on
his GED when he was brought to the state penitentiary system while incarcerated
at Folsom and Pelican Bay.

## IV.    FAMILY HISTORY:

Inmate Frelimo was predominately raised by his mother, Barbara Brown, who he
believes is presently 41 or 42 years of age. He was raised by his mother until he
was 16 and taken to Juvenile Hall followed by Log Cabin Boys' Ranch, Youth
Authority, and then state penitentiary. He described his relationship with his
mother as being good, describing her as being a nice mother. He denies that his
mother has even incarcerated. He believes that she has asthma. At the present
time his mother lives in San Francisco and has her own company selling clothing
from her home. He also denies that his mother has any history of substance
abuse. Inmate Frelimo is the only child, born to his mother Barbara Brown and
his father, Roscoe Farmer.

Roscoe Farmer has never been married to Barbara Brown. Inmate Frelimo states
that they lived together until he was approximately 10 years of age. His father
also lives in the San Francisco area. He is described as being in his 50's and
having Hepatitis C for which the inmate believes he is getting treatment. He
believes his father was once incarcerated for bank robbery in a Federal Prison,
when he was a young man. His father works in the San Francisco area and is an
evangelist for Christ, having attended seminary.

Inmate Frelimo keeps in contact through letters from both parents. Occasionally
they see each other and are on good terms with each other. Also, maternal and
paternal grandmothers write to the inmate. He states that both grandfathers are
deceased but both grandmothers are re-married and sometimes he hears from his
step-grandfathers. Also noted is a maternal aunt who is mentally ill, however, the

Board of Prison Terms

Oba Frelimo, J-25606

Page 3

## V.     PSYCHOSEXUAL DEVELOPMENT/SEXUAL ORIENTATION:

Age of puberty was at approximately to be age 9. Frelimo's first sexual relationship was also at that age, and he claims to be heterosexual in orientation. He denies participation in high risk sexual behavior or sexual aggression.

## VI.    MARITAL HISTORY:

No marriages or common-law relationships exist. Nor were there any children born out of wedlock.

## VII.   MILITARY HISTORY:

None.

## VIII.  EMPLOYMENT AND INCOME HISTORY:

In 1990, Inmate Frelimo worked during the summer as a janitor and child supervisor at B.T. Washington Center. This job terminated naturally when the summer ended.

No vocational training, no work skills, or government programs were participated in, either on the streets or in prison. The reason for this, especially in prison, is that "I was never placed in an environment where I could get there." Construction work was cited as a current interest, should training become available.

## IX.    SUBSTANCE ABUSE HISTORY:

During ages 13, 14, and 15, Inmate Frelimo admits to daily use of marijuana and alcohol. He has also used LSD approximately 1 time per week. He denies using any substances of any type since his incarceration. He has never had any drug treatment, or placement in drug treatment facilities, or programs. He denies any current need for drug treatment stating that he last used drugs when he was 16. He denies using pruno in prison.

## X.     PSYCHIATRIC AND MEDICAL HISTORY:

Prior to his incarceration, Inmate Frelimo denies having any emotional problems. As previously mentioned, however, he was treated between the ages of 13 and 14 for behavioral problems. He states that he became depressed and started hearing

deaths in his family. He also cites that the suicide death of this mother's best friend, who he considered an "Aunt", even though they had no biological connection, troubled him. He was placed on Haldol and Congentin and also Respirdal for treatment of his psychiatric condition. He claims that on at least 6 occasions he was thinking of killing himself. There were no actual reported attempts, however. No homicidal assaultive behavior was noted either. Inmate Frelimo is presently in the mental health program at CCI and is being treated with Zyprexia once a day at the hour of sleep. He has a previous diagnosis of schizophrenia by history, and a questionable impulse control disorder. Also, there is a diagnosis of attention deficit hyperactivity disorder by history, and anti-social personality disorder. At the present time he appears to be mentally stable, but because of the severity of the past schizophrenic and/or psychotic disorders the prognosis is guarded. He admits to occasional bouts with depression, related to "my people who passed away."

Also, as previously mentioned, he was treated for Wolff-Parkinson-White Syndrome for cardiac arrythmia . No other significant medical problems were noted.

## XI.   PLANS IF GRANTED RELEASE:

If released, Inmate Frelimo plans to live with his mother. His parents, relatives, and lady friends constitute his support system. He agrees to comply with his conditions of parole and any recommended out patient treatment. He agrees to continue on his psychiatric medication as prescribed.

## MENTAL HEALTH EVALUATION

## XII.   CURRENT MENTAL HEALTH STATUS:

At the present time his mental status shows no evidence of major psychotic symptoms. He was generally cooperative and pleasant without resistance to the interview. His behavior was appropriate to the situation. He was calm and respectful. He showed no evidence of hostility or anger. He showed motivation for change, although at the present time there is has been no evidence of looking for change due to lack of opportunities reported by him. He denied any present auditory or visual hallucinations. Nor is he presently suicidal or homicidal. There was no unusual gait, mannerisms, ticks, gestures, twitches, or any other unusual stereotypic behavior. He mood was generally normal. There were no indications of language impairment, such as incoherent or incomprehensible speech, or speech defects. The inmate was oriented to person, place, time, and

compulsions, or looseness of association. In general, at the present time the inmate appears stable on his current medication.

Diagnostic Impression:

| | |
|---|---|
| Axis I: | 298.9 Psychosis, NOS (in remission |
| | 311 Depressive D, NOS |
| Axis II: | 301.7 Anti-Social Personality Disorder |
| Axis III: | Wolff-Parkinson-White Syndrome |
| Axis IV: | Incarceration |
| Axis V: | GAF: 68 |

## XIII. REVIEW OF LIFE CRIME:

The inmate's version of the instant offense is as follows:

The inmate was on a 3 day furlough from Log Cabin Boys' Ranch. On the third day of that furlough he stole a vehicle from a "regular person" with the use of a gun. At the time he was with his friend Arvin Edwards. He and his friend were joyriding. Inmate Frelimo was driving. When they saw the police following behind, they started speeding, and, eventually lost the police. They got out of the car and walked away abandoning the stolen vehicle. After about 15 minutes they returned to the car at which time they switched drivers and Arvin Edwards took the wheel. The police again started chasing them. The police were about 1 block behind them when the accident occurred. Inmate Frelimo states that this happened on December 31, 1992. The inmate claims he was the passenger in the vehicle which ran the intersection and collided with another car occupied by the victim named Alio Ginn, who was the driver. Her grandson was also in her car. Alio Ginn was suddenly killed. Her grandson received cuts and bruises and survived, but later required treatment for emotional problems. The inmate states that he and Arvin Edwards had been drinking and smoking marijuana prior to the accident. The inmate states that he received cuts and bruises and the same holds true for his friend Arvin. Both cars were totalled, and after running from the scene of the crime, they were caught and taken into custody at county jail. Inmate Frelimo states that, "I'm suppose to be in prison for vehicular manslaughter." He admits, "I feel real bad, bad because an innocent person got killed because of my loose living. At the time of the accident I was being chased and shot at by the police."

His insight of the situation at the present time shows that when he was 16 years of age he was very unstable. He claims that everything about his environment was bad at that time. He felt it was cool to fly high. It was a way of life, a way to

Board of Prison Terms
Oba Frelimo, J-25606
Page 6

that he was running with a gang (Filmore Gang), but was never a member. He admits that he was caught up in the street gang element which influenced his life when he was trying to find himself. He felt nothing else was available to him in his living environment. It was the way of life.

Inmate Frelimo had a newspaper clipping which he kept because it covered the instant offense. After years of incarceration he realized that prior to the accident he met the victim. He stated that he had come in contact with Alio Grinn, who he described as being a juvenile advocate. When he was 14 years of age, he states, the victim had told him that if he didn't stop running around in stolen cars that someday he might hit her and kill her.

## XIV.  CLINICAL OBSERVATIONS/COMMENTS/RECOMMENDATIONS:

Assessment of Dangerousness:

Within a controlled setting Inmate Frelimo has received 10 RVR's and 22, CDC 128-A's. These include battery on a peace officer, possession of a deadly weapon (razor), destruction of state property, refusal to obey orders, destruction of state property, willfully delaying a peace officer, refusal to obey orders, willfully delaying a peace officer, possession of a deadly weapon, and willfully delaying a peace officer. These RVR's occurred between 8-11-03 and 4-22-04. In reviewing the types of offenses the examiner feels that most are related to his diagnosis of Anti-Social Personality Disorder.

Upon discussing the inmate's feelings of his dangerousness within a controlled setting, he responded by saying that he feels that he is "not dangerous at all. These were small incidents related or triggered by my mental illness." Likewise, if released to the community the inmate has shown great improvement in his mental health condition and mental status. Although he lost numerous family members through death, he "fought to get things together, and now I'm able to get a hold of things." He has also become a more mature individual. Although he has not received vocational training, or his GED, he has been productive in regard to spending time in a positive way while incarcerated. He has written 3 books with relevance to adolescent training and one book about change. He hopes to be able to publish these books. If he is released to the community, he would like to work with his mother. He also presently writes letters to Dominguez Boys and Girls Club to prevent juvenile crime.

Recommendations:

The following recommendations include vocational training as available, completion of a GED, remain disciplinary free, continued utilization of the mental

Board of Prison Terms
Oba Frelimo, J-25606
Page 7

health department services, and psychotropic medication. The inmate also needs to learn detection signs and early symptoms indicating decompensation in his mental status so as to seek help early and appropriately. This is extremely important due to the fact that the inmate was previously an EOP patient, and, also is on forced medication per KEYHEA. Finally, the examiner feels that the inmate has untapped potential. He seems intelligent but needs motivation and encouragement to continue to grow.

Thank you for the consultative privilege.


Respectfully submitted,

*S. Skeen, PhD.*

S. SKEEN, Ph.D.
Licensed Clinical Psychologist
California Correctional Institution – Tehachapi

BOARD OF PRISON TERMS                                                                                              STATE OF CALIFORNIA
## LIFE PRISONER: NOTICE OF HEARING RIGHTS

1. **Purpose of Hearing:**
   The purpose of a parole consideration hearing is to determine whether you are suitable for parole (15 CCR Sec. 2281 / 2402).    The purpose of a progress hearing is to determine whether a parole release date should be advanced (15 CCR Sec. 2269(a) ).  The purpose of a rescission hearing is to determine whether a parole date should be rescinded or postponed (15 CCR Sec. 2450).

2. **Rights to Hearing:**
   One year prior to your minimum eligible parole date a parole suitability hearing will be held (PC Sec. 3041 (a) ). You are entitled to a formal parole suitability hearing each year thereafter unless the hearing panel denies parole for more than one year  (PC Secs. 3041 (c), 3041.5 (b) (2) ).

3. **Right to Be Present, Speak: Waiver: Consequence of Absence:**
   You have a right to attend the hearing, ask and answer questions, and speak on your own behalf (PC Sec. 3041.5 (a) (2) ). You may waive this right  (see In re Sydney M. (1984) 162 CA3d 39,48 (juvenile hearing). If you do not attend the hearing (unless you waive the hearing), a decision will be made in your absence (15 CCR Sec. 2248).

4. **Attorney:**
   You are entitled to be represented by an attorney at the hearing (except progress hearing) (PC Sec. 3041.7).  You may waive that right (15 CCR Sec. 2256 (b) ). If you are unable to afford counsel (i.e., have less than $1500 in cash and / or accounts), an attorney will be provided at state expense (15 CCR Sec. 2256 (c) ).

5. **Notice:**
   You will be notified of the week during which the hearing will be held at least one month before the hearing (15 CCR Sec. 2246).  You will be given reasonable notice of the time, date, and place of the hearing.

6. **Witnesses:**
   At a rescission hearing you are entitled to present and confront witnesses.  At parole consideration and progress hearings you are not entitled to witnesses (see PC Secs. 3041.5 (a) (5), 2932 (c) ).

7. **Others Who May Attend the Hearing:**
   At parole consideration hearings the prosecutor (or representative) at the trial on the charges for which you are incarcerated will be invited to the hearing to represent the interests of the people (PC Sec. 3041.7).  At parole consideration hearings notice of the hearing will also be given to the judge, prosecutor and your attorney at your trial (PC Sec.3042 (a) ).  The victim or next of kin or their attorney may also attend and address the hearing panel (PC Sec. 3043).

8. **Review of File:  Opportunity to Present Evidence:**
   You have the right to review nonconfidential documents in your Department of Corrections central file and you may appeal  insufficient disclosure.  You may enter a written response to any material in the file and may present relevant documents to the hearing panel (15 CCR Secs. 2247,2249 ).  At a rescission hearing you may call witnesses

| NAME | CDC NUMBER | INST / REGION |
|------|------------|---------------|
| FRELIMO, OBA | J25506 | CCI-IVA |

## LIFE PRISONER: NOTICE OF HEARING RIGHTS

9. **Assistance in Preparing for the Hearing: Assistance in Communication:**
   You may receive reasonable assistance in preparing for the hearing. If you are unable to effectively communicate due to language difficulties or a physical or mental defect, appropriate assistance (e.g., an interpreter) will be arranged for you (15 CCR Sec. 2251).

10. **Postponements:**
    A postponement is a delay of a hearing date requested and granted before the hearing actually starts. You may request a postponement by doing so in writing to department staff before the hearing or orally immediately prior to the hearing. Requests for postponements may be granted where good cause is found (see 15 CCR Sec. 2253). Where the hearing has already started, continuances may be granted where: (1) insufficient information is present to determine any necessary fact (15 CCR Sec. 2238), or (2) the panel determines that a decision regarding parole cannot be made because of pending new criminal or disciplinary charges (15 CCR Sec. 2272).

11. **Impartial Panel:**
    You are entitled to a hearing by an impartial panel and may request the disqualification of one or more panel members where grounds for disqualification exist (15 CCR Sec. 2250).

12. **Record: Decision:**
    You are entitled to a copy of the record of the hearing upon request (15 CCR Sec. 2254). You are entitled to a copy of the decision which includes the information considered and the reasons for the decision (15 CCR Sec. 2255).

Abbreviations:

PC = California Penal Code
CCR = California Code of Regulations, formerly California Administrative Code
CA = California Appellate Reports

I have read and understand the list of rights and procedures (Items 1 through 12, above) and I have had an opportunity to asl questions about any rights or procedures that I did not understand.

| _Ma Telimo_ | _J-25506_ | _2-1-05_ |
| Signature | CDC Number | Date |

I explained the foregoing rights to the prisoner, provided him/ her with an opportunity to ask questions, and answered a questions he or she asked.

| Signature  _Charles_ | | Date  _2-1-05_ |
| Name  _f. Torres_ | | Title  _C.C.I._ |
| NAME | CDC NUMBER | INST / REGION |
| FRELIMO, ODI | J25506 | CCI-IVA |

ISL PRISONER: PAROLE CONSIDERATION
HEARING NOTICE

The Board of Prison Terms will be considering you for parole under your Indeterminate Sentence during the

week of:

1. To notice of the week during which the hearing will be held. This notice shall be provided no later than one month before the week during which the hearing will be held.
2. To review all non-confidential material in your Central File and to enter a written response to any material in the file. CDC regulations require up to 30 days advance notice for file review (Case Records Manual Section 436), so your request should be made at least 40 days before the hearing.
3. To the assistance of an interpreter if you do not speak or understand English. The board will provide an interpreter at State expense.
4. To a hearing before an impartial panel.
5. To be present, to ask and answer questions, and to present relevant documents and to speak in your own behalf.
6. To request a continuance. Continuances are granted only in unusual cases.
7. To receive a written statement of the decision.
8. To request and receive a copy of the record of the hearing (tape cassette) by filing a CRB 1084 form.

**Receipt Acknowledged**

| Signature | CDC Number | Date |
|---|---|---|
| *Oba Frelimo* | J-25506 | 2-1-05 |

| | ORCA NUMBER | INSTITUTION |
|---|---|---|
| **FRELIMO, OBA** | **J25506** | **CCI-IVA** |

BPT 1013 (1/2/80)

BOARD OF PRISON TERMS                                                STATE OF CALIFORNIA

## LIFE PRISONER: REQUEST FOR ATTORNEY / WAIVER OF ATTORNEY OR WITHDRAWAL OF REQUEST

| Date of Hearing | Time of Hearing | Type of Hearing |
|---|---|---|
| | | INITIAL |

**Please complete and return as instructed by staff as soon as possible but no later than 5 days after receipt.**

## REQUEST FOR ATTORNEY

☒  I request the assistance of an attorney at my hearing.

1. ☐  I have or can retain my own attorney. The attorney is:

| Attorney's Name | Telephone |
|---|---|
| **Attorney's Address** | |

| Signature of Prisoner | CDC Number | Date |
|---|---|---|

2. ☒  I wish to have the state provide an attorney to assist me. I declare under penalty of perjury that I am indigent ( I have less than $1,500 in cash and/or accounts, Title 15 CCR § 2256(c) ) and cannot afford an attorney.

| Signature of Prisoner | CDC Number | Date |
|---|---|---|
| *Ula Fulmo* | J-25506 | 2-1-05 |

## WAIVER OF ATTORNEY

☐  I waive my right to have an attorney.

On _____(Date), I was informed that I have been scheduled to appear before the BOARD OF PRISON TERMS for a hearing. I was also informed of my right to be represented by an attorney at my Board hearing. I know that if I am indigent and cannot afford to retain an attorney the state will appoint an attorney to represent me at state expense. Knowing this , I have decided that I DO NOT wish the assistance of an attorney at my Board hearing.

| Signature of Prisoner | CDC Number | Date |
|---|---|---|

## WITHDRAWAL OF REQUEST FOR AN ATTORNEY

☐  I withdraw my request for an attorney.

I have reconsidered my request for an attorney at my Board hearing and have decided that I DO NOT wish to have the assistance of an attorney at my Board hearing. This decision to withdraw my request for an attorney is not being made as a result of any promises or duress. I know that if I withdraw my request for an attorney, I will not be able to later request an attorney again for this hearing.

| Signature of Prisoner | CDC Number | Date |
|---|---|---|

| NAME | CDC NUMBER | INSTITUTION |
|---|---|---|

## CONSENT FOR ATTORNEY OF RECORD TO EXAMINE RECORDS

The attorney assigned to represent me at my upcoming Parole Consideration Hearing is hereby authorized by me to act in my behalf, and I hereby grant my attorney permission to examine such records and transcripts as may be available pertaining to my incarceration and to be given copies of any document or information in my records which may be disclosed to my attorney.

Inmate's Signature

Staff Witness    CC-I

Date    2-1-05

Date    2-1-05

[PAGES MISSING, THAT WEREN'T ISSUED TO PETITIONER, INCOMPLETE
25, 45, 49, 50 THRU 58]

### INITIAL PAROLE CONSIDERATION HEARING

### STATE OF CALIFORNIA

### BOARD OF PAROLE HEARINGS

In the matter of the Life )
Term Parole Consideration )
Hearing of:                )        CDC Number J-25506
                           )
OBA FRELIMO                )        INMATE
                           )
_____  )        COPY

### CALIFORNIA CORRECTIONAL INSTITUTION

### TEHACHAPI, CALIFORNIA

### OCTOBER 12, 2005

### 3:55 P.M.

PANEL PRESENT:

TRACEY ST. JULIEN, Presiding Commissioner
RUFUS MORRIS, Deputy Commissioner

OTHERS PRESENT:

OBA FRELIMO, Inmate
LEON R. HARRIS III, Attorney for Inmate

CORRECTIONS TO THE DECISION HAVE BEEN MADE - - - - - - -

_____     No      See Review of Hearing

ii

## INDEX

PAGE

Proceedings ....................................... 1

Case Factors ..................................... 15

Pre-Commitment Factors ........................... 25

Post-Commitment Factors .......................... 47

Parole Plans ..................................... 34

Closing Statements ............................... 57

Recess ........................................... 59

Decision ......................................... 60

Adjournment ...................................... 69

Transcriber Certification ........................ 70

--oOo--

1

| 1 | P R O C E E D I N G S |
| --- | --- |

2        DEPUTY COMMISSIONER MORRIS:  We're on the

3  record.

4        PRESIDING COMMISSIONER ST. JULIEN:   The

5  time is 3:55 p.m., and this is an initial parole

6  hearing for, is it Oba?

7        INMATE FRELIMO:  Yes.

8        PRESIDING COMMISSIONER ST. JULIEN:   Oba

9  Frelimo.

10        INMATE FRELIMO:  Right.

11        PRESIDING COMMISSIONER ST. JULIEN:  Okay.

12  CDC number J-25506.  Today is October 12, 2005,

13  and we are at the Tehachapi Correctional Women's

14  Institution.  The inmate was received on July 1,

15  1994.  Life term started the same day.  Count

16  three was murder-second, violation of Penal Code

17  Section 187, County of San Francisco, Case

18  Number 151728, and a term of 15-years to life,

19  was given a minimum eligible parole date of

20  April 12, 2006.  Was that correct, sir?

21        INMATE FRELIMO:  Right.

22        PRESIDING COMMISSIONER ST. JULIEN:  Okay.

23  And the hearing is being tape-recorded, so we

24  are going to go around the room and introduce

25  ourselves.

26        INMATE FRELIMO:  Okay.

2

1    say our first and last names, spell our last

2    name, and then when it's your turn, sir, if

3    you'd also state your CDC number.  And my name

4    is Tracey St. Julien, S-T capital J-U-L-I-E-N,

5    Commissioner Board of Parole Hearings.

6         DEPUTY COMMISSIONER MORRIS:  Rufus

7    Morris, M-O-R-R-I-S, Deputy Commissioner.

8         ATTORNEY HARRIS:  Leon R. Harris, III,

9    H-A-R-R-I-S.  I'm the attorney (indiscernible)

10   for Mr. Frelimo this afternoon.

11        INMATE FRELIMO:  Oba Frelimo,

12   F-R-E-L-I-M-O, J-25506.

13        PRESIDING COMMISSIONER ST. JULIEN:  Okay.

14   And are your glasses okay?

15        INMATE FRELIMO:  Yes.

16        PRESIDING COMMISSIONER ST. JULIEN:  Do

17   they need to be pushed up?

18        INMATE FRELIMO:  (Indiscernible).

19        PRESIDING COMMISSIONER ST. JULIEN:  Is

20   that better?

21        INMATE FRELIMO:  Yes.

22        PRESIDING COMMISSIONER ST. JULIEN:  Okay.

23   Mr. Frelimo, there's a statement right there in

24   front of you that talks about your ADA rights --

25   your disability rights, and I need you to please

26   read that aloud and I'm going to ask you some

3

| 1 | INMATE FRELIMO:  Okay. |
| 2 | "Americans with Disabilities Act, |
| 3 | ADA, is a law to help people with |
| 4 | disabilities.  Disabilities are |
| 5 | problems that make it harder for |
| 6 | some people to see, hear, breathe, |
| 7 | talk, walk, learn, think, work, or |
| 8 | take care of themselves than it is |
| 9 | for others.  Nobody can be kept |
| 10 | out of public places or activities |
| 11 | because of a disability.  If you |
| 12 | have a disability, you have the |
| 13 | right to ask for help to get ready |
| 14 | for your Board of Parole hearing |
| 15 | -- BPH hearing, get to the |
| 16 | hearing, talk, read forms and |
| 17 | papers, and understand the hearing |
| 18 | process.  BPH will look at what |
| 19 | you ask for to make sure that you |
| 20 | have a disability that is covered |
| 21 | by the ADA, and that you have |
| 22 | asked for the right kind of help. |
| 23 | If you do not get help or if you |
| 24 | don't think you got the kind of |
| 25 | help you need, ask for a BPH 1074 |
| 26 | Grievance Form.  You can also get |

4

```
 1          PRESIDING COMMISSIONER ST. JULIEN:  Okay,
 2   sir, and I have that on February 1 of 2005, you
 3   signed a BPT form 1073 indicating you did not
 4   have any disabilities.  Is that still correct?
 5          INMATE FRELIMO:  Right.
 6          PRESIDING COMMISSIONER ST. JULIEN:  Okay.
 7   And I note that you're wearing glasses.
 8          INMATE FRELIMO:  Right.
 9          PRESIDING COMMISSIONER ST. JULIEN:  So,
10   are those glasses to read or just to --
11          INMATE FRELIMO:  To read.
12          PRESIDING COMMISSIONER ST. JULIEN:  --
13   (indiscernible) vision?
14          INMATE FRELIMO:  To read.
15          PRESIDING COMMISSIONER ST. JULIEN:  So do
16   you need them to look around the room?
17          INMATE FRELIMO:  No, I can take them off
18   and look around the room.
19          PRESIDING COMMISSIONER ST. JULIEN:  Do
20   you want to take them off?
21          INMATE FRELIMO:  Yeah, I would because
22   they keep falling.
23          PRESIDING COMMISSIONER ST. JULIEN:  Okay.
24          INMATE FRELIMO:  Thank you very much.
25          PRESIDING COMMISSIONER ST. JULIEN:  Thank
26   you, sir.  So then, without glasses you can see
```

5

```
 1          INMATE FRELIMO:  Right.
 2          PRESIDING COMMISSIONER ST. JULIEN:  Okay.
 3  And obviously, you can hear me?
 4          INMATE FRELIMO:  Right.
 5          PRESIDING COMMISSIONER ST. JULIEN:  Okay.
 6  And did you have any trouble walking from your
 7  residence to here?
 8          INMATE FRELIMO:  No.
 9          PRESIDING COMMISSIONER ST. JULIEN:  You
10  had no trouble walking --
11          INMATE FRELIMO:  No.
12          PRESIDING COMMISSIONER ST. JULIEN:  --
13  going up or down stairs?
14          INMATE FRELIMO:  No.
15          PRESIDING COMMISSIONER ST. JULIEN:  And I
16  note that you are in the EOP program --
17          INMATE FRELIMO:  Right.
18          PRESIDING COMMISSIONER ST. JULIEN:  Is
19  that correct?  Okay.  And how long have you been
20  in the EOP program?
21          INMATE FRELIMO:  Only for a few months.
22          PRESIDING COMMISSIONER ST. JULIEN:  Okay.
23  And what is that program helping you with?.
24          INMATE FRELIMO:  Really, right now, I'm
25  just waiting to be (indiscernible) out of the
26  program, but they just took me off of some
```

6

1    I'm just (indiscernible) out of the program.

2          PRESIDING COMMISSIONER ST. JULIEN:  Okay.

3    And do you recall the name of the medication?

4          INMATE FRELIMO:  Vipraxen (phonetic).

5          PRESIDING COMMISSIONER ST. JULIEN:  Okay.

6    And has that helped you?

7          INMATE FRELIMO:  It did when I needed it.

8          PRESIDING COMMISSIONER ST. JULIEN:  Okay.

9    What about -- are you still on it?

10         INMATE FRELIMO:  No, I'm not on it, no.

11         PRESIDING COMMISSIONER ST. JULIEN:  Okay.

12   So when you were on it, did you have any side

13   effects that might prevent you from

14   participating in the hearing today?

15         INMATE FRELIMO:  No.

16         PRESIDING COMMISSIONER ST. JULIEN:  And

17   are you on any other medications now?

18         INMATE FRELIMO:  No.

19         PRESIDING COMMISSIONER ST. JULIEN:  Okay.

20   So, why did you have the need for the vipraxen?

21         INMATE FRELIMO:  They issued it to me

22   when I was in Pelican Bay because I got into an

23   incident with the staff, and they diagnosed me

24   as having some kind of schizophrenia disorder.

25         PRESIDING COMMISSIONER ST. JULIEN:

26   Bipolar?

7

1  it or not.

2         PRESIDING COMMISSIONER ST. JULIEN:  Do

3  you feel that you need some mental help?

4         INMATE FRELIMO:  No.

5         PRESIDING COMMISSIONER ST. JULIEN:  No?

6  Why do you think they said that you did then?

7         INMATE FRELIMO:  Really, I don't know.  I

8  guess probably at the time they figured I was

9  kind of out of it, because I was stressing going

10  through a lot with my family, so they may have

11  just made the diagnosis (indiscernible) that

12  information.

13         PRESIDING COMMISSIONER ST. JULIEN:  Okay.

14  Some -- I heard some inmate's say that they

15  think that the Board views anybody who's been in

16  EOP or Triple CMS unfavorably.  Have you heard

17  that?

18         INMATE FRELIMO:  No.

19         PRESIDING COMMISSIONER ST. JULIEN:  Okay.

20  (Indiscernible) well that is not true.  If you

21  need to get mental health services, then you

22  should by all means do that.  And not be

23  concerned with what anyone (indiscernible) about

24  that.  Okay.  And I noted that you don't have

26         INMATE FRELIMO:  No.

27         PRESIDING COMMISSIONER ST. JULIEN:  And

8

1    why is that?

2        INMATE FRELIMO:  I -- basically

3    (indiscernible) the prison where they been

4    placing me at they been constantly going in

5    lockdown because of like race riots or whatever,

6    so the school system gets shutdown, I'm not able

7    to participate in school programs, and I been in

8    Ad-Seg a lot.  I took my GED when I was in

9    Pelican Bay, but I never got a chance to pass it

10   because my math score was low.  That was the

11   only thing.  So when I got here I was trying to

12   get my math, you know, take classes so I can

13   pick up whatever I need to pick up so I can pass

14   the math portion of the GED.  But there's no

15   educational services (indiscernible) so I'm kind

16   of like stuck.

17        PRESIDING COMMISSIONER ST. JULIEN:  Okay.

18   So, why were you in Pelican Bay?

19        INMATE FRELIMO:  I got shipped up here

20   from Corcoran to the mainline.

21        PRESIDING COMMISSIONER ST. JULIEN:  So

22   you went from Corcoran to Pelican Bay?

23        INMATE FRELIMO:  Yes.

24        PRESIDING COMMISSIONER ST. JULIEN:  Okay.

25   So, what's going on with you?

26        INMATE FRELIMO:  I (indiscernible) stay

9

| 1 | PRESIDING COMMISSIONER ST. JULIEN: |

2    (Indiscernible) trying to get in trouble.  Okay.

3    Do you understand the correlation between your

4    behavior and your receiving disciplinarys, and

5    how that relates to what programs are going to

6    be available to you?

7         INMATE FRELIMO:  Right, right, right.

8         PRESIDING COMMISSIONER ST. JULIEN:  Do

9    you understand --

10         INMATE FRELIMO:  Right.

11         PRESIDING COMMISSIONER ST. JULIEN:   --

12    they are directly correlated?  So as long as you

13    have high scores, as long as you're getting in

14    trouble, don't say that where you are the

15    programs aren't there.  It's because of the

16    situation that you are in that you might not be

17    able to take advantage of things that are

18    available.

19         INMATE FRELIMO:  Right.

20         PRESIDING COMMISSIONER ST. JULIEN:  Okay.

21    So this is your initial hearing.  So we are

22    going to -- in looking over your file I think

23    that you need somebody to go to lay down the law

24    to you because we're not finding what we would

25    expect in a first hearing.  And so

26    since this is your first hearing we are probably

10

1    you should be doing.  Okay.  I'm going to give

2    you -- go ahead and give you an outline of the

3    hearing procedure.  This hearing is being

4    conducted pursuant to Penal Code Sections 3041,

5    3042, and the rules and regulations of the Board

6    of Parole Hearings governing Parole

7    Consideration Hearings for Life Inmates.  The

8    purpose of the hearing today is to consider your

9    suitability for parole.  In doing so we will

10   consider the number and nature of the crimes you

11   were committed for, your prior criminal and

12   social history, and your behavior and

13   programming since your commitment.  You had the

14   opportunity to review your Central File, and you

15   will be given an opportunity to correct or

16   clarify the record if necessary.  We will

17   consider your progress since your commitment,

18   your counselor's report, and your psychological

19   evaluation.  And if you have any changes in your

20   parole plans or anything like that, if you would

21   bring these to our attention.  We'll reach a

22   decision today and inform you whether or not be

23   do find you suitable for parole, and the reasons

24   for that decision.  Before we go any further,

25   I'd like to make sure you understand that we

26   expect you to be totally honest with us today.

11

1   will form the foundation for all of your future

2   hearings. If you do not get a date today, any

3   false statements you make will have an adverse

4   affect on your ability to get a date in the

5   future because future Panels will go through

6   these transcripts and if your story changes in

7   any way, (indiscernible) call you on it.  Okay.

8   So you need to be completely honest.  Nothing

9   that happens here today will change the findings

10  of the court.  We are not here to retry your

11  case.  We are here for the sole purpose of

12  determining your suitability of parole.  Do you

13  understand that, sir?

14        INMATE FRELIMO:  Yeah.

15        PRESIDING COMMISSIONER ST. JULIEN:  Okay.

16  After we discuss your record and your

17  post-conviction factors, your attorney will have

18  the opportunity to ask you questions, and after

19  he asks you questions your attorney and you will

20  also be given an opportunity to make a final

21  statement as to why you should be found suitable

22  for parole.  Then we will recess, clear the

23  room, deliberate, and after we have reached a

24  decision we will resume the hearing and announce

25  our decision.  The California code of

26  Regulations state that regardless of time

27  served, a life inmate shall be found unsuitable

12

1   for and denied parole if in the judgment of the

2   Panel the inmate would pose an unreasonable risk

3   of danger to society if released from prison.

4   Do you understand that, sir?

5        INMATE FRELIMO:  Yeah.

6        PRESIDING COMMISSIONER ST. JULIEN:  Okay.

7   And you also have certain rights.  Those rights

8   include the right to a timely notice of this

9   hearing, a right to review your Central File,

10  and the right to present relevant documents.

11  And, Mr. Harris, have your client's rights been

12  met in that regard?

13       ATTORNEY HARRIS:  Yes, they have.

14       PRESIDING COMMISSIONER ST. JULIEN:  Okay.

15  You also have the right to be heard by an

16  impartial Panel.  Do you have any objections to

17  today's Panel?

18       INMATE FRELIMO:  No.

19       PRESIDING COMMISSIONER ST. JULIEN:  Okay.

20  Mr. Harris?

21       ATTORNEY HARRIS:  No objections.

22       PRESIDING COMMISSIONER ST. JULIEN:  Okay.

23  You will receive a copy of the written tentative

24  decision today.  That decision is subject to

25  review by the entire Board meeting as a whole

26  and by the Decision Review Unit.  It's also

13

1   become effective within 120 days.  A copy of the

2   decision and a hearing transcript will be sent

3   to you.  And the Board no longer has an appeals

4   process, so if you have any objections or

5   complaints about the hearing today you need to

6   file those with the court, and you can find

7   information on that process in the Prison Law

8   Library (indiscernible) appeals correspondence,

9   (indiscernible) decision.  And, Commissioner

10  Morris is there any confidential?

11        DEPUTY COMMISSIONER MORRIS:  No.

12        PRESIDING COMMISSIONER ST. JULIEN:  Okay.

13  Earlier I passed a hearing checklist marked

14  Exhibit One to your attorney to make sure we all

15  have the same documents, and I received that

16  back.  Is that complete, Mr. Harris?

17        ATTORNEY HARRIS:  Yes, Ma'am.

18        PRESIDING COMMISSIONER ST. JULIEN:  Okay,

19  thank you.  And do you have any additional

20  documents?

21        ATTORNEY HARRIS:  No, I do not.

22        PRESIDING COMMISSIONER ST. JULIEN:  Okay.

23  Do you have any preliminary objections?

24        ATTORNEY HARRIS:  No, I just want to make

26  about the mental health services delivery

14

1    in EOP back in the year 2000, they said he met

2    the criteria for Triple CMS, but I don't know

3    whether he did get into Triple CMS or not, or he

4    just continued in EOP back then in 2000 to the

5    present time.

6         PRESIDING COMMISSIONER ST. JULIEN:  Okay.

7    So Mr. Frelimo are you saying -- so you said

8    you're still in EOP.

9         INMATE FRELIMO:  Right.  I been out

10   before.  I been (indiscernible) --

11        PRESIDING COMMISSIONER ST. JULIEN:  Were

12   you --

13        INMATE FRELIMO:  -- went back into the

14   system.

15        PRESIDING COMMISSIONER ST. JULIEN:  Okay.

16   So you are in EOP currently?

17        INMATE FRELIMO:  Right.

18        PRESIDING COMMISSIONER ST. JULIEN:  Okay.

19   Have you ever been in Triple CMS?

20        INMATE FRELIMO:  Yes.

21        PRESIDING COMMISSIONER ST. JULIEN:  And

22   are you in Triple CMS now?

23        INMATE FRELIMO:  No.  I don't think so.

24        ATTORNEY HARRIS:  (Indiscernible) EOP

26   (indiscernible) currently in EOP.

15

1           ATTORNEY HARRIS: You're taking

2    medications as well?

3           INMATE FRELIMO:  No.

4           PRESIDING COMMISSIONER ST. JULIEN:  Thank

5    you.  Okay.  And will Mr. Frelimo be speaking

6    with us today?

7           ATTORNEY HARRIS:  Yes, he will.

8           PRESIDING COMMISSIONER ST. JULIEN:  Okay.

9    Then I need to give you an oath, sir.  Do you

10   solemnly swear or affirm the testimony you give

11   at this hearing will be the truth, the whole

12   truth, and nothing but the truth?

13          INMATE FRELIMO:  Yeah.

14          PRESIDING COMMISSIONER ST. JULIEN:  Okay.

15   Thank you.  And I'm gong to read the summary of

16   the crimes as it appears in the March 2005 Board

17   report.  And that report was prepared by

18   Correctional Counselor I, last name Torres,

19   T-O-R-R-E-S.  And reviewed by Correction

20   Counselor II -- I don't know, I can barely make

21   out the initials.  It looks like J-A-R.  And it

22   says that

23           "On December 30, 1992, at

24           approximately 11:27 hours the

25           defendant struck a car in an

26           intersection, causing death to

16

| | |
|---|---|
| 1 | last name G-I-N-N -- and injured |
| 2 | four other people.  Information |
| 3 | indicates that a (indiscernible) |
| 4 | Rude, R-U-D-E, was getting out of |
| 5 | her vehicle on December 30, the |
| 6 | same day, when the defendant |
| 7 | approached her from the rear and |
| 8 | displayed a gun, demanding her car |
| 9 | keys and purse.  The victim was |
| 10 | afraid and complied.  Police later |
| 11 | (indiscernible) and police |
| 12 | (indiscernible) pursuit.  Police |
| 13 | backed off when the defendant's |
| 14 | speed hit 70 miles per hour on a |
| 15 | city street.  The defendant drove |
| 16 | West on (indiscernible) Street and |
| 17 | collided with the left side of a |
| 18 | vehicle driven by Alio Ginn.  The |
| 19 | woman's six-year-old grandson was |
| 20 | a passenger in the car.  The force |
| 21 | of the impact caused the women's |
| 22 | car to collide with another |
| 23 | occupied vehicle and a parked |
| 24 | vehicle.  Mrs. Ginn died from a |
| 25 | (indiscernible) injury received in |
| 26 | the collision.  Her grandson |

17

1            scrapes, bruises on the back and

2            sides of the body and a nosebleed.

3            The defendant and his companion

4            ran from the accident and tried to

5            hide.  Witnesses directed police

6            to the defendant and his

7            companion.  Both were captured.

8            The defendant and his companion

9            both admitted to the police that

10           they (indiscernible), and both

11           were arrested."

12    Okay, so in your version -- we have here a

13    prisoner's version.  It says during the

14    pre-sentence report interview you said that the

15    case involved an accident where the car he was

16    driving ran out of control.  He viewed the case

17    as vehicular manslaughter.  Now, is that still

18    accurate?

19           INMATE FRELIMO:  Yeah.

20           PRESIDING COMMISSIONER ST. JULIEN:  So

21    you view this case as vehicular manslaughter?

22    Why is that?

23           INMATE FRELIMO:  I had no control of the

24    car.

25           PRESIDING COMMISSIONER ST. JULIEN:  Okay.

26    Whose car was it?

18

```
 1        PRESIDING COMMISSIONER ST. JULIEN:  Okay.
 2   And what is stealing a car?  What kind of crime
 3   is stealing a car?
 4        INMATE FRELIMO:  Robbery.
 5        PRESIDING COMMISSIONER ST. JULIEN:  But
 6   is it a misdemeanor, a felony?
 7        INMATE FRELIMO:  It's a felony
 8   (indiscernible).
 9        PRESIDING COMMISSIONER ST. JULIEN:  Okay,
10   so do you understand the felony murder rule?
11        INMATE FRELIMO:  Yes.
12        PRESIDING COMMISSIONER ST. JULIEN:  Okay.
13   So, then what would make you think that this is
14   vehicular manslaughter and not felony murder?
15        INMATE FRELIMO:  (Indiscernible) before
16   we even got into the car crash, and the police
17   (indiscernible), the robbery was already
18   committed.  It was over with, we (indiscernible)
19   a parked car, we got out of it --
20        PRESIDING COMMISSIONER ST. JULIEN:  But
21   you did take the car before you got out of --
22        INMATE FRELIMO:  No, that after.  That
23   was after, when we got back in the car that's
24   when (indiscernible).
25
26   but you were still in a stolen vehicle.
```

19

```
 1   (indiscernible) of the robbery, it wasn't like

 2   the robbery just took place and the police

 3   started (indiscernible) --

 4        PRESIDING COMMISSIONER ST. JULIEN:  But

 5   it's still the same crime.

 6        INMATE FRELIMO:  (Indiscernible).

 7        PRESIDING COMMISSIONER ST. JULIEN:  So,

 8   do you feel today that -- well, let me ask it

 9   this way.  Do you feel that you should be

10   convicted of murder?

11        INMATE FRELIMO:  Murder?

12        PRESIDING COMMISSIONER ST. JULIEN:  You

13   got a conviction of murder-second.  Do you feel

14   that that was a (indiscernible)?

15        INMATE FRELIMO:  No.

16        PRESIDING COMMISSIONER ST. JULIEN:  Okay.

17   And that was because --

18        INMATE FRELIMO:  I didn't intend to kill

19   anyone.

20        PRESIDING COMMISSIONER ST. JULIEN:  Well,

21   murder-second doesn't require intent.  You

22   intended to rob.

23        INMATE FRELIMO:  Right.

24        PRESIDING COMMISSIONER ST. JULIEN:  You

25   intended to do the hijacking.  And every crime

26   that falls on that initial crime is combined
```

20

1   (indiscernible) with it. So do you feel that

2   you should have been convicted of murder?

3        INMATE FRELIMO:  No.

4        PRESIDING COMMISSIONER ST. JULIEN:  Okay.

5   And has anyone, counselors or whoever, has

6   anyone talked to you about why you were

7   convicted of murder.

8        INMATE FRELIMO:  I accepted a deal.

9        PRESIDING COMMISSIONER ST. JULIEN:  Okay.

10  Do you accept responsibility for the murder of

11  Mrs. Ginn?

12       INMATE FRELIMO:  Do I accept the --

13       PRESIDING COMMISSIONER ST. JULIEN:

14  Responsibility for --

15       INMATE FRELIMO:  -- responsibility for

16  killing?  Of course.  I was reckless and I was

17  (indiscernible).

18       PRESIDING COMMISSIONER ST. JULIEN:  Okay.

19  Then why don't you think you should have been

20  convicted of murder?

21       INMATE FRELIMO:  Because I didn't

22  intentionally kill her.  It's not like I had

23  (indiscernible) like this specific person I'm

24  going to murder.  It could have been my mother

25  in that car, anybody, I was like three blocks

21

1   had not control over it.

2           PRESIDING COMMISSIONER ST. JULIEN:   And

3   so you got to understand how you, how that

4   initial crime, the carjacking, travels to

5   whatever offense has happened after that initial

6   crime.   Okay.   Well, you're here today, and you

7   were convicted of murder, and I'm asking you

8   these questions because I'm trying to figure out

9   if you have any remorse, or insight into this

10  murder (indiscernible).

11          INMATE FRELIMO:   Well, yes, I do now.   I

12  was 16 when this all happened so I was real

13  young, you know what I'm saying.   I didn't

14  really have any sort of understanding or sense

15  of direction in life, but now that I'm older,

16  I'm 29-years old, I mean, it's a terrible thing,

17  you know what I'm saying.   Had I been living my

18  life differently it never would have happened.

19          PRESIDING COMMISSIONER ST. JULIEN:   Okay.

20  So what understanding now have you been able to

21  come to about this --

22          INMATE FRELIMO:   I mean basically I

23  should have been more (indiscernible) of what

24  decision I made, what people I was around when I

25  was younger.   Now, you know, I'm not a follower

26  any longer.   I'm a leader, so I don't just do

22

1    -- go out and do things just (indiscernible)

2    without thinking first about the consequences

3    behind my actions.

4         PRESIDING COMMISSIONER ST. JULIEN:  Okay.

5    So is it true that you had met -- that you knew

6    Mrs. Ginn?

7         INMATE FRELIMO:  I'd met her before,

8    downtown at Embarcadero.  She was like passing

9    out Toys for Tots, because she was a youth

10.  advocate.  I guess she heard about my numerous

11   (indiscernible) while I was a juvenile

12   (indiscernible) kill somebody.  (Indiscernible)

13   something like that.

14        PRESIDING COMMISSIONER ST. JULIEN:  So

15   don't you think that was prophetic in a way?  I

16   mean, how has that affected you?

17        INMATE FRELIMO:  Only God, only God can

18   (indiscernible) and it's like all my life's been

19   like that, you know, people telling me

20   (indiscernible) something.  The obvious happens,

21   and it's like okay.  I'm starting to see things

22   down here.  You know, we think we run

23   everything, control everything, but we don't.

24        PRESIDING COMMISSIONER ST. JULIEN:  Who

25   do you mean by we?

26        INMATE FRELIMO:  Like people period in

23

1   controls everything that happens down here.

2   That we all have a life lesson to live, but

3   everybody's name is in the Book of Life.  Just,

4   you know, things that you're doing, how you live

5   your life (indiscernible).  Sometimes you can do

6   things that hurt other people and don't

7   (indiscernible) to, and that's how I got

8   (indiscernible) place, I didn't expect to hurt

9   anybody.  I mean, at the time I wasn't thinking

10   clearly, I didn't think that my actions would

11   hurt anybody.

12          PRESIDING COMMISSIONER ST. JULIEN:  So

13   even after she told you that, it seems like she

14   was trying to help you.  So after she told you

15   that, did it -- did you think about it at all?

16   I mean, I know you were young, I know that you

17   remembered it after you found out who she was

18   and --

19          INMATE FRELIMO:  Right.  When I was

20   reading (indiscernible) who she was and I was

21   like (indiscernible).  Because a lot of that

22   information was kept from me (indiscernible)

23   later on (indiscernible) I got the information,

24   so I started doing a lot of soul searching.

25          PRESIDING COMMISSIONER ST. JULIEN:  Okay,

26   and so in that soul searching what did you come

24

1      INMATE FRELIMO:    (Indiscernible) little

2    rowdy because I grew up in a community where,

3    you know, (indiscernible) so only thing I knew

4    was what was around me.  You know what I'm

5    saying, I wasn't too (indiscernible) pick up

6    books and read and learn about the world and

7    culture and struggles of America or what's going

8    on in America so -- and so I, you know,

9    basically came to prison.  I started reading

10    books, learning things, and my view of life has

11    totally changed, you know what I'm saying.  I

12    understand that I was on the wrong side.  I

13    mean, and it's not like I've never spent time on

14    the streets doing things positive because I

15    have.  You know, I worked with police to

16    (indiscernible).  I have uncles and cousins in

17    the military and so I done things with them, and

18    at the time I was young.  I believe I basically

19    needed mentors.  I needed more people around me

20    just to help me out for me to sort through what

21    I had to, you know, basically overcome

22    (indiscernible) my parents, where I lived at,

23    you know what I'm saying.  And now I've been

24    able to do that.

PRESIDING COMMISSIONER BULLER:  Okay.

26    Had you ever done a carjacking before?

26

| 1 | PRESIDING COMMISSIONER ST. JULIEN: San |
| 2 | Francisco. So was it a poor area of San |
| 3 | Francisco? |
| 4 | INMATE FRELIMO: Filmore District. |
| 5 | PRESIDING COMMISSIONER ST. JULIEN: Okay. |
| 6 | And you had -- you were raised, it says, |
| 7 | primarily by your mom -- . |
| 8 | INMATE FRELIMO: Right. |
| 9 | PRESIDING COMMISSIONER ST. JULIEN: -- |
| 10 | until about 16. And what about other siblings, |
| 11 | brothers and sisters? |
| 12 | INMATE FRELIMO: None. |
| 13 | PRESIDING COMMISSIONER ST. JULIEN: You |
| 14 | don't have any. And you have four children? |
| 15 | INMATE FRELIMO: Yeah. |
| 16 | PRESIDING COMMISSIONER ST. JULIEN: How |
| 17 | did you (indiscernible) four children before 16? |
| 18 | I read that, and I thought for sure that was a |
| 19 | misprint. So, what -- how many kids would you |
| 20 | have had if you didn't get locked up? Do you |
| 21 | understand the responsibility of having children |
| 22 | now? |
| 23 | INMATE FRELIMO: Yes. |
| 24 | PRESIDING COMMISSIONER ST. JULIEN: What |
| 25 | don't understand. I just |
| 26 | don't understand. So you were -- were you in |
| 27 | school? |

27

 1        INMATE FRELIMO:  Yeah.

 2        PRESIDING COMMISSIONER ST. JULIEN:  Did

 3  you work?

 4        INMATE FRELIMO:  I had summer jobs.

 5        PRESIDING COMMISSIONER ST. JULIEN:  So

 6  was your mom okay?  It sounds like you had your

 7  mom.  You had your grandmothers.  It appears

 8  that your dad might not have been there.  Did he

 9  live in San Francisco?

10        INMATE FRELIMO:  Yeah, he stayed like two

11  blocks away.

12        PRESIDING COMMISSIONER ST. JULIEN:  Did

13  you see him often?

14        INMATE FRELIMO:  Yeah.

15        PRESIDING COMMISSIONER ST. JULIEN:  So

16  what do you think your parent's (indiscernible)?

17        INMATE FRELIMO:  I don't think they --

18  basically, my parents did everything right when

19  we -- when I was really influenced by the

20  streets, you know.

21        PRESIDING COMMISSIONER ST. JULIEN:  Well,

22  not everybody is, so why do you think you were?

23        INMATE FRELIMO:  I wanted everything that

24  I saw a little too fast.

25        PRESIDING COMMISSIONER ST. JULIEN:  Did

26  you have a contact with your children?

28

1   (indiscernible).

2        PRESIDING COMMISSIONER ST. JULIEN:   Do

3   you want to?

4        INMATE FRELIMO:  Yes.

5        PRESIDING COMMISSIONER ST. JULIEN:   Have

6   you ever thought about how you would contact

7   them, or how -- what happens if you get a letter

8   from one of them?

9        INMATE FRELIMO:  I been trying to contact

10  them for the past year now.

11       PRESIDING COMMISSIONER ST. JULIEN:   Do

12  you know where their mothers are?

13       INMATE FRELIMO:  Not really.

14       PRESIDING COMMISSIONER ST. JULIEN:

15  (Indiscernible) were any of them boys?

16       INMATE FRELIMO:  Two, two girls.

17       PRESIDING COMMISSIONER ST. JULIEN:   So

18  what if they're getting in trouble?  You have a

19  lot to think about.

20       INMATE FRELIMO:  I think about it every

21  day.

22       PRESIDING COMMISSIONER ST. JULIEN:   Does

23  your mom -- do you think your mom might have

24  (indiscernible).

25       INMATE FRELIMO:  No, she doesn't even

26  really believe I have any children.

29

1    do you know?

2        INMATE FRELIMO:   Because when I was out

3    there these females they -- I never had any

4    blood tests or anything that my mom's been

5    wanting me to do.   Two of the kids I met and two

6    of the other children I was told that they were

7    conceived, so I never got a chance to --

8        INMATE FRELIMO:   Do you know that you

9    have some safe sex classes in here?

10       PRESIDING COMMISSIONER ST. JULIEN:   No.

11       INMATE FRELIMO:   You haven't?   I know

12   they offer HIV prevention and all that kind of

13   stuff.   Okay.   So your juvenile record, that's

14   all you have since you were 16.   Theft, petty

15   theft, in 1990.   So you were made a ward of the

16   court.   Is that correct?   A wardship?   Okay, do

17   you think (indiscernible) another in 1991?   A

18   wardship was re-declared and you were placed on

19   home probation -- and I guess that was the

20   second time on home probation, and the

21   commitment to juvenile hall was stayed.   What do

22   you think would have happened to you if you had

23   gone into juvenile hall, as opposed to being on

24   home probation?

25       INMATE FRELIMO:   (Indiscernible).

26       PRESIDING COMMISSIONER ST. JULIEN:   Let's

30

1       INMATE FRELIMO:  I been in juvenile hall

2    before.

3           PRESIDING COMMISSIONER ST. JULIEN:   -- do

4    you think -- well, do you think (indiscernible)

5    earlier.  I don't have you at juvenile hall.  I

6    have you at Log Cabin Ranch School.  When were

7    you in juvenile hall?

8           INMATE FRELIMO:  I was in juvenile like

9    20, 30 times.

10          PRESIDING COMMISSIONER ST. JULIEN:

11   (Indiscernible).  Okay.  Thirty times?  Was that

12   for different -- okay.

13          ATTORNEY HARRIS:  Only thing I can see is

14   on number two, it says that juvenile hall was

15   stayed.

16          PRESIDING COMMISSIONER ST. JULIEN:  Yeah,

17   that's the only thing I saw, so I thought you

18   hadn't done juvenile hall.  That you had just

19   gone to the Ranch.  Okay, do think anything

20   would have stopped -- what do you think would

21   have stopped this pattern of criminal behavior

22   that subsequently led this life offense?  Do you

23   think anything could have stopped you?

24          INMATE FRELIMO:  Honestly, I didn't

25   expect to see 18.

26   see 18.  If this wouldn't have happened, I would

31

1          PRESIDING COMMISSIONER ST. JULIEN:  And

2    would that have been okay with you?  I mean,

3    what --

4          INMATE FRELIMO:  At the time, when I was

5    (indiscernible) I wasn't even (indiscernible)

6    that's major.  Where I come from people die

7    early, you know.  Every day, possibly once a

8    month, I hear from my family somebody died.  I

9    lost so many family members since I been locked

10   up for 14 years, so it's like saving me totally.

11         PRESIDING COMMISSIONER ST. JULIEN:  Did

12   you ever want anything more from life?

13         INMATE FRELIMO:  Yeah, I wanted to be a

14   doctor (indiscernible).

15         PRESIDING COMMISSIONER ST. JULIEN:  And

16   then what happened, you just got caught up in --

17         INMATE FRELIMO:  I came (indiscernible)

18   to achieving that goal when I was at Log Cabin.

19   I had a lot of people helping me.  Buying me,

20   you know, books about the anatomy and

21   (indiscernible) told me (indiscernible) talked

22   my GED (indiscernible) in the past.  I had

23   somebody that was willing to pay for me to go

24   off to college, to pay for my room and board, to

25   buy me an automobile, clothes.  All I had to do

26   was finish the Ranch program, that's all they

32

1    this happened. I lost everything.

2           PRESIDING COMMISSIONER ST. JULIEN:    Okay.

3    And so do you understand why you did this, why

4    you let that happened? Because that sounds like

5    a once in a lifetime golden opportunity. But

6    hijacking a car that subsequently -- you say you

7    didn't know the murder was going to happen --

8    the death of Mrs. Ginn was going to happen. But

9    you knew that carjacking was wrong. So with

10   that, you had this big package (indiscernible),

11   but yet you risked it. And by risking it, you

12   did lose it. Do you have any idea -- I know you

13   were young, but now -- do you have any idea now

14   what made you want to take that chance to lose

15   that once in a lifetime opportunity.

16          INMATE FRELIMO:    I wasn't thinking

17   clearly. I wasn't thinking at all.

18          PRESIDING COMMISSIONER ST. JULIEN:    Do

19   you know what -- have you heard of

20   self-sabotage? You've heard that

21   (indiscernible) that you're really setting

22   yourself up to fail.

23          INMATE FRELIMO:    I don't think I was even

24   conscious whatever at the time I was

25   self-sabotaging myself

26   lost I was basically, when I was there with

33

1    even cross my mind.

2           PRESIDING COMMISSIONER ST. JULIEN:  Okay.

3    That's what you were doing.  Okay.  And it is my

4    colleagues area to talk to you about your

5    disciplinarys and post-conviction factors, but I

6    need to ask you, do you ever -- do you want to

7    get out of prison?

8           INMATE FRELIMO:  Yes.

9           PRESIDING COMMISSIONER ST. JULIEN:  Okay.

10   Do you think you're going to ever get out, going

11   the way you're going?

12          INMATE FRELIMO:  No.

13          PRESIDING COMMISSIONER ST. JULIEN:  Okay.

14   So again, I mean, everything that you said you

15   were doing when you were younger that got you in

16   here, you're still continuing to do.  Do you

17   have any explanation?  What's it going to take

18   to turn you around?

19          INMATE FRELIMO:  I mean, I pretty much

20   already started (indiscernible) myself

21   (indiscernible) two years, even kinda like

22   before, like '98, I started having a change

23   (indiscernible) I'm doing.  You know, I faced --

24   I learned how to conduct myself and I been

25   (indiscernible) and (indiscernible) as an

26   adult.  To think rationally, you know, make good

34

```
 1   things happens, and you just gotta do what you

 2   gotta do or you know --

 3           PRESIDING COMMISSIONER ST. JULIEN:  No,

 4   you don't have to do.  When you say do what you

 5   gotta do, I imagine that means defend yourself

 6   of something like that.  Well, you continue

 7   doing any of the things you're doing

 8   (indiscernible) you know, so you have to make

 9   that decision.  Are you going to fight for your

10   life, to have -- at some point in time to have a

11   better life, or are you just going to resign

12   yourself to doing you know, getting in trouble

13   and staying?  I mean, I think you really really

14   really need to think about that, and come to

15   some decision and stick with it.  Because all of

16   these years of disciplinarys in the Board's eyes

17   -- you know you lose those years.  When they do

18   the calculations you don't get any, you know,

19   points for those years that you incurred

20   (indiscernible) go away.  So it's not like

21   you've, you know, like the past years are going

22   to count for anything.  Okay, so your future

23   plans -- you have a fiancee, Kimberley?

24           INMATE FRELIMO:  Yes.

25           PRESIDING COMMISSIONER ST. JULIEN:  And

26   how did you meet Kimberley?
```

35

```
 1          PRESIDING COMMISSIONER ST. JULIEN:  Okay.

 2   And is she a friend of your aunt's?

 3       INMATE FRELIMO:  Yes.

 4          PRESIDING COMMISSIONER ST. JULIEN:  Okay.

 5   And how does she feel about you being in prison?

 6          INMATE FRELIMO:  She's dealing with it.

 7   She, you know, she thinks it's real sad I been

 8   locked up this long since I was a kid.

 9          PRESIDING COMMISSIONER ST. JULIEN:  Well,

10   does she know why you've been locked up?

11          INMATE FRELIMO:  Yeah.

12          PRESIDING COMMISSIONER ST. JULIEN:  Does

13   she know how you've been behaving in prison?

14          INMATE FRELIMO:  (Indiscernible).

15          PRESIDING COMMISSIONER ST. JULIEN:  Okay.

16   So it's not sad, it's regrettable.  Okay, and

17   then -- where is River (indiscernible).  I'm not

18   sure where --

19          INMATE FRELIMO:  (Indiscernible).

20          PRESIDING COMMISSIONER ST. JULIEN:  Okay.

21   Because I have that's where Kimberley lives, and

22   you'd like to (indiscernible).  But then I have

23   for your employment plans to work at -- to work

24   in San Francisco.  So that seems to be pretty

25   far.  And what is the -- is it Miramar

26   (indiscernible)?
```

36

1        PRESIDING COMMISSIONER ST. JULIEN:  Is

2   that a clothing store?  Okay.  And you were

3   (indiscernible) have you -- you said you had a

4   job, a summer job?  And when -- how did you feel

5   about working?

6        INMATE FRELIMO:  That was nice.  I liked

7   it.

8        PRESIDING COMMISSIONER ST. JULIEN:  Okay.

9   So hopefully you can get out of those

10  (indiscernible) get a job (indiscernible).

11  Definitely (indiscernible) those types of things

12  as (indiscernible) record.  Okay, so support

13  letters.  We have is it Monique and Timmy Dodd?

14       INMATE FRELIMO:  Yes.

15       PRESIDING COMMISSIONER ST. JULIEN:  And a

16  (indiscernible) and she lives in

17  (indiscernible).

18       INMATE FRELIMO:  Yes.

19       PRESIDING COMMISSIONER ST. JULIEN:  And

20  she is a -- is she a life-long friend?

21       INMATE FRELIMO:  Yes.  Well --

22       PRESIDING COMMISSIONER ST. JULIEN:  She

23  says you grew up together in San Francisco.  So

24  now, did she grow up in the same are you did?

25       INMATE FRELIMO:  No.

26       PRESIDING COMMISSIONER ST. JULIEN:  Where

37

```
 1          INMATE FRELIMO:  In (indiscernible) Hill.

 2          PRESIDING COMMISSIONER ST. JULIEN:  Okay.

 3   So you knew each other as kids?

 4          INMATE FRELIMO:  Right.

 5          PRESIDING COMMISSIONER ST. JULIEN:  She

 6   says that your parents (indiscernible) and she

 7   sounds like she's doing okay.

 8          INMATE FRELIMO:  Yeah.

 9          PRESIDING COMMISSIONER ST. JULIEN:  So

10   what do you think the difference between you and

11   her was?  Why is she okay?

12          INMATE FRELIMO:  She made better choices

13   than I did.

14          PRESIDING COMMISSIONER ST. JULIEN:  So

15   would you say not the same environment, a

16   similar environment?

17          INMATE FRELIMO:  Somewhat similar,

18   somewhat (indiscernible).

19          PRESIDING COMMISSIONER ST. JULIEN:  So

20   sometimes it does come down to choices, right?

21          INMATE FRELIMO:  Yes.

22          PRESIDING COMMISSIONER ST. JULIEN:  Okay.

23   So she -- it sounds like she's somebody positive

24   that you should have in your life.  She says

25   that you have had a lot of time to think, to

26   reconsider the disadvantages of being a
```

38

 1          "He and I kept in contact the

 2          majority of this time, and his

 3          letters allow me to witness

 4          another change in the state of

 5          mind.  This time know that he made

 6          entirely out of (indiscernible) on

 7          his own.  His sentence has allowed

 8          him to regroup, to study and form

 9          his own worldview.  He writes

10          articles and columns and seeks to

11          encourage those around him,

12          despite the fact that some of his

13          (indiscernible) considered to be

14          better off than he is because

15          we're not locked up."

16   And she continues to say you're very optimistic.

17   "It is this optimistic hope that makes me

18   confident that he will use the sum of his former

19   experiences to (indiscernible)."  And then she

20   urges us to let you go on to become a productive

21   citizen.  And then we have a letter from and I'm

22   not sure, somebody who lives on Shady Drive in

23   Houston?  Who is that?

24          INMATE FRELIMO:  (Indiscernible) Brown.

25          PRESIDING COMMISSIONER ST. JULIEN:  Okay.

26   No, somebody else.  Is it Christie, or --

39

```
 1  (indiscernible).

 2          PRESIDING COMMISSIONER ST. JULIEN:

 3  Chastity Brown.  Okay.  And she writes that --

 4  the copy is bad, so I'm going to

 5  (indiscernible).  (Indiscernible) of the

 6  (indiscernible) in our lives, and our kids'

 7  lives, we have a job already set up for Oba, and

 8  (indiscernible) he can stay free of charge.

 9  She's your first cousin.  Okay.  That's in

10  Texas.  And then your grandmother, who lives in

11  Texas as well.  Is that Houston?

12          INMATE FRELIMO:  Yeah.

13          PRESIDING COMMISSIONER ST. JULIEN:  Okay.

14  Arre L. Brown, A-R-R-E, and she writes,

15          "We'd really appreciate it if Oba

16          could be released as early as

17          possible.  We have a church where

18          he would be attending, our

19          community church.  He could live

20          at my residence free of charge

21          until he finds a steady career."

22  Okay.  And then a letter from Nathan Hare,

23  H-A-R-E, and he is a Ph.D. clinical

24  psychologist.  And he writes that "I came to

25  know Oba briefly when I was employed on the
```

40

1   probably referred by his (indiscernible).  "I

2   was particularly impressed by his expanding

3   psycho-social sophistication and his level since

4   (indiscernible)."  It says, "I can also

5   (indiscernible) contribution to society

6   (indiscernible) network of individuals and

7   professionals I've had the privilege

8   (indiscernible).  Oba is a (indiscernible) will

9   contribute to the benefit of his self and his

10  (indiscernible)."  Okay.  And it looks like it's

11  -- I'm not sure, is it Cheryl Burleson?

12          INMATE FRELIMO:  Yes.

13          PRESIDING COMMISSIONER ST. JULIEN:

14  B-U-R-L-E-S-O-N.  And she lives in San

15  Francisco, (indiscernible) that "He's been

16  rehabilitated and I can assure you would have no

17  problems adjusting to society upon his release.

18  I (indiscernible) would be a model citizen and

19  be able to (indiscernible) community."  And then

20  (indiscernible) Health Services, and that is

21  (indiscernible) off (indiscernible).  And this

22  letter is written by Terry Hobson, H-O-B-S-O-N.

23  And she says -- first, she's writing to the

24  Court.

25          "Hopefully you'll be released

26  soon.  Upon his release

41

```
 1          (indiscernible) and his friends

 2          plan (indiscernible).  I'll also

 3          assist (indiscernible) as well as

 4          become an information source, and

 5          to some degree a financial

 6          resource to help him

 7          (indiscernible) business.  I

 8          believe (indiscernible) goals of

 9          (indiscernible) a productive

10          citizen."

11   And then she says that the (indiscernible) Plus

12   Health Services is a home (indiscernible) with

13   over 100 employees, with (indiscernible).  And

14   what business is this that you and your mom had

15   planned (indiscernible)?

16       INMATE FRELIMO:  It's a (indiscernible)

17   company (indiscernible) --

18       PRESIDING COMMISSIONER ST. JULIEN:  Oh

19   that's the company that she always

20   (indiscernible).

21       INMATE FRELIMO:  She also sells African

22   art, incense, candles, baskets, and books, all

23   kinds of stuff.

24       PRESIDING COMMISSIONER ST. JULIEN:  Okay.

25   And the Church of the Living God, and they are

26   in Pittsburgh, California, and it says they are
```

42

1   signed by Evangelist Katrina Thompson, and

2   (indiscernible) Donahue, D-O-N-A-H-U-E.  He's a

3   deacon.  (Indiscernible) staff at the Church of

4   the Living God, temple number 21, in the city of

5   Pittsburgh (indiscernible) with Mr. Brown's

6   mother and his (indiscernible).

7         "He's an outstanding worker in our

8         church family.  We are honored to

9         represent Mr. Oba (indiscernible)

10        encouragement.  We have adopted

11        him as one of our own by his

12        inspired correspondence to his

13        devoted mother.  We stand in total

14        agreement with a decision of his

15        release."

16  And they will support you in every spiritual

17  positive way that you need.  And that's

18  (indiscernible) psychologist, and then a letter

19  from your mother, Barbara J. Brown, and she

20  writes that she's your mother.  She says "I will

21  (indiscernible) that (indiscernible) for Oba

22  upon his release a place of residence."  And she

23  gives the street address in San Francisco.

24  "Upon his release Oba has indicated to me that

25  he would like to assume the responsibility of

26  management in operations of our small family

43

```
 1   L-A-R-I-M-O, locally owned and operated in San

 2   Francisco.  And she goes on to say

 3         "Oba -- the years (indiscernible)

 4         missed with Oba he's also

 5         expressed an interest in

 6         (indiscernible) by being

 7         (indiscernible).  He would like to

 8         go to a mentor program such as the

 9         Brother's and Sister's, and learn

10         the aspects of being a mentor and

11         starting his own mentoring

12         program."

13   And then she goes on to say about the different

14   programs that you were (indiscernible) to

15   dissuade (indiscernible) from becoming

16   criminals.

17         "Oba has been incarcerated since

18         he was a teenager.  He was a

19         troubled teen with a lot of anger

20         (indiscernible) for help.  He was

21         never into (indiscernible)

22         positive attitude.  His current

23         faith and belief in God, that you

24         have faith in yourself, you will

25         overcome all obstacles.

26   And she asks for your release.  And a Garrett
```

44

```
 1    from childhood.  And does Mr. Jefferson live in

 2   San Francisco?

 3        INMATE FRELIMO:  I think so, I'm not

 4   really sure.

 5        PRESIDING COMMISSIONER ST. JULIEN:  Okay.

 6        "Oba was an immature, angry man,

 7        and a (indiscernible) emotional

 8        devastation he's caused others.

 9        Gradually through the years

10        however he has become

11        (indiscernible) that he

12        (indiscernible) be set free, that

13        he has an enormous debt to

14        contribute to society.  And

15        (indiscernible) numerous letters

16        he has mentioned to me about

17        starting a non-profit organization

18        to (indiscernible) educate

19        troubled youth from walking down

20        the same path he did.  And once

21        released Oba will be walking into

22        a society that has been

23        revolutionized by the internet and

24        cell phone, and he will not be

26        (indiscernible) that will
```

46

1   enurall?

2        INMATE FRELIMO:  Enurall, no.

3        PRESIDING COMMISSIONER ST. JULIEN:  So,

4   you have a heart condition.

5        INMATE FRELIMO:  Yes, I had an operation.

6        PRESIDING COMMISSIONER ST. JULIEN:  When

7   you were how old?

8        INMATE FRELIMO:  When did I have the

9   operation, or when did I have the condition?

10       PRESIDING COMMISSIONER ST. JULIEN:  Well,

11  both.

12       INMATE FRELIMO:  I think we found it

13  (indiscernible) when I was around probably 15 or

14  16, and I had the operation on me when I was 20

15  or 21 (indiscernible).

16       PRESIDING COMMISSIONER ST. JULIEN:  So

17  you had it when you were (indiscernible).

18       INMATE FRELIMO:  Yes.

19       PRESIDING COMMISSIONER ST. JULIEN:  Okay.

20  So did that operation pretty much save your

21  life?

22       INMATE FRELIMO:  Yeah, it took away the

23  (indiscernible).

24       PRESIDING COMMISSIONER ST. JULIEN:  Okay.

26       INMATE FRELIMO:  I feel good about that.

27       PRESIDING COMMISSIONER ST. JULIEN:

47

1  mean, how do you feel about having -- was it

2  open-heart surgery?

3      INMATE FRELIMO:  No, it was

4  (indiscernible) up my leg.

5      PRESIDING COMMISSIONER ST. JULIEN:  Okay.

6  So you had a procedure that saved your -- pretty

7  much saved your life, and you had it while you

8  were incarcerated, and you're still getting

9  violations.  Okay.  (Indiscernible) is going to

10  take over.

11      DEPUTY COMMISSIONER MORRIS:  Okay.  Mr.

12  Frelimo, it looks like your last hearing was

13  July 18 of 2000, and that was the last

14  documentation hearing, right?  And you spoke to

15  the Deputy Commissioner (indiscernible)?

16      INMATE FRELIMO:  Yeah.

17      DEPUTY COMMISSIONER MORRIS:  And do you

18  recall those conversations and the things she

19  told you you need to do.

20      INMATE FRELIMO:  Yeah.

21      DEPUTY COMMISSIONER MORRIS:  Okay.  Have

22  you done anything towards what you -- have you

23  accomplished anything that she told you to do?

24      INMATE FRELIMO:  I've started taking the

25  GED.  That's about it.

26      DEPUTY COMMISSIONER MORRIS:  And of

48

1    yet.  So you took that once?

2         INMATE FRELIMO:  Right.

3         DEPUTY COMMISSIONER MORRIS:  Okay.  So

4    you need to stay with that?

5         INMATE FRELIMO:  Right.

6         DEPUTY COMMISSIONER MORRIS:  Okay.  All

7    right, let me quickly go through your movement

8    within CDC.  It looks like you were received

9    July 1 of '94 at Reception Center, San Quentin.

10   And September of '94 you were transferred to

11   Sacramento State Prison.  And then February of

12   '99 you were transferred to Corcoran, November

13   of 2000 you were received at Pelican Bay, and

14   then December 23 of 2004 you were transferred to

15   CCI Tehachapi (indiscernible), and then it looks

16   like about June of '05 they transferred you over

17   to (indiscernible)?

18        INMATE FRELIMO:  Yes.

19        DEPUTY COMMISSIONER MORRIS:  Okay.  And

20   that's where you are now?

21        INMATE FRELIMO:  Yeah.

22        DEPUTY COMMISSIONER MORRIS:  Okay.  I see

23   you have a Classification Score of 372.  I been

24   going through the file looking for the Adult

26        INMATE FRELIMO:  I think so.

59

```
 1              INMATE FRELIMO:  No.

 2              PRESIDING COMMISSIONER ST. JULIEN:  Okay.

 3    We'll recess now for deliberations.

 4                        R E C E S S

 5                        --oOo--

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
```

60

1          CALIFORNIA BOARD OF PAROLE HEARINGS

2                    D E C I S I O N

3          DEPUTY COMMISSIONER MORRIS:  We're back

4      on record.

5          PRESIDING COMMISSIONER ST. JULIEN:  Okay.

6      All parties have returned to the room in the

7      matter of Oba Frelimo.  And Mr. Frelimo, the

8      Panel has reviewed all the information received

9      from the public and relied on the following

10     circumstances in concluding that the inmate is

11     not suitable for parole, and would pose an

12     unreasonable risk to society or a threat to

13     public safety if released from prison.

14     Specifically, the commitment offense -- the

15     offense was carried out in an especially cruel

16     and callous manner.  Multiple victims were

17     attacked.  One was attacked and one was killed

18     in the same incident.  And the woman who was

19     initially carjacked -- it says that she was -- I

20     think she was also 61 years old.  Her name was

21     Jeanette Rude, R-U-D-E.  The inmate took her car

22     and proceeded to drive the car in a fast manner,

23     and that car collided with the car that was

24     driven by Mrs.

25     was also 61 years old, and Mrs. Ginn

26     subsequently died of her injuries.  And there

61

```
 1  were also four other people who were injured in
 2  the automobile accident.  The offense was
 3  carried out in a manner which shows an
 4  exceptionally callous disregard for human
 5  suffering, in that all these victims were
 6  completely vulnerable victims.  They were out in
 7  the public, on the public areas doing what they
 8  would normally do, and they would have
 9  absolutely no idea that criminal activity was
10  going to happen.  The motive for the crime was
11  inexplicable or very trivial in relation to the
12  offense, as the carjacking was a car theft and
13  the death of Mrs. Ginn resulted from that
14  senseless act.  The murder of the victim did not
15  deter the -- I'm sorry.  The inmate had an
16  escalating pattern of criminal conduct and has
17  failed previous grants of juvenile probation,
18  and has failed from society's previous attempts
19  to correct his criminality.  And such attempts
20  include juvenile probation, juvenile camp, and
21  juvenile work shift.  And the prior criminality
22  includes as a juvenile, theft, petty theft,
23  robbery, auto theft, strong-arm robbery, and
24  assault.  And this also
25  social history as a juvenile.  The inmate has
```

63

1    disciplinarys.  Okay.

2              "The inmate also needs to learn

3              detection signs and early symptoms

4              indicating de-compensation in his

5              mental status so as to seek help

6              early and appropriately."

7    And finally, "The examiner feels that the inmate

8    has untapped potential.  He seems intelligent,

9    but needs motivation and encouragement to

10   continue to grow."  The inmate does appear to

11   have realistic parole plans as far as viable

12   residential plans go, they are residential plans

13   with his fiancee and he does appear to have

14   acceptable employment plans with his mother's

15   small business in San Francisco.  However, I

16   would again state that the distance between

17   where your fiancee lives and the business in San

18   Francisco that does seem quite a far distance,

19   so you might want to rethink those plans.  And

20   (indiscernible) indications of a marketable

21   skill.  And the Panel makes the following

22   findings.  The prisoner needs therapy in order

23   to face, discuss, understand and cope with

24   stress in a non-destructive manner

25   (indiscernible).  The inmate continues to be

26   unpredictable and a threat to others.  And in

65

```
 1          later saw the car, and a police
 2          chase ensued.  Police backed off
 3          when the defendant's speed reached
 4          70 miles per hour on a city
 5          street.  The defendant drove West
 6          on (indiscernible) Street and
 7          collided with the left side of the
 8          vehicle driven by Alio Ginn.  The
 9          woman's six-year-old grandson was
10          a passenger in the car.  The force
11          of the impact caused the women's
12          car to collide with another
13          occupied vehicle and a parked
14          vehicle.  The woman died from a
15          multi-traumatic injury received in
16          the collision.  The defendant and
17          his companion ran from the
18          accident and tried to hide.
19          Witnesses directed police to the
20          defendant and his companion, and
21          both were captured."
22   Multiple victims were attacked, and injured, and
23   killed in the same incident.  Mrs. Rude was
24   attacked and carjacked and there were four other
26   Mrs. Alio Ginn was killed in that car accident.
```

66

1   The offense was carried out in a dispassionate

2   and calculated manner, in that the victims were

3   completely vulnerable.   The offense was carried

4   out in a manner which showed an exceptionally

5   callous disregard for human suffering, in that

6   there certainly must be life-long trauma to the

7   surviving victims of this crime and particularly

8   to the six-year old grandson of Mrs. Ginn who

9   was in the car when Mrs. Ginn died.   The motive

10   for the crime seems (indiscernible) trivial in

11   relation to the offense, in that these crimes

12   were the result of a carjacking, car theft.   The

13   inmate has an extensive history of criminality,

14   including being in juvenile camp and juvenile

15   hall for theft -- theft and robbery.   A recent

16   psychological report dated January 2005, -

17   authored by Dr. Skeen, indicates a need for a

18   longer period of observation and evaluation and

19   treatment.   The inmate has not completed the

20   necessary programming which is essential to his

21   adjustment and needs additional time to gain

22   such programming.   And he has failed to complete

23   or participate in educational or vocational

24   programs, as well as self-help and therapy

25   programs.   Therefore a longer period of

26   observation and evaluation is required before

67

1    the Board should find the inmate suitable for

2    parole.  And sir, the Panel recommends that you

3    become disciplinary-free, remain

4    disciplinary-free, work at reducing your Custody

5    Level so that program opportunities will become

6    more available.  Also, if available, upgrade

7    vocationally and educationally.  And if

8    available participate in self-help and therapy

9    programming.  And we are going to ask for a new

10   psychological evaluation prior to your next

11   hearing.  So, I hope that this comes as a

12   wake-up call to you.  The (indiscernible) is

13   yours, you have a whole lot of work to do, but

14   you have time to do it.  Make up your mind,

15   you're either going to continue on this same

16   path and be here the rest of your life, or

17   you're going to start to (indiscernible).  Okay?

18   And I certainly hope it's the latter because I

19   think you definitely have the intellectual

20   potential to make something of yourself, so I

21   definitely wish you good luck, sir.

22          INMATE FRELIMO:  Thank you.

23          PRESIDING COMMISSIONER ST. JULIEN:  And

24   so, Commissioner Morris, do you have any

25   comments?

26          DEPUTY COMMISSIONER MORRIS:  Yeah, I

68

```
 1  would encourage Mr. Frelimo to work towards
 2  becoming absolutely disciplinary-free.  And
 3  you're going to have to be disciplinary-free for
 4  a number of years.  In addition to that, as the
 5  Commissioner just spoke to you about, to upgrade
 6  yourself vocationally as well as academically.
 7  However, you can't do any of that stuff until
 8  you reduce that Classification Score.  So you've
 9  got a number of years to work on that, you've
10  got to bring that down.  And I -- the only thing
11  I can commend you for is your writings, because
12  that tells me you're thinking of change somewhat
13  and with that you're on the right course.  And
14  you (indiscernible) pursue that.  You do have
15  the capability, as the psychologist said,
16  indicated earlier, the intellect is there, the
17  potential is there, but you've got to develop
18  the (indiscernible).  So you have a good day,
19  sir.
20          ATTORNEY HARRIS:  Thank you.
21          DEPUTY COMMISSIONER MORRIS:  Good luck.
22  //
23  //
24  //
25  //
26  //
```

69

```
 1            PRESIDING COMMISSIONER ST. JULIEN:  Thank

 2  you.  Okay.  (Indiscernible).

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23  PAROLE DENIED FIVE YEARS                    FEB  8 2006

24  THIS DECISION WILL BE FINAL ON:_____

25  YOU WILL BE PROMPTLY NOTIFIED, IF PRIOR TO THAT

26  DATE, THE DECISION IS MODIFIED.
```

70

## CERTIFICATE AND

### DECLARATION OF TRANSCRIBER

I, RUBY M. DOUGHERTY, a duly designated transcriber, PETERS SHORTHAND REPORTING, do hereby declare and certify under penalty of perjury that I have transcribed tape(s) which total one in number and cover a total of pages numbered 1 - 69, and which recording was duly recorded at CALIFORNIA CORRECTIONAL INSTITUTION, TEHACHAPI, CALIFORNIA, in the matter of the INITIAL PAROLE CONSIDERATION HEARING for OBA FRELIMO, CDC NO. J-25506, on OCTOBER 12, 2005, and that the foregoing pages constitute a true, complete, and accurate transcription of the aforementioned tape to the best of my ability.

I hereby certify that I am a disinterested party in the above-mentioned matter and have no interest in the outcome of the hearing.

Dated NOVEMBER 15, 2005, at Sacramento, California.

RUBY M. DOUGHERTY
TRANSCRIBER
PETERS SHORTHAND REPORTING

( Exhibit " B " )
( Proof of Menial Health illNess )

1  KATHLEEN M. KEESHEN
2  Deputy Director
   F. VINCENT O'BRIEN State Bar No. 54234
3  Staff Counsel
   Legal Affairs Division
4  California Department of Corrections
5  1515 S Street, Rm. 314S
   P.O. Box 942883
6  Sacramento, CA 94283-0001
   Telephone: (916) 445-0495
7
8  Attorneys for Petitioner

9        BEFORE THE OFFICE OF ADMINISTRATIVE HEARINGS
10
11             FOR THE STATE OF CALIFORNIA
12

13  In the Matter of                    )  No.
                                         )
14  Oba Frelimo J25506                   )  VERIFIED PETITION FOR RENEWAL
                                         )  JUDICIAL DETERMINATION
15                                       )  RE: INVOLUNTARY MEDICATION
                                         )
16  Re: Involuntary Medication           )
                                         )  DATE:  November 16, 2004
17                                       )  TIME:  9:00 A.M.
                                         )  PLACE: PELICAN BAY STATE PRISON
18                                       )
                      _____)
19
20           Petitioner alleges:

21        1.    The California Department of Corrections is required by the permanent injunction

22  issued in *Keyhea v. Rushen*, Solano County Superior Court, No. 67432, pursuant to *Keyhea v.*

23  *Rushen*, 178 Cal.App.3d 526 (1986) to seek a court order authorizing the administration of long

24  term involuntary antipsychotic medication to individuals confined within the jurisdiction of the

25  California Department of Corrections who, as a result of mental disorder, are a danger to others or

26  to themselves or are gravely disabled and incompetent to refuse medication. Penal Code section

27  2600, as amended by Chapter 555, Statutes of 1994, requires that the judicial hearing mandated in

28  this injunction be conducted by an administrative law judge.

-1-

1    2.    Respondent Oba Frelimo J25506, is, and at all times herein mentioned was, an

2    individual confined within the jurisdiction of the California Department of Corrections and is

3    currently housed at the Pelican Bay State Prison, located in Del Norte County, California.

4    3.    As more fully set forth in the Declaration of Heino Lange M.D., attached hereto as

5    Exhibit A and made a part hereof, respondent has been diagnosed as suffering from chronic

6    paranoid schizophrenai, a condition that renders him, a danger to others. The recommended

7    medically appropriate course of medical treatment consists of antipsychotic medications. There

8    are no medically available alternatives to this treatment. However, if the recommended course of

9    medical treatment is delayed or denied by the judge, it is likely that the patient will deteriorate

10   further.

11   4.    On May 25, 2004, in Pelican Bay State Prison, Case No. N2004050406, Inmate

12   Oba Frelimo J25506, was found by clear and convincing evidence to be, a danger to others, and it

13   was ordered that he may be involuntarily administered psychotropic medication for the period

14   May 25, 2004 to November 21, 2004. Attached hereto is Exhibit B which is incorporated herein

15   by reference consisting of An Order, Verified Petition, and Declaration in Support of Verified

16   Petition (See Exhibit B).

17

18   5.    The authority for filing a petition for renewal of an order authorizing involuntary

19   medication is found within the provisions of the *Keyhea* injunction itself, according to the First

20   District Court of Appeals, in *Department of Corrections v. Office of Administrative Hearings*

21   *(Holmes, Real Party in Interest)* (1998) 66 Cal.App.4th 1100, 78 Cal.Rptr.2d 4730.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

-2-

1    WHEREFORE, petitioner prays for an order renewing the authorization for administration

2    of involuntary medication for a period of 180 days on the basis that inmate Oba Frelimo J25506

3    does not have the capacity to consent to or refuse treatment and is, a danger to others, and for

4    such other and further relief as the judge deems proper.

5

6        DATED: October 29, 2004

7

8                                    KATHLEEN M. KEESHEN
                                     Deputy Director
9                                    Legal Affairs Division

10

11                                   F. VINCENT O'BRIEN
                                     Staff Counsel
12

13   Prepared by:                    Attorneys for Petitioner

14
     F. VINCENT O'BRIEN
15   Staff Counsel

16

17                              **VERIFICATION**

18       I, Heino Lange M.D., am a staff psychiatrist with the Department of Corrections at Pelican

19   Bay State Prison. I have read the foregoing petition and know the contents thereof. The same is

20   true of my own knowledge, except as to those matters that are therein alleged on information and

21   belief, as to those matters, I believe them to be true.

22       I declare under penalty of perjury that the foregoing is true and correct and that this

23   declaration was executed on October 29th 2004, at Crescent City, California.

24
                                     _h. Lomfr, m)_
25                                   HEINO LANGE M.D.
26                                   STAFF PSYCHIATRIST///

27

28

-3-

1    WHEREFORE, petitioner prays for an order renewing the authorization for administration

2    of involuntary medication for a period of 180 days on the basis that inmate Oba Frelimo J25506

3    does not have the capacity to consent to or refuse treatment and is, a danger to others, and for

4    such other and further relief as the judge deems proper.

5

6    DATED:  October 29, 2004

7

8                        KATHLEEN M. KEESHEN
                        Deputy Director
9                        Legal Affairs Division

10

11                        F. VINCENT O'BRIEN
                        Staff Counsel
12

13                        Attorneys for Petitioner
      Prepared by:
14
      F. VINCENT O'BRIEN
15    Staff Counsel

16

17                        **VERIFICATION**

18        I, Heino Lange M.D., am a staff psychiatrist with the Department of Corrections at Pelican

19    Bay State Prison. I have read the foregoing petition and know the contents thereof.  The same is

20    true of my own knowledge, except as to those matters that are therein alleged on information and

21    belief, as to those matters, I believe them to be true.

22        I declare under penalty of perjury that the foregoing is true and correct and that this

23    declaration was executed on ___ _____, 2004, at _____ __,

24    California.

25

26                        _____
                        HEINO LANGE M.D.
27                        STAFF PSYCHIATRIST///

28

                        -5-

**EXHIBIT A**

1   KATHLEEN M. KEESHEN

2   Deputy Director
    F. VINCENT O'BRIEN State Bar No. 54234

3   Staff Counsel
    Legal Affairs Division

4   California Department of Corrections

5   1515 S Street, Rm. 314S
    P.O. Box 942883

6   Sacramento, CA 94283-0001
    Telephone: (916) 445-0495

7

8   Attorneys for Petitioner

9

10                  BEFORE THE OFFICE OF ADMINISTRATIVE HEARINGS

11                      FOR THE STATE OF CALIFORNIA

12

13  In the Matter of                       ) No.
                                           )
14  Oba Frelimo J25506                     ) DECLARATION IN SUPPORT OF
                                           ) VERIFIED PETITION FOR RENEWAL
15                                         ) JUDICIAL DETERMINATION
                                           ) RE: INVOLUNTARY MEDICATION
16
                                           )
17  Re: Involuntary Medication             )
                                           ) DATE:  November 16, 2004
18                                         ) TIME:  9:00 A.M.
                                           ) PLACE: PELICAN BAY STATE PRISON
19  _____   )

20

21          I, Heino Lange M.D., declare as follows:

22          I am a psychiatrist employed by the California Department of Corrections at Pelican Bay

23  State Prison.

24  1.      The nature of the psychiatric condition of the respondent that requires treatment:

25              Chronic paranoid schizophrenia.

26  2.      Recommended courses of psychiatric treatment that are considered to be medically

27  appropriate:

28              Antipsychotic medications are necessary to keep Mr. Frelimo in an improved

-1-

1    condition.

2    3.    The threat to the health of the respondent, if the recommended course of treatment is

3    delayed or not received:

4        The patient will deteriorate again, encounter the previously observed violent

5    outbreaks, and represent a danger to others again.

6    4.    The predictable or probable response to the recommended course of treatment:

7        Fortunately after the introduction of involuntary medication, Mr. Frelimo has

8    shown signs of improvement. He currently denies the occurrence of auditory

9    hallucinations, or they appear to have only minor subjective improvement. He currently

10   denied the occurrence of auditory hallucinations, or they appear to have only minor

11   subjective importance for him. Over all, Mr. Frelimo's behavior has improved so far, that

12   during the last period of six months he has not physically attacked anybody, even though

13   Rule Violation Reports are on record.

14

15   5.    The available alternatives, if any, to the course of the treatment recommended:

16       Mr. Frelimo has been offered all reasonable alternative treatments without success.

17   There are no less invasive medically available alternatives to his psychotropic treatment

18   other than treatment with appropriate medications.

19   6.    The efforts made to obtain an informed consent from the respondent:

20       Many efforts have been made by clinicians to obtain an informed consent for

21   medication from Mr. Frelimo. While this petition for dangerousness requires no showing

22   of incompetence to consent, it is clear that this patient lacks the capacity to consent to

23   medication because he is unable to understand the severity of his symptoms, claiming that

24   he has no mental illness or need for treatment. He is unable to weigh the risks and benefits

25   in a coherent fashion.

26   7.    Incidents that precipitated the filing of the petition either by a summary of the incidents or

27   the attachment of reports or records:

28

1    Oba Frelimo is a danger to others because he suffers from a mental illness that

2    renders him unable to control his violent and assaultive impulses. He is unable to

3    understand his illness and need for treatment and therefore refuses the psychiatric

4    medications that might assist him. For these reasons, involuntary medications were

5    initiated on April 27, 2004, with an order being granted on May 25, 2004.

6

7    Mr. Frelimo, who is twenty-eights old, is serving a 15-year to life sentence for

8    second degree murder. Although there is no known history of treatment while in the

9    community, he has been treated at Pelican Bay State Prison (PBSP) and Corcoran State

10    Prison. Mr. Frelimo has received "CDC-115's" for assaults on inmates, which included a

11    slashing with great bodily injury, and weapon possession. He was admitted to the

12    Psychiatric Services Unit at PBSP in March of 2004. At that time, he admitted to auditory

13

14    hallucinations and visual disturbances, but declined any form of treatment. On

15    April 22, 2004, he assaulted a correctional officer "because of his attitude."

16    Mr. Frelimo took the initial one or two doses of psychiatric medications that he was

17    offered, but refused any further treatment. As a result, it was necessary to admit him to the

18    Correctional Treatment Center for the initiation of involuntary medication. He has gained

19    no insight into the nature and extent of his illness and need for treatment and, in fact,

20    continues to deny that he suffers from any mental illness, and has any need for medication.

21    Mr. Frelimo testified at his *Keyhea* hearing in May of 2004 that, "I don't need any

22    psychiatric medication", and has repeated that as recently as October 25, 2004. He further

23

24    stated that, "I don't need to be on *Keyhea*. I need no medication. I don't hear those voices

25    anymore." Without medication, he would decompensate, resulting in an increase in the

26    number of his assaultive incidents. The involuntary administration of medication remains

27

28

1  the least restrictive means of treating Mr. Frelimo and attempting to protect the health and

2  safety those with whom he comes in contact.

3  8.    That the respondent, as a result of mental disorder:

4     ( )   a.   Is gravely disabled and incompetent to refuse psychotropic medication;

5     ( )   b.   Presents a danger to self;

6     (x)   c.   Presents a danger to others.

7  9.    Names and address of next of kin or persons listed in the respondent's records to receive

8  notification in case of emergency:

9

10  Barbara Brown (Mother)
   1020 Pierce Street, #B
11  San Francisco, CA

12  I declare under penalty of perjury, that the foregoing is true and correct. Executed on this

13  29th day of October 2004, at Crescent City, California.

14

15

16

17  HEINO LANGE M.D.
    STAFF PSYCHIATRIST

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

## BEFORE THE OFFICE OF ADMINISTRATIVE HEARINGS

## FOR THE STATE OF CALIFORNIA

6

7

8  In the Matter of                          )    No.
                                            )
9  Oba Frelimo J25506                        )    **ORDER SETTING HEARING**
                                            )    **AND APPOINTING ATTORNEY**
10
                                            )
11 Re:  Involuntary Medication              )
                                            )
12 _____)

13      IT IS HEREBY ORDERED that a hearing re:  involuntary medication is set for

14 November 16, 2004, at 9:00 a.m., at Pelican Bay State Prison.  Because of legitimate penological

15 interests, in accordance with Penal Code §2600, persons without valid institutional or

16 departmental identification must obtain specific approval from the Warden, a process that can

17 take up to two weeks.

18      IT IS FURTHER ORDERED that Harry Liddicote, Jr., Attorney at Law, shall represent

19 inmate Oba Frelimo J25506.

20      DATED:

21

22

23                                          _____
                                          ADMINISTRATIVE LAW JUDGE
24

25

26

27

28

1

2   **KATHLEEN M. KEESHEN**
3   **Deputy Director**
     **F. VINCENT O'BRIEN State Bar No. 54234**
4   **Staff Counsel**
     Legal Affairs Division
5   California Department of Corrections
6   1515 S Street, Rm. 314S
     P.O. Box 942883
7   Sacramento CA  94283-0001
     Telephone:  (916) 445-0495
8

9   Attorneys for Petitioner

10          BEFORE THE OFFICE OF ADMINISTRATIVE HEARINGS

11             FOR THE STATE OF CALIFORNIA

12

13

14   In the Matter of          )   No.
                      )
15   Oba Frelimo J25506      )
                      )   **DECLARATIONS OF SERVICE**
16                      )
   Re:  Involuntary Medication  )
17                      )
                      )
18   ————————————————)

19
                     //
20
                     //
21
                     //
22
                     //
23
                     //
24
                     //
25
                     //
26
                     //
27
                     //
28

1

## DECLARATION OF SERVICE

2

Re: In the Matter of Oba Frelimo J25506  No. _____

3

4        The undersigned declares:

5        I am over the age of 18 years, and not a party to the above-entitled proceedings.  My

6    business address is 5905 Lake Earl Drive Crescent City, California 95532.

7    On October 29th 2004, I served true copies of the following documents:

8
               Verified Petition for Judicial Determination
9              Declaration in Support of Verified Petition for
                     Judicial Determination
10
               Petition for Interim Order
11             Declaration in Support of Petition for Interim Order
12             Order for Interim Involuntary Medication
               Order Setting Hearing and Appointing Attorney
13

14    on:

15        Barbara Brown (Mother)
          1020 Pierce Street, #B
16        San Francisco, CA

17        [ ]      by personal delivery to said person in the County of Del Norte, State of California.

18
          [X]      by placing, or causing to be placed, true copies thereof, enclosed in a sealed
19    envelope with postage thereon fully prepaid, in the United States mail at Crescent City,
20    California.

21        I declare under penalty of perjury that the foregoing is true and correct.  Executed on

22    October 29th 2004, at Crescent City, California.

23

24

25

26                                          B. JACOT  CCII

27

28

1

## DECLARATION OF SERVICE

2

3

Re: In the Matter of Oba Frelimo J25506  No. _____

4

The undersigned declares:

5

I am over the age of 18 years, and not a party to the above-entitled proceedings.  My

6

business address is 5905 Lake Earl Drive Crescent City, California  95532.

7

On October 29th 2004, I served true copies of the following documents:

8

9

10

Verified Petition for Judicial Determination
Declaration in Support of Verified Petition for
Judicial Determination

11

12

13

Petition for Interim Order
Declaration in Support of Petition for Interim Order
Order for Interim Involuntary Medication
Order Setting Hearing and Appointing Attorney

14

on:

15

16

Harry Liddicote, Jr.
3631 Wonderstump Road
Crescent City, CA 95531

17

18

[ X ]    by personal delivery to said person in the County of Del Norte, State of California.

19

20

[ ]    by placing, or causing to be placed, true copies thereof, enclosed in a sealed
envelope with postage thereon fully prepaid, in the United States mail at Crescent City,
California.

21

22

23

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

October 29th 2004, at Crescent City, California.

24

25

26

B. JACOT  CCII

27

28

( Exhibit "C" )

Boot Camp Worksheet

BOOT CAMP WORKSHEET

IDENTIFYING INFORMATION:

NAME: _FRELIMO_         CDC# _J-25506_        RACE: _B/18_
ARRIVAL DATE: _7-1-94_     COUNTY OF COMMITMENT: _San Francisco_

COMMITMENT OFFENSE _Murder 1st_  LENGTH OF SENTENCE _15 - Life_
CONTROLLING: _____
NON-CONTROLLING: _____
                           MIN D.S.L.: _____

TO BE COMPLETED BY BOOT CAMP CCI

BOOT CAMP ELIGIBILITY:

ELIGIBLE: _____
INELIGIBLE DUE TO: _____
_____

DATE INTERVIEWED: _____    DATE CONTACT SIGNED _____

BOOT CAMP CCI SIGNATURE _____
DATE OF ENDORSEMENT: (BY C & PR) _____